UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>　　　　　　　　　Defendants. | No. 2:19-cv-15382-BRM-JAD<br><br><u>CLASS ACTION</u><br><br>**<u>Oral Argument Requested</u>**<br><br>**Motion Day:** July 20, 2020<br><br>**BRIEF IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................1

    A.    The Court Should Transfer the ADR Claims..............................................1

        1.    Plaintiffs' Concession that a Valid Forum Selection Clause
             Governs is Dispositive Absent the "Most Exceptional"
             Circumstances ................................................................................1

        2.    Public Interest Factors Do Not Defeat Transfer ..........................4

    B.    Plaintiffs' U.K. Claims Also Warrant Transfer ..........................................9

        1.    Private Interests Support Transfer of U.K. Claims ....................10

        2.    Public Interests Support Transfer of U.K. Claims .....................13

        3.    Judicial Efficiency Considerations Support Transfer of the U.K.
             Claims Under Steps Three and Four of *Howmedica* .................14

III.  CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Reimbursement Mgmt., LLC v. Plaisance*,
2019 WL 2502931 (D. Del. June 17, 2019)................................................................5

*Atlantic Marine Const. Co. v. United States Dist. Court for W. Dist. of Texas*,
571 U.S. 49 (2013)........................................................................................4, 7

*Auto Equity Loans of Delaware, LLC v. Shapiro*,
2019 WL 4169794 (D. Del. Sept. 3, 2019)................................................................5

*Batchelder v. Kawamoto*,
147 F.3d 915 (9th Cir. 1998), (July 15, 1998) ..........................................................4

*Bella & Rosie Rock, LLC v. We Rock the Spectrum, LLC*,
2018 WL 844398 (D.N.J. Feb. 13, 2018) ................................................................2

*Cawley v. Advocacy All.*,
2012 WL 707001 (E.D. Pa. Mar. 6, 2012)..........................................................9, 12

*Celgene Corp. v. Abrika Pharms., Inc.*,
2007 WL 1456156 (D.N.J. May 17, 2007)................................................................13

*Chembulk Mgmt. PTE Ltd. v. Vedanta Ltd.*,
2018 WL 3410013 (S.D.N.Y. July 13, 2018) ..........................................................4

*Cole v. Camelback Mountain Ski Resort*,
2016 WL 5389067 (D.N.J. Sept. 27, 2016) ..............................................................2

*Darrow v. InGenesis, Inc.*,
2020 WL 2059946 (D.N.J. Apr. 29, 2020)............................................................6, 8

*Design Metals v. Quality Perforating, Inc.*,
2020 WL 2899501 (D.N.J. June 3, 2020)................................................................5

*Execu-Ride Corp. v. Trucker's Bank Plan*,
2017 WL 1927924 (D.N.J. May 10, 2017)................................................................2

*Fernandes v. Deutsche Bank Nat'l Tr. Co.*,
157 F. Supp. 3d 383 (D.N.J. 2015) ......................................................................6

*Ford v. EF Explore Am., Inc.*,
2019 WL 3492211 (D.N.J. July 31, 2019)................................................................9

*Friday & Cox, LLC v. FindLaw*,
  2018 WL 3912829 (W.D. Pa. Aug. 16, 2018) ..........................................................................5

*Hardney v. ABC Phones of N.C., Inc.*,
  2020 WL 948817 (D.N.J. Feb. 27, 2020) ...........................................................................8, 13

*In re: Howmedica Osteonics Corp.*,
  867 F.3d 390 (3d Cir. 2017)...................................................................................................4

*Howmedica Osteonics Corp. v. Howard*,
  2020 WL 1102494 (D.N.J. Jan. 17, 2020) ...............................................................................3

*Ivoclar Vivadent AG v. 3M Co.*,
  2012 WL 2374657 (D. Del. June 22, 2012)............................................................................12

