# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: +1 212 556 2100
Fax: +1 212 556 2222 www.kslaw.com

Paul Straus
Direct Dial: +1 212 556 2136
Email: Pstraus@kslaw.com

February 25, 2021

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

> Re:    ***City of Sterling Heights Police & Fire Retirement System v. Reckitt Benckiser Group PLC et al., 1:20-cv-10041 (PKC)***

Dear Judge Castel:

This firm represents Defendant Shaun Thaxter.  In accordance with Rule 3(A) of this Court's Individual Practices, we submit this letter in advance of moving to dismiss the Second Amended Complaint ("SAC").  The next conference is scheduled for March 22, 2021 at 12:00 p.m.

## I.    Background

Plaintiffs claim to be purchasers of American Depository Shares ("ADS") and ordinary shares of Reckitt Benckiser Group plc ("Reckitt") during the purported class period of July 28, 2014 through April 9, 2019 (the "Class Period").  Reckitt is headquartered in the United Kingdom.

Shaun Thaxter was not an officer or director of Reckitt.  Mr. Thaxter served as the Chief Executive Officer of Reckitt's wholly owned subsidiary, Reckitt Benckiser Pharmaceuticals Inc. ("RBP"), a specialty pharmaceutical business focusing on addiction treatments.  SAC ¶ 35.  On December 23, 2014, less than five months after the beginning of the Class Period, Reckitt spun off RBP through a "demerger".  The resulting stand-alone company was renamed Indivior Inc. and became a subsidiary of Indivior PLC. SAC ¶ 41.  Mr. Thaxter served as Indivior PLC's Chief Executive Officer and is not alleged to have had any further association with Reckitt after the December 23, 2014 demerger.

Plaintiffs' Second Amended Complaint asserts claims against Mr. Thaxter under Section 10(b) of the Securities Exchange Act and Rule 10b-5 (Count I), Section 20(a) of the Exchange Act (Count II), and English common law and the UK Financial Services and Markets Act (Counts III-V).  Plaintiffs' allegations do not give rise to a viable cause of action on any of these counts,

The Honorable P. Kevin Castel
Page 2

however, and the Second Amended Complaint should be dismissed for the reasons set forth below and in Reckitt's pre-motion letter (the "Reckitt Letter").[1]

As is explained in more detail in the Reckitt Letter, Plaintiffs' allegations relate to RBP's development of Suboxone, a revolutionary treatment which helps individuals with opioid use disorders overcome their addiction.  In October 2012, almost two years before the start of the Class Period, an employee at an RBP subsidiary provided misleading data about unintended pediatric exposures related to Suboxone to an official from the Massachusetts Medicaid Program ("MassHealth").  Mr. Thaxter is not alleged to have had knowledge of the communications at the time in 2012, and he subsequently approved a correction letter to MassHealth in 2015 after learning about them.  Nonetheless, on June 29, 2020 Mr. Thaxter pled guilty to the strict liability misdemeanor offense under the Food, Drug & Cosmetic Act of introducing misbranded drugs in commerce based on his status as a responsible executive with authority to prevent and promptly correct the miscommunications by the employee.  For the reasons explained below, Plaintiffs cannot use Mr. Thaxter's plea to a strict liability misdemeanor (an offense which, by definition, has no state-of-mind requirement) related to the conduct of another RBP employee in 2012 to establish that Mr. Thaxter made false and materially misleading statements with scienter during a Class Period that begins almost two years later.

In addition to the arguments set forth in the Reckitt Letter, the following are additional reasons why Plaintiffs' Second Amended Complaint should be dismissed with respect to Mr. Thaxter.

## II.    Plaintiffs' Section 10(b) and Rule 10b-5 Claims Fail

### a.  Plaintiffs Have Failed to Plead Any Actionable False Statements by Mr. Thaxter

As an initial matter, although the Class Period runs from July 28, 2014 to April 9, 2019, Plaintiffs acknowledge that Mr. Thaxter had no role in any of Reckitt's public statements after the demerger of RBP from Reckitt on December 23, 2014.  SAC ¶¶ 210, 217.

With respect to the five-month period prior to the demerger, Plaintiffs do not allege that any of the statements in Reckitt's July and October 2014 press releases were attributable to Mr. Thaxter.  Although Plaintiffs allege that all of the Individual Defendants are responsible for the statements in those press releases because the press releases were "reviewed and approved" by the Individual Defendants (SAC ¶¶ 174, 197), that conclusory allegation is not sufficient to state a claim against Mr. Thaxter.  Mr. Thaxter was not an employee, officer, or director of Reckitt (the entity that issued the press releases) and there are no allegations to support the claim that Mr. Thaxter was a "maker" of any of the statements in the July and October 2014 press releases.  *See Janus Capital Group v. First Derivative Traders*, 564 U.S. 135, 143 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."); *In re Virtus Investment Partners*

---

[1]  Mr. Thaxter incorporates by reference the arguments made in Reckitt's pre-motion letter as to why all of Plaintiffs' claims should be dismissed.

