# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: +1 212 556 2100
Fax: +1 212 556 2222 www.kslaw.com

Paul Straus
Direct Dial: +1 212 556 2136
Email:  Pstraus@kslaw.com

April 9, 2021

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

> Re:    ***City of Sterling Heights Police & Fire Retirement System v. Reckitt Benckiser Group PLC et al., 1:20-cv-10041 (PKC)***

Dear Judge Castel:

This firm represents Defendant Shaun Thaxter.  In accordance with Rule 3(A) of this Court's Individual Practices and this Court's March 11, 2021 order, we submit this letter in advance of moving to dismiss the Third Amended Complaint ("TAC").  The next conference is scheduled for April 26, 2021 at 10:30 a.m.

## I.   Background

Plaintiffs claim to be purchasers of American Depository Shares ("ADS") and ordinary shares of Reckitt Benckiser Group plc ("Reckitt") during the purported class period of July 28, 2014 through April 9, 2019 (the "Class Period").  Reckitt is headquartered in the United Kingdom.

Shaun Thaxter was not an officer or director of Reckitt.  Mr. Thaxter served as the Chief Executive Officer of Reckitt's wholly owned subsidiary, Reckitt Benckiser Pharmaceuticals Inc. ("RBP"), a specialty pharmaceutical business focusing on addiction treatments.  TAC ¶ 42.  On December 23, 2014, less than five months after the beginning of the Class Period, Reckitt spun off RBP through a "demerger".  The resulting stand-alone company was renamed Indivior Inc. and became a subsidiary of Indivior PLC. TAC ¶ 48.  Mr. Thaxter served as Indivior PLC's Chief Executive Officer and is not alleged to have had any further association with Reckitt after the December 23, 2014 demerger.

Defendants filed pre-motion letters stating their intention to move to dismiss Plaintiffs' Second Amended Complaint on February 26, 2021.  In response, on March 10, 2021, Plaintiffs

The Honorable P. Kevin Castel
Page 2

filed a pre-motion letter that, *inter alia*, requested leave to amend their complaint yet again ("Plaintiffs' Pre-Motion Letter").  The Court granted Plaintiffs' request, and Plaintiffs filed the Third Amended Complaint on March 26, 2021.

Plaintiffs' latest complaint continues to assert claims against Mr. Thaxter under Section 10(b) of the Securities Exchange Act and Rule 10b-5 (Count I), Section 20(a) of the Exchange Act (Count II), and English common law (Counts III, V).  Plaintiffs' allegations do not give rise to a viable cause of action on any of these counts, however, and the Third Amended Complaint should be dismissed for the reasons set forth below and in Reckitt's pre-motion letter (the "Reckitt Letter").[1]

As is explained in more detail in the Reckitt Letter, Plaintiffs' allegations relate to RBP's development of Suboxone, a revolutionary treatment which helps individuals with opioid use disorders overcome their addiction.  In October 2012, almost two years before the start of the Class Period, an employee at an RBP subsidiary provided misleading data about unintended pediatric exposures related to Suboxone to an official from the Massachusetts Medicaid Program ("MassHealth").  Mr. Thaxter is not alleged to have had knowledge of the communications at the time in 2012, and he subsequently approved a correction letter to MassHealth in 2015 after learning about them.  Nonetheless, on June 29, 2020 Mr. Thaxter pled guilty to the strict liability misdemeanor offense under the Food, Drug & Cosmetic Act of introducing misbranded drugs in commerce based on his status as a responsible executive with authority to prevent and promptly correct the miscommunications by the employee.  For the reasons explained below, Plaintiffs cannot use Mr. Thaxter's plea to a strict liability misdemeanor (an offense which, by definition, has no state-of-mind requirement) related to the conduct of another RBP employee in 2012 to establish that Mr. Thaxter made false and materially misleading statements with scienter during a Class Period that begins almost two years later.