*Kane v. Ollie's Bargain Outlet Holdings, Inc.*,
  2018 WL 6168085 (D.N.J. Nov. 26, 2018) ..............................................................................8

*Malek v. Chef's Roll, Inc.*,
  2019 WL 3854303 (D.N.J. Aug. 16, 2019) ..............................................................................6

*Manopla v. Raymours Furniture Co., Inc.*,
  2018 WL 3201800, . (D.N.J. June 29, 2018) ........................................................................2, 3

*Metro. Life Ins. Co. v. Bank One, N.A.*,
  2012 WL 4464026 (D.N.J. Sept. 25, 2012) ..............................................................................7

*On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*,
  2007 WL 1234978 (D.N.J. April 25, 2007)............................................................................12

*Panella v. United States*,
  2018 WL 5630591 (D.N.J. Oct. 31, 2018)................................................................................6

*Praxair, Inc. v. ATMI, Inc.*,
  2004 WL 883395 (D. Del. Apr. 20, 2004)..............................................................................11

*U.S. ex rel. River Front Recycling & Aggregate, LLC v. Kallidus Techs., Inc.*,
  2019 WL 2082948 (D.N.J. May 13, 2019)...............................................................................2

*Selective Way Ins. Co. v. Glasstech, Inc.*,
  2014 WL 6629629 (D.N.J. Nov. 21, 2014) ..............................................................................6

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970).....................................................................................................10

*Silvis v. Ambit Energy, L.P.*,
  90 F. Supp. 3d 393 (E.D. Pa. 2015) ......................................................................................2, 3

*In re TCW/Camil Holding L.L.C.*,
  2004 WL 1043193 (D. Del. 2004) ........................................................................................10

*In re USA Techs., Inc. Sec. Litig.*,
  2019 WL 4785780 (D.N.J. Sept. 30, 2019) ...........................................................................7

*Yocham v. Novartis Pharms. Corp.*,
  565 F. Supp. 2d 554 (D.N.J. 2008) .......................................................................................8

*Zazzali v. Swenson*,
  852 F. Supp. 2d 438 (D. Del. 2012)......................................................................................10

**Other Authorities**

*Microsoft Mobile v. Sony Europe*, [2017] EWHC 374 (Ch)..........................................15

*Ryanair v. Esso Italiana*, [2013] EWCA Civ 1450........................................................15

Defendants respectfully submit this reply to Plaintiffs' Opposition ("Opp."), ECF No. 52, to Defendants' Motion to Transfer ("Mot."), ECF No. 43.

## I.    INTRODUCTION

The ADR Plaintiffs' concession that a valid forum selection clause governs their claims is fatal to their position opposing transfer because the claims do not present the "most exceptional" circumstances necessary to override contractually mandated transfer.  None of Plaintiffs' arguments overcome this concession.  As just one example, Plaintiffs assert that the Court should give the valid forum selection clause less weight because Plaintiffs did not formally agree to the ADR contract.  However, Plaintiffs fail to even address the court decisions in this District and elsewhere which routinely hold that ADR contracts are binding on their holders.  As for the U.K. Claims, City of Pontiac fails to establish that this Court should sever the Claims and retain jurisdiction under *Howmedica.*  Thus, the Court should transfer this case to the Southern District of New York ("SDNY").

## II.    ARGUMENT

### A.    The Court Should Transfer the ADR Claims

**1.    Plaintiffs' Concession that a Valid Forum Selection Clause Governs is Dispositive Absent the "Most Exceptional" Circumstances**

Plaintiffs concede that the ADR contractual documents contain a valid forum selection clause selecting New York as the exclusive forum for the ADR

Claims.  Opp. at 10 n.8.  Thus, controlling authority requires transfer unless

Plaintiffs can demonstrate this case presents the "most exceptional" circumstances

for overriding transfer.  Mot. at 9 (collecting authorities).  The briefing underscores

just how "exceptional" a situation must be.  Virtually every decision that the

parties cite—across a variety of fact patterns and jurisdictions—grants a transfer

where, as here, a forum selection clause governs.  *See, e.g., U.S. ex rel. River Front*