The Honorable P. Kevin Castel
Page 3

*Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (holding that, absent allegations of control or facts that would permit attribution, a trust could not be held liable for statements made by its publicly traded affiliate under *Janus*).

Finally, Plaintiffs do not allege that Mr. Thaxter made any false or misleading statements on Reckitt's October 21, 2014 earnings call (SAC ¶¶ 199-205), and the transcript (incorporated by reference into the complaint) makes clear that Mr. Thaxter was not a participant on that call.

### b.  Plaintiffs Have Failed to Allege Scienter with Respect to Mr. Thaxter

*The Strict Liability Misdemeanor*.  In their most recent amendment, Plaintiffs added allegations related to Mr. Thaxter's guilty plea to a strict liability misdemeanor under the responsible corporate officer doctrine – a charge that, by definition, says nothing about whether Mr. Thaxter acted with improper intent at any time.  SAC ¶¶ 124-46.  Specifically, in October 2012 a Medical Affairs Manager employed by an RBP subsidiary made misrepresentations to MassHealth concerning the relative pediatric safety of the Suboxone Film as compared to the Suboxone Tablet.  SAC ¶¶ 130-34.  Mr. Thaxter did not plead guilty to making any false statements to MassHealth, or to even knowing that the Medical Affairs Manager planned to send MassHealth incorrect information, and Plaintiffs do not make any allegation to the contrary.  SAC ¶ 133.[2]  This incident – in which an employee, not Mr. Thaxter, made misrepresentations to MassHealth in October 2012 – has nothing to do with whether any of the public statements made to the investing public by Mr. Thaxter were inaccurate, misleading, or made with scienter almost two years later.[3]

---

[2]  Plaintiffs claim that because Mr. Thaxter attempted several months earlier (in May 2012) to set up a meeting with the physician responsible for MassHealth's coverage decisions, he must have been aware of a "conspiratorial scheme to influence MassHealth."  SAC ¶ 146.  Plaintiffs concede the alleged meeting never took place (*id.*), and even if it had, such allegations do not warrant any inference about Mr. Thaxter's intent other than that he desired to meet with the person responsible for making coverage decisions at MassHealth.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007) ("[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences.").

[3]  Mr. Thaxter did not plead guilty to "criminal charges associated with the failure to prevent and promptly correct" the dissemination of marketing materials in the form of the charts described in ¶ 153(e) and (f) of the Second Amended Complaint.  As the judicially noticeable plea documents make clear, the charge Mr. Thaxter pled guilty to concerned discrete misrepresentations made to MassHealth by another employee, and Mr. Thaxter did not plead guilty to failing to prevent the dissemination of any other materials beyond the Medical Affairs Manager's correspondence and the chart that was provided to that one recipient.  On this motion to dismiss, the Court may disregard allegations contradicted by documents referred to or incorporated in the complaint. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 256, 149 n.1 (2d Cir. 2012) (considering, on a motion to dismiss, documents incorporated by reference into the complaint and "matters of which we may take judicial notice," and accepting allegations in

The Honorable P. Kevin Castel
Page 4

Critically, the charge that Mr. Thaxter pled guilty to was a *strict liability* misdemeanor offense under the responsible corporate officer doctrine, which does not require any proof of knowledge. The responsible corporate officer doctrine provides for criminal liability for causing the introduction into interstate commerce of a drug that is misbranded, in violation of 21 U.S.C. §§ 331(a), 333(a)(1), and 352(a).[4] This doctrine permits the prosecution of corporate officers for Food Drug and Cosmetic Act violations without the need to show intent, willful conduct, or even any personal involvement in the underlying wrongdoing. *United States v. DeCoster*, 828 F.3d 626, 632 (8th Cir. 2016) (the doctrine allows liability "regardless of whether [the officers] were aware of or intended to cause the violation"). As a result, pleas entered pursuant to the doctrine do not demonstrate any level of intent, much less the fraudulent intent necessary to show scienter for the purposes of a securities fraud claim.

Finally, as Plaintiffs' own allegations confirm, Mr. Thaxter "approved sending a correction letter to MassHealth" in December 2015. SAC ¶ 138. The plea documents, upon which Plaintiffs rely, explicitly state that this correction was made in late 2015 after Mr. Thaxter learned of the misrepresentation to MassHealth.[5] These actions undercut any allegation that Mr. Thaxter was engaged in a conspiracy to fraudulently conceal misconduct during the Class Period.