In addition to the arguments set forth in the Reckitt Letter, the following are additional reasons why Plaintiffs' Third Amended Complaint should be dismissed with respect to Mr. Thaxter.

## II.  Plaintiffs' Section 10(b) and Rule 10b-5 Claims Fail

### a.  Plaintiffs Have Failed to Plead Any Actionable False Statements by Mr. Thaxter

As an initial matter, although the Class Period runs from July 28, 2014 to April 9, 2019, Plaintiffs acknowledge that Mr. Thaxter had no role in any of Reckitt's public statements after the demerger of RBP from Reckitt on December 23, 2014.  TAC ¶¶ 263, 270.

With respect to the five-month period prior to the demerger, Plaintiffs do not allege that any of the statements in Reckitt's July and October 2014 press releases were attributable to Mr. Thaxter.  Although Plaintiffs allege that all of the Individual Defendants are responsible for the

---

[1]  Mr. Thaxter incorporates by reference the arguments made in Reckitt's pre-motion letter as to why all of Plaintiffs' claims should be dismissed.

The Honorable P. Kevin Castel
Page 3

statements in those press releases because the press releases were "reviewed and approved" by the Individual Defendants (TAC ¶¶ 227, 250), that conclusory allegation is not sufficient to state a claim against Mr. Thaxter. Mr. Thaxter was not an employee, officer, or director of Reckitt (the entity that issued the press releases) and there are no allegations to support the claim that Mr. Thaxter was a "maker" of any of the statements in the July and October 2014 press releases. *See Janus Capital Group v. First Derivative Traders*, 564 U.S. 135, 143 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."); *In re Virtus Investment Partners Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (holding that, absent allegations of control or facts that would permit attribution, a trust could not be held liable for statements made by its publicly traded affiliate under *Janus*).

Finally, Plaintiffs do not allege that Mr. Thaxter made any false or misleading statements on Reckitt's October 21, 2014 earnings call (TAC ¶¶ 252-258), and the transcript (incorporated by reference into the complaint) makes clear that Mr. Thaxter was not a participant on that call.[2]

### b. Plaintiffs Have Failed to Allege Scienter with Respect to Mr. Thaxter

Now on their fourth complaint, Plaintiffs have still not alleged any facts suggesting that Mr. Thaxter knew any statements were false at the time they were made.

*The Strict Liability Misdemeanor*. Mr. Thaxter pled guilty to a strict liability misdemeanor under the responsible corporate officer doctrine – a charge that, by definition, says nothing about whether Mr. Thaxter acted with improper intent at any time. TAC ¶¶ 171-97. Specifically, in October 2012 a Medical Affairs Manager employed by an RBP subsidiary made misrepresentations to MassHealth concerning the relative pediatric safety of the Suboxone Film as compared to the Suboxone Tablet. TAC ¶¶ 177-82. Mr. Thaxter did not plead guilty to making any false statements to MassHealth, or to even knowing that the Medical Affairs Manager planned to send MassHealth incorrect information, and Plaintiffs do not make any allegation to the contrary. TAC ¶ 181.[3] This incident – in which an employee, not Mr. Thaxter, made misrepresentations to MassHealth in October 2012 – has nothing to do with whether any of

---

[2] Although we do not believe this point is susceptible to dispute, Plaintiffs' Third Amended Complaint continues – without any basis – to include Mr. Thaxter in the claims concerning the October 14, 2014 earnings call.

[3] Plaintiffs claim that because Mr. Thaxter attempted several months earlier (in May 2012) to set up a meeting with the physician responsible for MassHealth's coverage decisions, he must have been aware of a "conspiratorial scheme to influence MassHealth." TAC ¶ 197. Plaintiffs concede the alleged meeting never took place (*id.*), and even if it had, such allegations do not warrant any inference about Mr. Thaxter's intent other than that he desired to meet with the person responsible for making coverage decisions at MassHealth. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007) ("[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences.").