*Recycling & Aggregate, LLC v. Kallidus Techs., Inc.,* 2019 WL 2082948, at *1

(D.N.J. May 13, 2019) (transferring case pursuant to forum selection clause,

despite controversy involving contract to build in New Jersey); *Bella & Rosie*

*Rock, LLC v. We Rock the Spectrum, LLC*, 2018 WL 844398, at *1 (D.N.J. Feb.

13, 2018) (transferring case pursuant to forum selection clause, despite controversy

involving franchise in New Jersey); *Manopla v. Raymours Furniture Co., Inc.*,

2018 WL 3201800, at *4–5. (D.N.J. June 29, 2018) (Martinotti, J.) (transferring

case pursuant to forum selection clause); *Execu-Ride Corp. v. Trucker's Bank*

*Plan*, 2017 WL 1927924 (D.N.J. May 10, 2017) (Martinotti, J.) (same); *Cole v.*

*Camelback Mountain Ski Resort*, 2016 WL 5389067, at *4, *6 (D.N.J. Sept. 27,

2016) (Martinotti, J.) (same).

Plaintiffs cite only one case (*Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393

(E.D. Pa. 2015)) in which a court declined to enforce a forum selection clause.

Opp. at 9.  But the *Silvis* court acknowledged that its ruling was "exceptional" and

involved the "most unusual circumstances."  90 F. Supp. 3d at 400.  The case

presented a dispute over a Pennsylvania contract between Pennsylvania customers

and their Pennsylvania energy supplier, which Pennsylvania had extensively

regulated and had a uniquely strong interest in adjudicating.  *Id.* at 399.  Nothing

about this case, which involves contracts between a U.K.-headquartered issuer and

investors from several different states, is remotely similar.

Finally, Plaintiffs make no headway asking this Court to accord the forum

selection clause reduced "weight" for various reasons.  Opp. at 3, 19.[1]  To the

extent that Plaintiffs complain that they did not "negotiate" or "formally agree to"

the ADR contract, that does not matter.  *See Howmedica Osteonics Corp. v.*

*Howard*, 2020 WL 1102494, at *2 (D.N.J. Jan. 17, 2020), *report and*

*recommendation adopted*, 2020 WL 1082601 (D.N.J. Mar. 5, 2020) ("[f]orum

selection clauses are routinely upheld, even in situations involving adhesion

contracts, unequal bargaining power, and the absence of negotiations over the

clause."); *Manopla*, 2018 WL 3201800, at *4–5 (transferring class action pursuant

to forum selection clause despite plaintiff's assertion that she did not agree to

---

[1] Confusingly, Plaintiffs make this argument in their discussion of the public interest factors but the only authority that they cite pertains to the question of forum selection clause validity (which Plaintiffs here do not dispute).  Opp. at 19 (citing *Weidner Commc'ns, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302 (7th Cir. 1988) (holding, under Illinois law, that forum selection clause renegotiated after plaintiff had made substantial investments was unenforceable).

clause embedded in hyperlink).  Further, numerous courts have held that ADR

contracts are binding and that holders agree to them by purchasing shares.  *See*

Motion at 6; *Batchelder v. Kawamoto*, 147 F.3d 915, 918 (9th Cir. 1998), *as*

*amended* (July 15, 1998) ("ADR holders are deemed to have agreed to all terms in

the deposit agreement by their acceptance and holding of ADRs"); *Chembulk*

*Mgmt. PTE Ltd. v. Vedanta Ltd.*, 2018 WL 3410013, at *3 (S.D.N.Y. July 13,

2018) (ADR agreement governs relationship of ADR issuer and holder).[2]