*Email Concerning Withdrawing the Suboxone Tablet.* Plaintiffs allege that Mr. Thaxter, among others, received an email from Reckitt's investor-relations director referencing "'our plans' to withdraw Suboxone Tablet's FDA approval in order to delay FDA approval of generic versions of Suboxone Tablet." SAC ¶ 106. Plaintiffs go on to allege that "Reckitt's general counsel responded by emailing … 'please do not create any emails or other documents suggesting that we would consider' attempting to delay FDA approval of generic versions of Suboxone Tablet in this way, and 'any decision we make will be based on consumer safety.'" *Id.* Plaintiffs claim the investor-relations director's email is evidence of a conspiracy to engage in anti-competitive behavior, but there are no allegations supporting the claim that the views of the investor-relations director were shared by the group that received the email. To the contrary, Plaintiffs' claims are undermined by their own allegation, which demonstrates that Reckitt's general counsel replied to make quite clear that he disagreed with the views expressed by the investor-relations director. Nobody else on the email – including Mr. Thaxter – is alleged to have disagreed with the general counsel or responded with support for the investor-relations director's views.

---

complaint as true "unless conclusory or contradicted by more specific allegations or documentary evidence.").

[4] 21 USC § 331(a) prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded. Section 333(a)(1) provides that persons that violate Section 331(a) "shall be imprisoned for not more than one year or fined not more than $1,000, or both." Section 352(a) provides, in relevant part, that a drug shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular."

[5] "After learning of the statements, THAXTER approved sending a correction letter to MassHealth." *United States v. Shaun Thaxter*, 1:20-cr-00024-JPJ-PMS, Dkt. #1, Information ¶ 31 (W.D. Va. June 30, 2020).

The Honorable P. Kevin Castel
Page 5

*Plaintiffs Do Not Allege Any Suspicious Stock Sales.* Like the other Individual Defendants, Mr. Thaxter is not alleged to have sold any Reckitt securities during the Class Period, and Plaintiffs cannot plead scienter against Mr. Thaxter based on stock sales by other Reckitt employees four years before the start of the Class Period.[6]

### III.    Plaintiffs Have No Control Person Claim Against Mr. Thaxter

Plaintiffs' control person claim (Count II) against Mr. Thaxter fails for three reasons. First, Mr. Thaxter was not a "control person" with respect to Reckitt. SAC ¶ 277. Under § 20(a) of the Exchange Act, control persons are those that have "the power to direct or cause the direction of the management and policies of a person." *SEC v. First Jersey Sec. Litig.*, 101 F.3d 1450, 1473 (2d Cir. 1996). As the CEO of RBP (SAC ¶ 35), Reckitt's wholly-owned subsidiary, Mr. Thaxter did not have "control" over Reckitt at any point during the Class Period. *See Silsby v. Icahn*, 17 F. Supp. 3d 348 (S.D.N.Y. 2014) (dismissing § 20(a) claim "for the additional reason that the plaintiffs have failed to plead facts supporting a plausible inference that Icahn controlled the defendants who allegedly committed the primary violations at issue in this case").

Second, Plaintiffs Section 10(b) claims against Reckitt fail, leaving no basis for a Section 20(a) claim against the Individual Defendants. *See Silsby*, 17 F. Supp. 3d at 370.

Third, Plaintiffs fail to plead "culpable participation," which must be plead with the same particularity as scienter. *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546, 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004). Plaintiffs' allegations regarding the Individual Defendants' "culpable participation" are entirely conclusory and "[b]ased on their positions as officers and directors of Reckitt." SAC ¶ 277. As such, they do not sufficiently plead culpable participation.

Mr. Thaxter is prepared to discuss these matters and the matters raised in the Reckitt Letter at the Court's convenience and thanks the Court for its attention.

Respectfully submitted,

*Paul A. Straus*

Paul A. Straus

cc:    All Counsel of Record (by ECF)

---

[6] As a "person discharging managerial responsibilities" of Indivior PLC, Mr. Thaxter was required to publicly disclose transactions in Indivior PLC securities pursuant to the UK Financial Conduct Authority's Disclosure and Transparency Rules and the European Union's Market Abuse Regulations. After the demerger, judicially noticeable public filings demonstrate that Mr. Thaxter increased his holdings in Indivior PLC by over 400,000 shares, including through the purchase of 385,000 shares on the open market. In other words, during the Class Period, Mr. Thaxter's shareholdings in "Key Non-Party" Indivior increased by over 700%.