The Honorable P. Kevin Castel
Page 4

the public statements made to the investing public by Mr. Thaxter were inaccurate, misleading, or made with scienter almost two years later.[4]

In Plaintiffs' Pre-Motion Letter, Plaintiffs requested leave to amend in part to incorporate additional facts from unsealed documents from the criminal proceedings against Indivior, Timothy Baxter, and Mr. Thaxter.[5]  While Plaintiffs have made some changes to their allegations concerning the communications with MassHealth (TAC ¶¶ 152, 173, 178, 180, 183), none of the new allegations in the Third Amended Complaint indicate that Mr. Thaxter had any knowledge of these communications at the time in 2012.

This is not surprising.  Critically, the charge that Mr. Thaxter pled guilty to was a *strict liability* misdemeanor offense under the responsible corporate officer doctrine, which does not require any proof of knowledge.  The responsible corporate officer doctrine provides for criminal liability for causing the introduction into interstate commerce of a drug that is misbranded, in violation of 21 U.S.C. §§ 331(a), 333(a)(1), and 352(a).[6]  This doctrine permits the prosecution of corporate officers for Food Drug and Cosmetic Act violations without the need to show intent, willful conduct, or even any personal involvement in the underlying wrongdoing.  *United States v. DeCoster*, 828 F.3d 626, 632 (8th Cir. 2016) (the doctrine allows liability "regardless of whether [the officers] were aware of or intended to cause the violation").  As a result, pleas entered pursuant to the doctrine do not demonstrate any level of intent, much less the fraudulent intent necessary to show scienter for the purposes of a securities fraud claim.

---

[4]  Mr. Thaxter did not plead guilty to "criminal charges associated with the failure to prevent and promptly correct" the dissemination of marketing materials in the form of the charts described in ¶ 204(e) and (f) of the Third Amended Complaint.  As the judicially noticeable plea documents make clear, the charge Mr. Thaxter pled guilty to concerned discrete misrepresentations made to MassHealth by another employee, and Mr. Thaxter did not plead guilty to failing to prevent the dissemination of any other materials beyond the Medical Affairs Manager's correspondence and the chart that was provided to that one recipient.  On this motion to dismiss, the Court may disregard allegations contradicted by documents referred to or incorporated in the complaint.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 256, 149 n.1 (2d Cir. 2012) (considering, on a motion to dismiss, documents incorporated by reference into the complaint and "matters of which we may take judicial notice," and accepting allegations in complaint as true "unless conclusory or contradicted by more specific allegations or documentary evidence.").

[5] Plaintiffs' Pre-Motion Letter at 3 n.4, 17.

[6]  21 USC § 331(a) prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.  Section 333(a)(1) provides that persons that violate Section 331(a) "shall be imprisoned for not more than one year or fined not more than $1,000, or both."  Section 352(a) provides, in relevant part, that a drug shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular."

The Honorable P. Kevin Castel
Page 5

Plaintiffs appear to recognize this, acknowledging that "Thaxter's crime did not have a state of mind requirement…." Plaintiffs' Pre-Motion Letter at 11. They have asked this Court to view these allegations "holistically," (Plaintiffs' Pre-Motion Letter at 11) but a misdemeanor that – by definition – does not include a state of mind requirement cannot generate an inference of scienter. Viewing these insufficient allegations "holistically" with Plaintiffs' other insufficient scienter allegations cannot alter this conclusion. *See In re Barrick Gold Corp. Sec. Litig.,* 341 F. Supp. 3d 358 (S.D.N.Y. 2018) (granting motion to dismiss in part because "these individually insufficient allegations do not combine to create an inference of scienter sufficient to satisfy the PSLRA" and explaining that the Second Circuit has found in many contexts that "zero plus zero is zero") (citing *Tepperwien v. Entergy Nuclear Operations*, *Inc.,* 663 F.3d 556, 572 (2d. Cir. 2011)).