### 2.    Public Interest Factors Do Not Defeat Transfer

Plaintiffs acknowledge that, in light of the Supreme Court's admonishment

that "a valid forum-selection clause [should be] given controlling weight in all but

the most exceptional cases," the court will (1) give no weight to plaintiff's choice

of forum; (2) deem the private interests to weigh entirely in favor of the

preselected forum; and (3) analyze only the public interests to determine whether

transfer is warranted.  Opp. at 10; *Atlantic Marine Const. Co. v. United States Dist.*

*Court for W. Dist. of Texas*, 571 U.S. 49, 66 (2013) ("*Atlantic Marine*"); *In re:*

*Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) ("*Howmedica*").

---

[2] Plaintiffs garner no sympathy hyperbolizing that the forum selection clause is "buried" in the ADR contract.  Opp. at 2.  The Deposit Agreement is only ten pages long and is publicly available on SEC Edgar (a fact undoubtedly known to sophisticated institutional investors like Plaintiffs).  Further, the forum selection clause uses the same typeface as the rest of the Agreement, is in plain English, is called out in the table of contents, and has a bold heading "**Consent to Jurisdiction**."

Initially, Plaintiffs concede that three factors are neutral: (1) enforceability of the judgment; (2) relative administrative difficulty in the two fora resulting from court congestion;[3] (3) familiarity of the trial judge with the applicable state law in diversity cases.  Opp. at 18-19.  Plaintiffs also do not seriously contend that practical considerations could "make the trial easy, expeditious, or inexpensive" in this District.  Plaintiffs' cursory assertion that trial would be more "efficient" here because potential witnesses are located within the District confuses private interest factors, which are not considered in cases involving forum selection clauses, with public interest factors.  *See Advanced Reimbursement Mgmt., LLC v. Plaisance*, 2019 WL 2502931, at *3 (D. Del. June 17, 2019) (declining to consider location of third-party witnesses under public interest factors); *Friday & Cox, LLC v. FindLaw*, 2018 WL 3912829, at *6–8 (W.D. Pa. Aug. 16, 2018) (finding factor neutral where court was not convinced "that the trial would be easier or less expensive *for the public* in either forum") (emphasis added).  Rather, Plaintiffs must point to some "broader public benefit to this case proceeding in this Court," which they have failed to do.  *Auto Equity Loans of Delaware, LLC v. Shapiro*, 2019 WL 4169794, at *9 (D. Del. Sept. 3, 2019).

---

[3] Plaintiffs note that "relative congestion" of the respective courts is not a significant factor on a motion to transfer.  Opp. at 18 n.10.  Nevertheless, as this Court is well-aware, New Jersey's dockets are "some of the most congested in the country," which weighs in favor of transfer.  *Design Metals v. Quality Perforating, Inc.,* 2020 WL 2899501, at *5 (D.N.J. June 3, 2020).

Instead, Plaintiffs' Opposition hinges on two factors: (1) New Jersey's purported "public policy" in resolving this litigation; and, relatedly, (2) New Jersey's public interest in assuring that "localized controversies" are decided "at home." Opp. at 14–16. Neither tips the scales.

**First,** Plaintiffs fail to demonstrate that New Jersey has a "public policy" interest in resolving the ADR Claims. In evaluating this factor, courts consider all relevant public policies and, where there are competing policies, the factor is neutral. *Darrow v. InGenesis, Inc.*, 2020 WL 2059946, at *5–6 (D.N.J. Apr. 29, 2020) (transferring case pursuant to forum selection clause where New Jersey had conflicting public policies). Here, Plaintiffs maintain that "New Jersey has a 'significant public policy' in resolving disputes concerning tortious conduct that occurred within its borders," (Opp. at 14) and they cite several cases finding a New Jersey center of gravity for traditional torts such as negligent destruction of property.[4] However, case law involving alleged securities fraud—which Defendants cite in their Motion and Plaintiffs do not challenge—makes clear that