Finally, as Plaintiffs' own allegations confirm, Mr. Thaxter "approved sending a correction letter to MassHealth" in December 2015. TAC ¶ 1878. The plea documents, upon which Plaintiffs rely, explicitly state that this correction was made in late 2015 after Mr. Thaxter learned of the misrepresentation to MassHealth.[7] These actions undercut any allegation that Mr. Thaxter was engaged in a conspiracy to fraudulently conceal misconduct during the Class Period.[8]

*Email Concerning Withdrawing the Suboxone Tablet.* Plaintiffs allege that Mr. Thaxter, among others, received an email from Reckitt's investor-relations director referencing "'our plans" to withdraw Suboxone Tablet's FDA approval in order to delay FDA approval of generic versions of Suboxone Tablet." TAC ¶ 148. Plaintiffs go on to allege that "Reckitt's general counsel responded by emailing … 'please do not create any emails or other documents suggesting that we would consider' attempting to delay FDA approval of generic versions of Suboxone Tablet in this way, and 'any decision we make will be based on consumer safety.'" *Id.* Plaintiffs claim the investor-relations director's email is evidence of a conspiracy to engage in anti-competitive behavior, but there are no allegations supporting the claim that the views of the investor-relations director were shared by the group that received the email. To the contrary, Plaintiffs' claims are undermined by their own allegation, which demonstrates that Reckitt's general counsel replied to make quite clear that he disagreed with the views expressed by the investor-relations director. Nobody else on the email – including Mr. Thaxter – is alleged to have disagreed with the general counsel or responded with support for the investor-relations director's views. Plaintiffs have not alleged any new facts in the Third Amended Complaint that support their interpretation of this email exchange.[9]

---

[7] "After learning of the statements, THAXTER approved sending a correction letter to MassHealth." *United States v. Shaun Thaxter*, 1:20-cr-00024-JPJ-PMS, Dkt. #1, Information ¶ 31 (W.D. Va. June 30, 2020).

[8] Plaintiffs' assertion that Mr. Thaxter only approved sending a correction letter due to the pending government investigation of Indivior (TAC ¶ 187) is wholly conclusory and not supported by any fact alleged in the TAC.

[9] In fact, a number of plaintiffs' new allegations in the Third Amended Complaint attempt to base a claim on an anti-competitive "scheme," but in reality amount to discussions of business

The Honorable P. Kevin Castel
Page 6

*Plaintiffs Do Not Allege Any Suspicious Stock Sales.*    Like the other Individual Defendants, Mr. Thaxter is not alleged to have sold any Reckitt securities during the Class Period, and Plaintiffs cannot plead scienter against Mr. Thaxter based on stock sales by other Reckitt employees four years before the start of the Class Period.[10]

*"Core Operations" Cannot Save Plaintiffs' Claims.*    Unable to allege any specific facts that generate a strong inference of scienter, Plaintiffs argued that because RBP/Indivior supposedly was a "one-drug business," this Court should infer scienter on the part of its CEO, Mr. Thaxter, based on the "core operations" doctrine.  Plaintiffs' Pre-Motion Letter at 11-12.  In support of this theory, Plaintiffs pointed to their allegations that Mr. Thaxter was "knowledgeable about Suboxone strategy" (Plaintiffs' Pre-Motion Letter at 11) and have added allegations to the Third Amended Complaint stating that Mr. Thaxter "spearheaded the growth and development of RBP" (TAC ¶ 42), and that between 2006 – 2019, 100% of RBP/Indivior's net revenue was derived from Suboxone (TAC ¶ 91).[11]

But as Plaintiffs' cited authority stated in dismissing similar claims, courts have questioned whether, in light of the PSLRA's pleading requirements, the core operations theory remains viable.  *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 424 (S.D.N.Y. 2020) ("It remains unresolved in the Second Circuit whether the core-operations doctrine survived the passage of the PSLRA, and many courts have 'expressed doubts as to the doctrine's continuing import.'") (citation omitted) (cited in Plaintiffs' Pre-Motion Letter at 11).  The court in *City of Omaha* went on to hold that even if the "core operations" doctrine is viable, it "would be insufficient by itself to support strong circumstantial evidence of scienter.  *Id.*  Plaintiffs' desperate attempt to rely on this theory here should be rejected for the same reason – there are no viable scienter allegations with respect to Mr. Thaxter.