---

[4] *See Malek v. Chef's Roll, Inc.*, 2019 WL 3854303, at *14 (D.N.J. Aug. 16, 2019) (finding "center of gravity" analysis neutral in case involving contract and fraud claims where alleged contract negotiations took place in both districts); *Panella v. United States*, 2018 WL 5630591, at *4 (D.N.J. Oct. 31, 2018) (tort claims arising from violent physical altercation that took place within New Jersey); *Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015) (New Jersey common law claims related to transfer of title to New Jersey property); *Selective Way Ins. Co. v. Glasstech, Inc.*, 2014 WL 6629629, at *7 (D.N.J. Nov. 21, 2014) (negligence action involving destruction of property in New Jersey).

the "center of gravity" for such claims is where the statements at issue are created and transmitted. Motion at 12 n.4 (citing cases). Here, that is the United Kingdom, where Reckitt is headquartered and its public filings were authored. *Id.*; *Metro. Life Ins. Co. v. Bank One, N.A.*, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012) (New York "center of gravity" in securities fraud suit despite defendant making allegedly misleading live presentations in New Jersey because majority of statements were made in New York); *In re USA Techs., Inc. Sec. Litig.*, 2019 WL 4785780, at *2 (D.N.J. Sept. 30, 2019) ("center of gravity" in securities fraud suit is often where "the fraudulent statements were made").[5]

Even if Plaintiffs had articulated a public policy interest favoring this District, it does not override New Jersey's strong public policy favoring the enforcement of forum selection clauses. Plaintiffs' assertion that *Atlantic Marine* "account[ed] for th[is] public policy" is misguided. Opp. at 15 n.9. *Atlantic Marine* requires Plaintiffs to show that public policy interests "overwhelmingly disfavor a transfer," and if generic arguments about the locus of the alleged wrongdoing were sufficient to satisfy this standard, forum selection clauses would hardly ever be enforced. *See Atlantic Marine,* 571 U.S. at 51 (public interest factors "will rarely defeat a transfer motion" in the face of a valid forum selection

---

[5] That "nearly one third" (Opp. at 8) of the alleged misstatements were made by Shaun Thaxter, at the time the CEO of Reckitt's former subsidiary, hardly transposes the "center of gravity" to New Jersey.

7

clause); *see also Darrow*, 2020 WL 2059946, at *5–6 (public policy factor neutral where, New Jersey had public policy in favor of safe workplace practices but also "ha[d] a strong public policy of upholding contractual choices such as forum-selection clauses.") (citing *Atlantic Marine*, 571 U.S. at 49).

**Second,** Plaintiffs fail to establish that New Jersey's interest in assuring that "localized controversies" are decided "at home" would be advanced by retaining the ADR Claims in this District. Opp. at 16. Plaintiffs assert that New Jersey has a significant public interest in this matter because Reckitt maintains its U.S. headquarters in New Jersey and New Jersey has an interest in regulating pharmaceutical companies in the state. Opp. at 17. This is misdirection for two reasons: (i) Plaintiffs challenge statements made by *Reckitt* (not any of its U.S. affiliates), which is headquartered in the United Kingdom; and (ii) Reckitt has not had a pharmaceutical subsidiary, in New Jersey or otherwise, since the demerger with Indivior in 2014.[6]

---

[6] For this reason, Plaintiffs' cases, where New Jersey headquarters supported a conclusion that an action's "center of gravity" was within the state, are readily distinguishable. *Hardney v. ABC Phones of N.C., Inc.*, 2020 WL 948817, at *4 (D.N.J. Feb. 27, 2020) (considering location of defendant's headquarters in wage and hour case where policy of not paying overtime was instituted at its headquarters); *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, 2018 WL 6168085, at *6 (D.N.J. Nov. 26, 2018) (Martinotti, J.) (same); *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) (considering location of defendant's headquarters in case brought, in part, under New Jersey consumer fraud statute based on injuries allegedly resulting from medication that was developed, tested, and marketed in New Jersey).