---

strategy.  E.g., TAC ¶¶ 106, 199 ("Thaxter attended presentations in which RBP personnel stated that the program was about 'building brand loyalty,' and could 'accelerate film share capture,' meaning increase sales of Film.").  In any event, plaintiffs cannot base a securities fraud claim on a supposed undisclosed anti-competitive "scheme" by alleging facts already disclosed in public. *See* 4/9/21 Reckitt Letter at 6-7.

[10]  As a "person discharging managerial responsibilities" of Indivior PLC, Mr. Thaxter was required to publicly disclose transactions in Indivior PLC securities pursuant to the UK Financial Conduct Authority's Disclosure and Transparency Rules and the European Union's Market Abuse Regulations.  After the demerger, judicially noticeable public filings demonstrate that Mr. Thaxter increased his holdings in Indivior PLC by over 400,000 shares, including through the purchase of 385,000 shares on the open market.  In other words, during the Class Period, Mr. Thaxter's shareholdings in "Key Non-Party" Indivior increased by over 700%.

[11]  Plaintiffs' new allegation that there were discussions among attorneys and consultants in 2007 (seven years before the alleged misstatements were made) regarding the need for clinical data to prove the superior safety of the Film is insufficient to support their claims. TAC ¶ 108.  This allegation says nothing about what recommendations were made or what conclusions, if any, were reached as a result of the discussions, let alone what data the Defendants relied on by the time of the alleged misstatements.

The Honorable P. Kevin Castel
Page 7

### III.  Plaintiffs Have No Control Person Claim Against Mr. Thaxter

Plaintiffs' control person claim (Count II) against Mr. Thaxter fails for three reasons. First, Mr. Thaxter was not a "control person" with respect to Reckitt.  TAC ¶ 331.  Under § 20(a) of the Exchange Act, control persons are those that have "the power to direct or cause the direction of the management and policies of a person." *SEC v. First Jersey Sec. Litig.*, 101 F.3d 1450, 1473 (2d Cir. 1996).  As the CEO of RBP (TAC ¶ 42), Reckitt's wholly-owned subsidiary, Mr. Thaxter did not have "control" over Reckitt at any point during the Class Period. *See Silsby v. Icahn*, 17 F. Supp. 3d 348 (S.D.N.Y. 2014) (dismissing § 20(a) claim "for the additional reason that the plaintiffs have failed to plead facts supporting a plausible inference that Icahn controlled the defendants who allegedly committed the primary violations at issue in this case").

Second, Plaintiffs Section 10(b) claims against Reckitt fail, leaving no basis for a Section 20(a) claim against the Individual Defendants. *See Silsby*, 17 F. Supp. 3d at 370.

Third, Plaintiffs fail to plead "culpable participation," which must be plead with the same particularity as scienter. *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546, 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004).  Plaintiffs' allegations regarding the Individual Defendants' "culpable participation" are entirely conclusory and "[b]ased on their positions as officers and directors of Reckitt."  TAC ¶ 331.  As such, they do not sufficiently plead culpable participation.[12]

Mr. Thaxter is prepared to discuss these matters and the matters raised in the Reckitt Letter at the Court's convenience and thanks the Court for its attention.

Respectfully submitted,

*Paul A. Straus*

Paul A. Straus

cc:    All Counsel of Record (by ECF)

---

[12]  Although Mr. Thaxter raised these points in his previous pre-motion letter, Plaintiffs' Pre-Motion Letter made no attempt to justify asserting this claim against him, Nevertheless, Plaintiffs have asserted this baseless claim yet again in the Third Amended Complaint.