In a similar vein, Plaintiffs advance scattershot allegations related to New Jersey's general interest in fighting the opioid crisis and investigating fraud. Opp. at 4, 4 n.2, 17–18.[7] While Defendants do not dispute that New Jersey has such interests, Plaintiffs have failed to make the critical showing that its interests are more significant than New York's interests in the same. In fact, the Complaint frequently references both New Jersey *and* New York-based fraud investigations into the opioid industry. Am. Compl. ¶¶ 11, 198. These considerations therefore remain neutral. *See Ford v. EF Explore Am., Inc.*, 2019 WL 3492211, at \*3 (D.N.J. July 31, 2019), *reconsideration denied*, 2019 WL 5558354 (D.N.J. Oct. 28, 2019) (factor remained neutral where state's interest "*i.e.*, protection of children, would not seem to differ as between the two states").

In sum, because the public interest factors do not present the "most exceptional" case for overriding a forum selection clause, the Court should transfer the ADR Claims to the SDNY.

### B.    Plaintiffs' U.K. Claims Also Warrant Transfer

Both private and public interests weigh in favor of transferring the U.K. Claims to the SDNY under the second step of *Howmedica*.

---

[7] The "acute impact" of the opioid crisis on New Jersey appears to be an assertion drummed up specifically for Plaintiffs' Opposition, which is therefore not properly before the Court. *See Cawley v. Advocacy All.*, 2012 WL 707001, at \*1 n.1 (E.D. Pa. Mar. 6, 2012) (refusing to consider plaintiff's "new facts" raised in opposition to defendants' motion to transfer under § 1404(a)).

9

### 1.   Private Interests Support Transfer of U.K. Claims

Plaintiffs' U.K. Claims consist of common law and statutory claims under English law challenging statements made by Reckitt, a U.K. corporation, in connection with their purchase of ordinary shares on the London stock exchange. Motion at 2.  Given the obvious tenuous connection to this District, each of Plaintiffs' arguments opposing transfer of the U.K. Claims fails.

**First**, Plaintiffs concede that their choice of forum should be "afforded less deference" because in class actions "potential members are scattered throughout several states."  Opp. at 21 (citing *Kane,* 2018 WL 6168085, at *1 (transferring class action, affording "less deference" to plaintiffs' choice of forum and noting that even less deference is afforded when district is not plaintiff's home forum)); *see also* Mot. at 11 (citing cases).  Plaintiffs' other authority—which concerns suits brought in a plaintiff's individual capacity—is inapposite.  *See Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) (individual tort action); *In re TCW/Camil Holding L.L.C.*, 2004 WL 1043193 (D. Del. 2004) (legal malpractice suit).[8]

---

[8] In connection with their argument regarding deference to Plaintiffs' choice of forum, Plaintiffs assert that Defendants must demonstrate that it will cause them a burden to litigate in this District.  Opp. at 22.  But the only case that Plaintiffs cite supports, rather than negates, transfer. *See Zazzali v. Swenson*, 852 F. Supp. 2d 438, 449–451 (D. Del. 2012) (granting motion to transfer despite plaintiff's choice of forum based, in part, on defendants' forum preference and convenience to witnesses and parties).

**Second,** Plaintiffs fail to demonstrate that Defendants' choice of forum should be afforded "considerably less weight." Opp. at 22. Plaintiffs' argument again rests on the assertion that Reckitt's current U.S.-based headquarters is in New Jersey, which, as discussed *supra* at 6–8, is irrelevant.[9]

**Third,** Plaintiffs' argument concerning the "convenience of the parties" factor fails because Plaintiffs do not provide a serious response to Defendants' common sense position that, if the Court has reached this stage of the inquiry, it has already determined that the ADR Claims should be litigated in the SDNY. As such, there would be significant conveniences to be gained from litigating the two sets of claims together. *See* Opp. at 24 n.13 (describing Defendants' argument as "cynical" but providing no substantive response). Courts routinely consider the presence of related actions in deciding motions to transfer. *See e.g., Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004) (transfer motion "may [] be granted if there is a related case which has been first filed"). Here, the claims are not just related, but are brought in the very same action. Relatedly, it will also be more convenient for the parties to marshal their evidence—which overlaps significantly between the sets of claims—in a single proceeding. *E.g.,*

---

[9] Plaintiffs cite three cases—*Hardney, Kane,* and *Spack*—that are irrelevant on their face. Opp. at 23. In each, plaintiffs "reside[d] in both districts but no defendant [wa]s located in the District of New Jersey." *Id.* Here, Pontiac, which is based in Missouri, *not* New Jersey, brought the U.K. Claims. Motion at 11. Further, as discussed *supra* at 7, Reckitt is headquartered in the United Kingdom.

11

*Ivoclar Vivadent AG v. 3M Co.*, 2012 WL 2374657, at \*13 (D. Del. June 22, 2012) (transferring action where "most of the relevant documents will likely be produced in the [transferee court] and it would be impractical to require production of the same documents" in both actions, which were "mirror images" of each other).

**Fourth,** Plaintiffs' argument concerning the convenience of third-party witnesses is similarly unconvincing. As Plaintiffs concede, the convenience of witnesses is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Opp. at 20–21 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Plaintiffs make no such showing here. Opp. at 18, 24 (listing witnesses but failing to identify any who would be rendered "unavailable" upon transfer).[10] And in any event, Plaintiffs fail to demonstrate that transferring the U.K. Claims the short distance from the District of New Jersey to the SDNY would result in inconvenience. Plaintiffs' own cited cases give this factor "little weight" in such circumstances. *See On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*, 2007 WL 1234978, at \*7 (D.N.J. April 25, 2007) (affording "little weight" to this factor where transferor court was not

---

[10] Plaintiffs make frequent reference to the presence of the Suboxone film-maker MonoSol Rx in New Jersey. Opp. at 4 n.3, 18, 24. Setting aside the lack of any apparent relevance of a manufacturer to Plaintiffs' English law misrepresentation claims, Plaintiffs fail to make any allegations related to MonoSol in the Complaint. This not only reveals the irrelevance of these facts, it also makes them improper to consider on this motion. *See Cawley*, 2012 WL 707001, at \*1 n.1.

12

"geographically distant from" the transferee court); *Celgene Corp. v. Abrika Pharms., Inc.*, 2007 WL 1456156, at \*5 (D.N.J. May 17, 2007) (same).

**Finally,** Plaintiffs' argument that the U.K. Claims "arose" in New Jersey is even less convincing than the same flawed argument as applied to the ADR Claims. *See* Opp. at 14*; supra* at 6–8. Plaintiffs cite no authority supporting their theory that the U.K. Claims—which arise under English law from alleged misstatements made by a U.K.-based company and which allegedly induced Plaintiffs to make purchases on the London stock exchange—could "arise" in New Jersey. Am. Compl. ¶ 24. Their cases stand for the opposite proposition. *See Hardney v. ABC Phones of N. Carolina, Inc.*, 2020 WL 948817, at \*4 (D.N.J. Feb. 27, 2020) (granting motion to transfer despite one plaintiff being affected by alleged misconduct in New Jersey when "crux" of the action took place at company's headquarters elsewhere).

### 2.    Public Interests Support Transfer of U.K. Claims

The public interests, discussed in detail above, are even more attenuated with regard to the U.K. Claims. *See supra* at 4–9. Plaintiffs have articulated no public policy consideration that this District has in overseeing litigation that a Missouri-based plaintiff brought against a U.K. company based on English law.

### 3. Judicial Efficiency Considerations Support Transfer of the U.K. Claims Under Steps Three and Four of *Howmedica*

If the Court determines that the second step of *Howmedica* warrants retaining the U.K. Claims in this District, it must still weigh judicial efficiency with the private interests of the U.K. Plaintiffs to determine whether to transfer the entire case or sever the U.K. Claims under step four of *Howmedica*. Here, that balancing test supports transfer to the SDNY.

The U.K. Claims and the ADR Claims arise from the same allegations during the same time period and are predicated on the same theories of liability. Am. Compl. ¶¶ 1, 24, 32. Transferring both sets of claims would thus result in significant judicial efficiency. *McCusker v. hibu PLC*, 2015 WL 1600066, at *4–5 (E.D. Pa. Apr. 8, 2015) ("the interests of judicial economy weigh in favor of transferring the entire action to the parties' selected forum" where claims subject to the forum selection clause were factually related to a claim not governed by the clause). Tellingly, Plaintiffs do not bother to refute any of Defendants' cases in this respect. *See* Mot. at 13–15 (citing cases); Opp. at 14–20, 24, 27 (failing to address).

Finally, Plaintiffs attempt, but fail, to refute Defendants' assertion that Plaintiffs' English law claims will inevitably be stayed or dismissed on the grounds that Reckitt's Articles of Association contain a binding arbitration clause and exclusive forum provision. Motion at 13–14. Plaintiffs cite two foreign cases in

14

support of their argument that these provisions are inapplicable to the U.K.

Plaintiffs without providing any indication of whether they are controlling or

relevant authority under English law.  Opp. at 26.  Regardless, both cases—

*Microsoft Mobile v Sony Europe*, [2017] EWHC 374 (Ch) and *Ryanair v Esso*

*Italiana*, [2013] EWCA Civ 1450—are irrelevant as neither addresses whether an

arbitration provision in a corporation's articles of association is binding on

misrepresentation claims brought by shareholders of the corporation.  Instead, both

*Microsoft* and *Ryanair* involved unique circumstances in which the court

considered whether a jurisdiction or arbitration clause in a jet fuel supply

agreement and purchase agreement, respectively, covered claims arising out of one

party's participation in an unlawful cartel.  *Microsoft* at 72; *Ryanair* at 46.  Here,

where the arbitration and forum selection clause in Reckitt's Articles of

Association cover "**all disputes** between a shareholder in that shareholder's

capacity as such and the company and/or its directors arising out of or in

connection with these articles **or otherwise**" there can be no question that the U.K.

Claims were contemplated by the Articles and will therefore be stayed or

dismissed.  *See* Perla Dec. Ex. B at 62-63 (emphasis added).

## III.   CONCLUSION

This Court should transfer this case to the SDNY.

15

Dated: July 13, 2020

Respectfully submitted,

*/s/ Travis Miscia*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Michael G. Bongiorno
Travis Miscia
7 World Trade Center
250 Greenwich Street
New York, New York 10007
212 295 6425 (t)
212 230 8888 (f)
michael.bongiorno@wilmerhale.com
travis.miscia@wilmerhale.com

Timothy J. Perla
Jessica L. Lewis
60 State Street
Boston, MA 02109
617 526 6000 (t)
617 526 5000 (f)
timothy.perla@wilmerhale.com
jessica.lewis@wilmerhale.com

*Counsel for Defendants Reckitt Benckiser Group plc, Rakesh Kapoor, Adrian Hennah, and Adrian Bellamy*

**KING & SPALDING LLP**
Israel Dahan
Richard T. Marooney, Jr.
Paul A. Straus
1185 Avenue of the Americas
New York, NY 10036
212 556 2100 (t)
212 556 2222 (f)
idahan@kslaw.com
rmarooney@kslaw.com
pstraus@kslaw.com

*Counsel for Defendant Shaun Thaxter*

CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

July 13, 2020                              Respectfully submitted,
New York, New York


                                           /s/ Travis Miscia

                                           Travis Miscia