UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>        Defendants. | No. 1:20-cv-10041-PKC |

**DEFENDANT SHAUN THAXTER'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Richard T. Marooney
Israel Dahan
Paul A. Straus
Eric A. Hirsch
Alexander Noble
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

*Attorneys for Defendant Shaun Thaxter*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ....................................................................................................................... 6

I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE SECTION 10(b) CLAIM
AGAINST MR. THAXTER ................................................................................................ 6

   A.  Plaintiffs Fail to Allege that Mr. Thaxter Made Any False or Misleading Statement. ...... 6

      1.   Mr. Thaxter Was not the "Maker" of Any Statements in the July 28, 2014 Release,
October 21, 2014 Release, or October 21, 2014 Earnings Call ................................. 7

      2.   None of Mr. Thaxter's Statements in the November 17, 2014 Release or July 28,
2014 Earnings Call Were False or Misleading. ......................................................... 8

         a.   Mr. Thaxter's Statements Concerning Financial Results ....................................... 8

         b.   Mr. Thaxter's Statements Concerning the Suboxone Film. ................................... 8

         c.   Mr. Thaxter's Statements Concerning the Demerger. ........................................ 10

         d.   Mr. Thaxter's Statements Concerning Compliance and Sales Practices .............. 11

   B.  Plaintiffs Fail to Allege Scienter on the Part of Mr. Thaxter ......................................... 12

      1.   Plaintiffs Fail to Allege that Mr. Thaxter Had Motive and Opportunity to Commit
Securities Fraud ..................................................................................................... 12

      2.   Plaintiffs Fail to Allege Strong Circumstantial Evidence that Mr. Thaxter Engaged in
Conscious Misconduct or Recklessness. .................................................................. 13

II.   PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE SECTION 20(a) CONTROL
PERSON CLAIM AGAINST MR. THAXTER. ............................................................... 18

III.  PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE ENGLISH COMMON LAW
CLAIMS AGAINST MR. THAXTER ............................................................................. 19

CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018) ............................................................ 13

*Asay v. Pinduoduo Inc.*,
    18-cv-7625 (PKC), 2020 U.S. Dist. LEXIS 56179 (S.D.N.Y. Mar. 30, 2020) ............ 9, 17, 20

*In re AT&T/DirecTV Now Sec. Litig.*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020) ............................................................ 21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ......................................................................... 15

*Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011) ...................................................... 19, 20, 21

*Bratusov v. ComScore, Inc.*,
    No. 19-CV-3210 (KPF), 2020 U.S. Dist. LEXIS 110695 (S.D.N.Y. June 24,
    2020) ................................................................................................... 20

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) ............................................................ 12

*City of Brockton Ret. Sys. v. Avon Prods.*,
    2014 U.S. Dist. LEXIS 137387 (S.D.N.Y. Sep. 28, 2014) .................................. 19

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ................................................................... 12, 13

*De Oliveira v. Bessemer Tr. Co., N.A.*,
    No. 09-CV-0713 (PKC), 2010 U.S. Dist. LEXIS 33257 (S.D.N.Y. Mar. 24,
    2010) ............................................................................................. 15, 16, 17

*Defer LP v. Raymond James Fin., Inc.*,
    654 F. Supp. 2d 204 (S.D.N.Y. 2009) ........................................................ 15, 16, 18

*In re Diebold Nixdorf, Inc. Sec. Litig.*,
    No. 19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449 (S.D.N.Y. Mar. 30,
    2021) ................................................................................................... 21

*In re Hain Celestial Grp. Inc., Sec. Litig.*,
    No. 2:16-cv-04581 (ADS) (SIL), 2019 U.S. Dist. LEXIS 54319 (E.D.N.Y.
    Mar. 29, 2019) ....................................................................................... 21

*Janus Capital Group v. First Derivative Traders*,
    564 U.S. 135 (2011)............................................................................................4, 10

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer (In re Merrill Lynch
    Auction Rate Sec. Litig.)*,
    851 F. Supp. 2d 512 (S.D.N.Y. 2012).......................................................15, 16

*Liu v. Intercept Pharm., Inc.*,
    No. 17-cv-7371 (LAK), 2020 U.S. Dist. LEXIS 53252 (S.D.N.Y. Mar. 26,
    2020)..................................................................................................................... 20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 149 (2d Cir. 2012)...............................................................8, 9, 16

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    437 F. Supp. 3d 329 (S.D.N.Y. 2020).............................................................. 20

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)...............................................11, 12, 13

*In re Satyam Computer Servs. Secs. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013)............................................................ 22

*Shemian v. Research in Motion Ltd.*,
    No. 11-CV-4068 (RJS), 2013 U.S. Dist. LEXIS 49699 (S.D.N.Y. Mar. 28,
    2013), aff'd, 570 F. App'x 32 (2d Cir. 2014)............................................... 20

*In re Sibanye Gold Ltd. Sec. Litig.*,
    No. 18-CV-3721(KAM) (PK), 2020 U.S. Dist. LEXIS 210099 (E.D.N.Y.
    Nov. 10, 2020)..................................................................................................... 12

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014)...........................................................21, 22

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)............................................................................... 14

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*,
    941 F. Supp. 1369 (S.D.N.Y. 1996)............................................................... 21

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
    412 F. Supp. 3d 353 (S.D.N.Y. 2019).............................................................. 13

*In re Sunedison Sec. Litig.*,
    300 F. Supp. 3d 444 (S.D.N.Y. 2018).............................................................. 13

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008).............................................................................. 16

*Tellabs v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................... 21

*United States v. Gel Spice Co.*,
   601 F. Supp. 1205 (E.D.N.Y. 1984)............................................................ 18

*Wright v. Ernst & Young LLP*,
   152 F.3d 175 (2d Cir. 1998)........................................................................ 10

**Statutes**

15 U.S.C. § 78u-4(b)(1)..................................................................................9, 10

21 U.S.C. §§ 331(a), 333(a)(1), and 352(a)...................................................... 18

Food, Drug & Cosmetic Act............................................................................8, 18

Private Securities Litigation Reform Act of 1995.. ……………………………………..*passim*

Securities Exchange Act of 1934.................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)............................................................ 6

Federal Rule of Civil Procedure 9(b)...............................................................6, 9

Defendant Shaun Thaxter ("Mr. Thaxter" or "Defendant Thaxter") submits this brief in support of his motion to dismiss the Third Amended Complaint (the "TAC") with prejudice.  All exhibits cited in this brief are attached to the Declaration of Paul Straus submitted herewith ("Straus Decl.").  The TAC asserts claims against Mr. Thaxter under (1) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, (2) Section 20(a) of the Exchange Act, and (3) English law, for fraudulent misrepresentation and negligent misstatement. Mr. Thaxter moves to dismiss all claims against him pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Now on their fourth complaint in this action, Plaintiffs fail to allege any actionable claim against Defendant Thaxter.  The claims asserted in the TAC, including the claims against Mr. Thaxter, fail for the reasons set forth in the motion to dismiss brief submitted by defendant Reckitt Benckiser Group PLC ("Reckitt Group").[1]  But the claims asserted against Mr. Thaxter, who served as CEO of Reckitt Group's subsidiary during a portion of the relevant period, also fail for the following additional reasons:

First, Plaintiffs' Section 10(b) claim fails to plead any actionable misstatements against Mr. Thaxter.  Plaintiffs apparently seek to hold Mr. Thaxter liable for statements made by Reckitt Group after the demerger in December 2014; for press releases issued by Reckitt Group, over which Mr. Thaxter did not have authority; and even for statements on an earnings call that Mr. Thaxter did not attend.  None of these can form the basis of a claim.

---

[1] Mr. Thaxter joins in and incorporates by reference the arguments for the dismissal of Plaintiffs' claims set forth in the Brief of the Reckitt Group and the other individual defendants in support of their Motion to Stay and Dismiss the Amended Complaint (the "Reckitt Brief") to the extent applicable to Mr. Thaxter.

The remaining few statements that Plaintiffs allege against Mr. Thaxter were made on earnings calls and are either generalized statements of corporate optimism, accurate historical statements of financial results, vague statements about compliance, or expectations of future performance, none of which are actionable as a matter of law.

<u>Second</u>, Plaintiffs' Section 10(b) claim fails because Plaintiffs fail to plead scienter as to Mr. Thaxter.  Plaintiffs do not plead any concrete benefits, stock sales or other facts relevant to motive and opportunity.  They also do not plead facts showing any conscious misconduct or recklessness.  For example, while Plaintiffs rely heavily on their allegation that an employee of a subsidiary of Reckitt Benckiser Pharmaceuticals ("RBP") allegedly provided misstated data to MassHealth long before the start of the purported Class Period, they do not plead a single fact from which it could be inferred that Mr. Thaxter was aware of the allegedly misstated data in 2014, at the time of the alleged press releases and earnings calls.  Instead, Plaintiffs plead that Mr. Thaxter later approved the issuance of a *correction* to MassHealth.  Similarly, Plaintiffs attempt to rely on the fact that Mr. Thaxter pled guilty to a strict liability misdemeanor pursuant to the responsible corporate officer doctrine, which creates liability regardless of whether an officer was "aware of or intended to cause the violation."  That cannot support an inference of scienter under the PSLRA.

Ultimately, Plaintiffs' attempt to plead scienter against Mr. Thaxter reduces to the allegation that he was the CEO of RBP (and later Indivior PLC), and Suboxone was the company's most important drug. That thin argument is not sufficient; if it were, it would mean that when plaintiffs assert claims against CEOs involving important aspects of their business, they would no longer need to satisfy the PSLRA's requirement to plead scienter.  That is precisely the type of liability theory Congress rejected when it passed the PSLRA.

<u>Third</u>, Plaintiffs' Section 20(a) control person claim fails because Plaintiffs fail to state an underlying claim under Section 10(b), but also because Mr. Thaxter is not a control person with respect to any of the other defendants in this action—who are limited to Reckitt Group and its employees, the former parent of the company that employed Mr. Thaxter, RBP.

<u>Fourth</u>, because Plaintiffs fail to plead a material misstatement as to Mr. Thaxter, they also fail to state a claim for fraud or misrepresentation under English law.

Accordingly, this action should be dismissed as to Mr. Thaxter pursuant to Federal Rule of Civil Procedure 12(b)(6), Rule 9(b) and the PSLRA.   In light of Plaintiffs' multiple failed opportunities to amend, Plaintiffs' claims against Mr. Thaxter should be dismissed with prejudice.

## **BACKGROUND**[2]

Mr. Thaxter joined Reckitt Group's subsidiary, RBP, in 1995, and served as its Chief Executive Officer ("CEO") beginning in 2009. TAC ¶ 42. On December 23, 2014, RBP was spun off from Reckitt Group through a "demerger" into a standalone company named Indivior Inc., after which Mr. Thaxter served as the CEO of Indivior Inc.'s parent company, Indivior PLC.  TAC ¶¶ 42, 48.

Plaintiffs' claims arise from RBP's development and marketing of the opioid addiction treatment Suboxone, first approved by the FDA in tablet form ("Tablet") in 2002 and ultimately developed by RBP into a film form ("Film"). TAC ¶ 97.  In contrast to the Tablet, Suboxone Film was designed for individual packaging and barcode tracking, with the potential to avoid accidental pediatric exposures, and to reduce "diversion," the unauthorized rerouting or misappropriation of prescribed doses.  TAC ¶ 127.  As Plaintiffs allege in the TAC, in 2010, Reckitt Group publicly

---

[2] The following summary of the facts most relevant to Mr. Thaxter's motion to dismiss is taken from the allegations of the TAC and documents incorporated by reference into the TAC.  For a complete recitation of the factual background alleged in the TAC relating to Reckitt's development and marketing of the drug Suboxone giving rise to Plaintiffs' claims, Mr. Thaxter respectfully refers the Court to the Reckitt Brief.

disclosed that a purpose of the Film was "to mitigate the impact" of "generic competition to the Suboxone Tablet" that would result from expiration of RBP's exclusivity over the Tablet.  TAC ¶ 98.

In support of their claims, Plaintiffs allege that Defendants made false and misleading statements relating to the development and marketing of Suboxone Film in certain press releases and earnings calls.  With respect to Mr. Thaxter, the only alleged misstatements at issue are in Reckitt Group's July 28, 2014 press release and earnings call (TAC ¶¶ 222-249), October 21, 2014 press release and earnings call (TAC ¶¶ 250-256), and November 17, 2014 press release (TAC ¶¶ 259-262).  Mr. Thaxter is not alleged to have had any further association with Reckitt Group after the December 23, 2014 demerger.  TAC ¶¶ 263, 270.

The Class Period[3] in the TAC begins with Reckitt Group's issuance of the July 28, 2014 press release, in which Reckitt Group announced its financial results for the first half of fiscal year 2014.  TAC ¶ 222.  Mr. Thaxter is not quoted in the press release, and Plaintiffs allege no facts suggesting he prepared it.  In connection with Reckitt Group's July 28, 2014 press release, Reckitt Group hosted an earnings call on the same date.  TAC ¶ 228.  On this earnings call, Mr. Thaxter presented remarks in which he discussed the financial performance of Suboxone Film over the Tablet and prospects for future growth of the Film.  TAC ¶ 234.

On October 21, 2014, Reckitt Group issued an additional press release announcing its financial results for the third quarter of 2014.  TAC ¶ 250.  Plaintiffs again allege that "Individual Defendants reviewed and approved the press release," but do not allege any facts specifying Mr. Thaxter's supposed involvement.  TAC ¶ 250.  Nor does the TAC allege that Mr. Thaxter is quoted anywhere in the October 21, 2014 release.  According to the TAC, Reckitt Group's statements in

---

[3] Except as otherwise indicated herein, capitalized terms not defined herein incorporate the definitions set forth in the TAC.

the October 21, 2014 release were false and misleading because they allegedly again failed to disclose that the financial performance of Suboxone Film resulted from anticompetitive behavior. TAC ¶ 251. In connection with the October 21, 2014 release, Reckitt Group hosted an earnings call led by Defendants Kapoor and Hennah. TAC ¶ 252. Mr. Thaxter is not alleged to have participated in or even attended this call, as confirmed by the published record of the call in which Mr. Thaxter is not listed as a participant. *See* October 21, 2014 Earnings Call Transcript Excerpt, Ex. A to Straus Decl.[4]

Finally, Mr. Thaxter is quoted in the November 17, 2014 press release, expressing optimism for the future business prospects of the demerged Indivior. TAC ¶ 261. These statements are alleged to be false and misleading because they failed to disclose that the financial performance of Suboxone Film arose from anticompetitive behavior. TAC ¶ 162.

On June 29, 2020, Mr. Thaxter pled guilty to a strict liability misdemeanor offense under the Food, Drug & Cosmetic Act ("FDCA") of introducing misbranded drugs in commerce. The factual underpinning of the plea was an incident in October 2012, almost two years before the start of the Class Period, in which an employee at an RBP subsidiary allegedly provided misleading data about unintended pediatric exposures in Massachusetts related to Suboxone to an official from the Massachusetts Medicaid Program ("MassHealth"). TAC ¶ 21. There was no finding or determination that Mr. Thaxter *knew* of any wrongful conduct. Rather, the plea was based solely on his status as a responsible executive with authority to prevent and promptly correct the

---

[4] The public record of the conference call is relied on and incorporated by reference into the TAC, and therefore may be properly considered on this motion to dismiss. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 149, 149 n.1 (2d Cir. 2012).

miscommunications by the employee.  TAC ¶ 21; Plea Agreement, Ex. B to Straus Decl.; Information, Ex. C to Straus Decl.[5]

\*       \*       \*

On March 26, 2021, Plaintiffs filed the TAC—their fourth effort to plead claims in this case.  For the reasons set forth below, all claims against Mr. Thaxter should be dismissed with

## ARGUMENT

## I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE SECTION 10(B) CLAIM AGAINST MR. THAXTER.

"A plaintiff bringing claims under section 10(b) and Rule 10b-5 must 'satisfy the heightened pleading requirements of the [PSLRA] and Rule 9(b) of the Federal Rules of Civil Procedure."  *Asay v. Pinduoduo Inc.*, 18-cv-7625 (PKC), 2020 U.S. Dist. LEXIS 56179, at \*12 (S.D.N.Y. Mar. 30, 2020) (quoting *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016)).  "[T]he PSLRA specifically requires a complaint to demonstrate that the defendant made '[m]isleading statements and omissions . . . of a material fact,' 15 U.S.C. § 78u-4(b)(1), and acted with the '[r]equired state of mind' (the 'scienter requirement'), *id.* § 78u-4(b)(2)."  *Asay*, 2020 U.S. Dist. LEXIS 56179, at \*12 (quoting *Emp. Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)).  Plaintiffs fail on both points.

### A.    Plaintiffs Fail to Allege that Mr. Thaxter Made Any False or Misleading Statement.

Plaintiffs' alleged Section 10(b) claims against Mr. Thaxter are premised on the alleged misstatements in Reckitt Group's July 28, 2014 press release and earnings call, its October 21, 2014 press release and earnings call, and its November 17, 2014 press release.  But none of these

---

[5] The Plea Agreement and Information are judicially noticeable public filings and are incorporated by reference in the TAC, and therefore may be properly considered on this motion to dismiss.  *See NECA-IBEW Health & Welfare Fund*, 693 F.3d at 149 n.1.

alleged misstatements support a claim against Mr. Thaxter because (1) he was not the "maker" of any statement in the July 28, 2014 press release, the October 21, 2014 press release, or the October 21, 2014 earnings call, and (2) none of Mr. Thaxter's stated remarks in either the July 28, 2014 earnings call or the November 17, 2014 press release were false or misleading.[6]

   1. <u>Mr. Thaxter Was not the "Maker" of Any Statements in the July 28, 2014 Release, October 21, 2014 Release, or October 21, 2014 Earnings Call.</u>

It is elementary that "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." *Wright v. Ernst & Young LLP*, 152 F.3d 175 (2d Cir. 1998). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group v. First Derivative Traders*, 564 U.S. 135, 143 (2011).

Plaintiffs fail to allege any facts plausibly suggesting that Mr. Thaxter was the "maker" of statements in Reckitt Group's July 28, 2014 or October 21, 2014 press releases. The TAC does not allege that Mr. Thaxter was personally involved in drafting or publishing any of the press releases, and he is not quoted in either the July 28, 2014 or October 21, 2014 releases. Most importantly, because he was not an employee of Reckitt Group, Mr. Thaxter was not "the person or entity with ultimate authority over the statement." *Janus*, 564 U.S. at 143. While Plaintiffs seek to hold Mr. Thaxter liable for the October 21, 2014 earnings call, Mr. Thaxter did not even participate in that call (TAC ¶ 252; Ex. A to Straus Decl.), and Plaintiffs do not allege any facts suggesting otherwise. No facts are pled to establish that Mr. Thaxter was responsible for the allegedly false and misleading statements made by others. Accordingly, Plaintiffs cannot sustain

---

[6] The PSLRA requires the complaint to state with specificity "each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

any Section 10(b) claim against Mr. Thaxter for the statements made in the July 28, 2014 press release, the October 21, 2014 press releases, or the October 21, 2014 earnings call.

>   2.   None of Mr. Thaxter's Statements in the November 17, 2014 Release or
>        July 28, 2014 Earnings Call Were False or Misleading.

Under the heightened pleading standards of the PSLRA, plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 400 (S.D.N.Y. 2016).

As an initial matter, to the extent Plaintiffs contend Mr. Thaxter was the "maker" of the November 17, 2014 press release (TAC ¶ 259), this argument fails because, as with the other press releases, Mr. Thaxter did not have "ultimate authority" over Reckitt's issuance of this release. Moreover, with respect to the one quoted statement attributed to Mr. Thaxter in the November 17, 2014 release, this statement, as well as all of Mr. Thaxter's statements on the July 28, 2014 earnings call, fall into one or more of the following categories that are not actionable under Section 10(b) for the reasons set forth below, including statements about (1) financial results, (2) the performance of the Film, (3) the RBP demerger, and (4) compliance and controls.

>   a.   Mr. Thaxter's Statements Concerning Financial Results.

Plaintiffs allege Mr. Thaxter's comments concerning the financial results of Suboxone Film sales were misleading because they allegedly failed to disclose that these results derived from alleged "anticompetitive practices." TAC ¶¶ 234-36. For example, Mr. Thaxter remarked, "we saw by March of last year that the film share had grown to 70% and the tablet business had come down to 15%" (TAC ¶ 234), and "[w]e've maintained our double-digit market growth. This is something we're very good at" (TAC ¶ 237). But Plaintiffs do not allege the reported financial results were false. Accurate statements concerning a company's financial performance are not

actionable under Section 10(b).  *See In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-CV-3721(KAM) (PK), 2020 U.S. Dist. LEXIS 210099, at *46 (E.D.N.Y. Nov. 10, 2020) ("[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data.").[7]

Plaintiffs' theory that Mr. Thaxter's accurate statements concerning financial results were rendered misleading by a failure to disclose what they characterize as the supposedly illicit basis for these results is contrary to settled law.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("As we have explained, '[d]isclosure is not a rite of confession,' and companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'").[8]  Accordingly, none of Mr. Thaxter's statements concerning financial performance during the July 28, 2021 earnings call support a Section 10(b) claim.[9]

b.    Mr. Thaxter's Statements Concerning the Suboxone Film.

The TAC next alleges that Mr. Thaxter's statements concerning patients, physicians, and healthcare payers' preferences for Suboxone Film were false and misleading.  But this category of statements, such as "We know that patients prefer the medication experience," "physicians are very happy that their patients are stable and doing well," and "the payer doesn't want to disrupt

---

[7] Similarly, Mr. Thaxter's comments concerning the expectations of future financial performance, such as that RBP was "very confident that we will continue to be successful here" and that "there's a lot of headroom in the market" (TAC ¶¶ 237-38), are quintessential statements of corporate optimism that cannot support a Section 10(b) claim.  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d at 400.  Nor have Plaintiffs alleged how they were false.

[8] *See also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("[F]ailure to disclose that . . . revenues were derived from 'unsustainable and illegitimate sources' did not violate Section 10(b) because 'the federal securities laws do not require a company to accuse itself of wrongdoing.'").

[9] Plaintiffs' allegations that Defendants engaged in an illicit "scheme" to market Suboxone through undisclosed anticompetitive practices fall flat for two additional reasons.  First, while the TAC alleges this purported "scheme" was designed to conceal Defendants' "true" motive of thwarting generic competition for Suboxone Tablet (TAC ¶ 2), the TAC acknowledges that Reckitt *publicly disclosed* one purpose of Film was to mitigate the effects of generic competition to the Tablet.  TAC ¶ 98.  Second, Plaintiffs' own allegations establish that, prior to the Class Period, the market was already aware that Reckitt was under investigation for alleged anticompetitive practices as of February 2013 (TAC ¶ 167), prior to Defendants' issuance of the public statements in 2014 that allegedly failed to disclose anticompetitive practices.

patients who are stable in treatment" (TAC ¶ 239), consist of "generalized explanations" that "did not offer concrete information, and amount[] to puffery." *In re Sunedison Sec. Litig.*, 300 F. Supp. 3d 444, 489 (S.D.N.Y. 2018) (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 811 (2d Cir. 1996)).   Mr. Thaxter's comments concerning the safety advantages of Suboxone Film are similarly not actionable.   For example, Mr. Thaxter, describing Suboxone Film, stated "each product has been designed with the intent of being a lower potential for abuse and misuse than the previous products on the market."   TAC ¶ 241.   These kinds of statements describing the "intent of" and "potential" advantages of a product are puffery because they are "explicitly aspirational," *City of Pontiac*, 752 F.3d at 183, and cannot reasonably be construed as "a guarantee of some concrete fact or outcome," *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019). Accordingly, none of Mr. Thaxter's statements concerning the Suboxone Film during the July 28, 2021 earnings call support a Section 10(b) claim.

        c.      Mr. Thaxter's Statements Concerning the Demerger.

Mr. Thaxter's sole statement concerning the demerger in Reckitt Group's November 17, 2014 press release was that his team would "continue leveraging our unique patient-focused leadership model to expand availability of addiction treatment and improve patient lives across the globe." TAC ¶ 161.   Plaintiffs offer no allegation explaining why this is alleged to be false, and is in fact a quintessential example of a forward looking statement of opinion or belief that is not actionable under the securities laws.   *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d at 400; *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018).   This cannot support a Section 10(b) claim.

    d. Mr. Thaxter's Statements Concerning Compliance and Sales Practices.

The TAC further challenges the veracity of Mr. Thaxter's comments regarding RBP's compliance and sales practices on the July 28, 2014 earnings call. Mr. Thaxter stated, "[s]o we have systems. We have processes. We've got compliance. We have regulatory infrastructure." TAC ¶ 245. This generic statement falls far short of the "actionable assurances of actual compliance" that support a Section 10(b) claim. *See Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). Under *Singh*, actionable misstatements concerning a company's compliance "must be far more detailed," describing features such as "24-hour monitoring teams, specific compliance equipment, and its clean compliance record." *Id.* (citing *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014). No remotely comparable level of detail exists in Mr. Thaxter's statements here. Thus, this remark merely constitutes an inactionable "general statement[] about reputation, integrity, and compliance." *Singh*, 918 F.3d at 63. Moreover, Plaintiffs fail to plausibly plead that Mr. Thaxter's general statements concerning compliance were even false. Plaintiffs, in conclusory fashion, allege that "RBP did not have sufficient and meaningful compliance systems in place" (TAC ¶ 249), but do not support this allegation with any additional contemporaneous allegations of fact rendering this allegation plausible.[10]

Mr. Thaxter's remarks concerning the sales practices involved in marketing Suboxone Film also fail to support a Section 10(b) claim. As alleged in the TAC, Mr. Thaxter further remarked, "[w]e've got our own sales force … who behave as clinical liaisons and partner with governments and have outstanding relationships with physicians to provide treatment for patients. And that's

---

[10] Plaintiffs' allegations that certain reports were discontinued by RBP's compliance committee more than two years prior to the class period (TAC ¶ 144) does not support their claim. Indeed, their allegations only serve to highlight that RBP had a compliance committee, confirming Mr. Thaxter's statement that "[w]e've got compliance" was entirely accurate. TAC ¶ 245.

been a key driver of our success."  TAC ¶ 245.  Once again, Plaintiffs don't allege that these statements were false.  Instead, they assert that these statements were misleading because they failed to disclose that RBP "perversely incentivized" its sales staff "to make Film sales at all costs or face termination," and that "RBP's relationships with physicians was [sic] premised on the prescription of Film in an illegal and clinically unwarranted manner."  TAC ¶ 246.  But the TAC again contains no supporting allegations of fact that would substantiate these bare assertions. Accordingly, none of Mr. Thaxter's statements support an actionable Section 10(b) claim.

**B.**     **Plaintiffs Fail to Allege Scienter on the Part of Mr. Thaxter.**

"[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer (In re Merrill Lynch Auction Rate Sec. Litig.)*, 851 F. Supp. 2d 512, 528 (S.D.N.Y. 2012).  To plead scienter, a plaintiff must allege facts either "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

1.     <u>Plaintiffs Fail to Allege that Mr. Thaxter Had Motive and Opportunity to Commit Securities Fraud.</u>

To plausibly plead scienter based on motive and opportunity, a plaintiff must allege facts showing that the defendant "benefitted in some concrete and personal way from the purported fraud."  *De Oliveira v. Bessemer Tr. Co., N.A.*, No. 09-CV-0713 (PKC), 2010 U.S. Dist. LEXIS 33257, at *11-12 (S.D.N.Y. Mar. 24, 2010).  It is well established that "[a]n allegation that defendants' motive was merely to increase or maintain profit … is insufficient."  *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 217 (S.D.N.Y. 2009).  The Second Circuit has consistently held that scienter cannot be plausibly alleged based merely on "motives possessed by

virtually all corporate insiders, including . . . the desire to . . . sustain the appearance of corporate profitability, or of the success of an investment." *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quoting *Novak*, 216 F.3d at 307).

Plaintiffs fail to allege any facts from which the Court may plausibly infer that Mr. Thaxter "benefitted in some *concrete and personal* way from the purported fraud." *De Oliveira*, 2010 U.S. Dist. LEXIS 33257, at *11-12 (emphasis added). Mr. Thaxter, for example, is not alleged to have sold any Reckitt Group securities[11] during the Class Period, or otherwise reaped any personal benefit from the alleged scheme to maintain the profitability of Suboxone here. Absent such allegations, Plaintiffs cannot plausibly plead motive based merely on Mr. Thaxter's generalized interests in increasing or maintaining profitability as alleged throughout the TAC.

### 2.   Plaintiffs Fail to Allege Strong Circumstantial Evidence that Mr. Thaxter Engaged in Conscious Misconduct or Recklessness.

Where plaintiffs fail to allege scienter based on motive and opportunity, they bear the "heavy burden" of pleading "strong circumstantial evidence of conscious misbehavior or recklessness." *See La. Pac. Corp.*, 851 F. Supp. 2d at 529. "[T]he strength of the circumstantial allegations must be correspondingly greater if there is no motive." *De Oliveira*, 2010 U.S. Dist. LEXIS 33257, at *12. To plausibly plead strong circumstantial evidence of recklessness, the plaintiff must allege conduct that is "highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Defer LP*, 654 F. Supp. 2d at 217. Where, as here, the plaintiff attempts to plead recklessness based on the defendant's awareness of information

---

[11] To the contrary, after the demerger, Mr. Thaxter increased his holdings in Indivior PLC by over 400,000 shares, including through the purchase of 385,000 shares on the open market. In other words, during the Class Period, Mr. Thaxter's shareholdings in "Key Non-Party" Indivior increased by over 700%. *See* Thaxter Disclosure Forms, Ex. D to Straus Decl. These public disclosure filings are judicially noticeable and therefore may be properly considered on this motion to dismiss. *See NECA-IBEW Health & Welfare Fund*, 693 F.3d at 149 n.1.

allegedly undermining their public disclosures, the plaintiff must "specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements." *De Oliveira*, 2010 U.S. Dist. LEXIS 33257, at *12 (citing *Novak*, 216 F.3d at 308). Plaintiffs fail to demonstrate Mr. Thaxter's scienter on either basis.

Plaintiffs attempt to base Mr. Thaxter's alleged scienter on a purported anticompetitive "scheme" but do not meet their burden of pleading any "strong evidence" linking it to Mr. Thaxter. Under the PSLRA, even *plausible* allegations of Mr. Thaxter's supposed awareness or participation in such scheme do not suffice. *Asay*, 2020 U.S. Dist. LEXIS 56179, at *31 (S.D.N.Y. Mar. 30, 2020) ("The 'inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'") (quoting *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). None of Plaintiffs' allegations concerning Defendants' alleged scheme present "strong evidence" of Mr. Thaxter's conscious misbehavior or recklessness.

First, the TAC is devoid of allegations that Mr. Thaxter specifically possessed knowledge of facts or access to information contradicting the public statements at issue. Although they attempt to conflate a publicly disclosed disagreement between the FDA and RBP over the relative safety advantages of Suboxone Film, with "strong" evidence that RBP's submissions to the FDA were knowingly false (TAC ¶¶ 8-9, 102-03), the FDA made no such finding. The FDA merely responded, in documents disclosed to the public, that it would not include, in a potential Risk Evaluation and Mitigation Strategies (REMS) document under consideration well before launch, certain packaging comparisons between Suboxone Film and Tablets. The FDA ultimately approved the Film for use. TAC ¶¶ 102-03. This does not constitute strong, or even plausible evidence demonstrating a conscious or reckless attempt to mislead.

Many of Plaintiffs' allegations amount to nothing more than a legitimate desire to increase sales. For example, following the FDA's approval of Suboxone Film, Plaintiffs point to Mr. Thaxter's statements to Reckitt Group executives that RBP would engage in a "Full Blitz campaign" to convert Suboxone Tablet sales to Film. TAC ¶¶ 128. Plaintiffs strenuously emphasize that RBP's ensuing sales efforts rewarded sales personnel for Film sales (TAC ¶¶ 129), but these facts suggest no more than that "defendants' motive was merely to increase or maintain profit." *Defer LP*, 654 F. Supp. 2d at 217. These allegations cannot support any inference of scienter against Mr. Thaxter.

Plaintiffs, lacking any sufficiently particularized allegations as to Mr. Thaxter, impermissibly attempt to allege scienter based on Mr. Thaxter's pleading guilty to a strict liability offense under the FDCA. *See* TAC ¶ 288. But these alleged facts are woefully insufficient to plead scienter.

Mr. Thaxter pled to a strict liability misdemeanor under 21 U.S.C. §§ 331(a), 333(a)(1), and 352(a)[12] based on the responsible corporate officer doctrine—a charge that, by definition, says nothing about whether Mr. Thaxter acted with improper *intent* at any time. TAC ¶¶ 171-97. Quite the opposite: the corporate officer doctrine "dispenses with the need to prove 'consciousness of wrongdoing.'" *United States v. Gel Spice Co.*, 601 F. Supp. 1205, 1211-12 (E.D.N.Y. 1984) ("All the government must prove is that the individual was in a position of power or authority to prevent, detect or correct violations of the Act."). Critically, under this doctrine, Mr. Thaxter's liability arose "by reason of his position in the corporation," *see Gel Spice Co.*, 601 F. Supp. 1205 at 1212,

---

[12] 21 USC § 331(a) of the Food, Drug & Cosmetic Act prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded. Section 333(a)(1) provides that persons that violate Section 331(a) "shall be imprisoned for not more than one year or fined not more than $1,000, or both." Section 352(a) provides, in relevant part, that a drug shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular."

which is wholly insufficient to create an inference of scienter for Section 10(b) purposes. *See, e.g., City of Brockton Ret. Sys. v. Avon Prods.*, 2014 U.S. Dist. LEXIS 137387, at *59 (S.D.N.Y. Sep. 28, 2014) ("[G]eneralized allegations founded solely on an individual's corporate position are not sufficient to demonstrate scienter"); *Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) ("[A]ccusations founded on nothing more than a defendant's corporate position are entitled to no weight.").

The factual basis for the charge also provides no support for an inference of scienter against Mr. Thaxter. It arose from underlying misconduct by a Medical Affairs Manager, employed by an RBP subsidiary, who in October 2012 made misrepresentations to MassHealth concerning the relative pediatric safety of the Suboxone Film as compared to the Suboxone Tablet in Massachusetts. TAC ¶¶ 177-82. Plaintiffs do not allege that Mr. Thaxter made any misrepresentations to MassHealth, and they do not allege any facts showing that Mr. Thaxter knew of the employee's misrepresentations to MassHealth at the time. To the contrary, the one fact Plaintiffs allege concerning Mr. Thaxter's involvement is that in December 2015, after Mr. Thaxter learned about the employee's conduct, *Mr. Thaxter approved a correction letter* to be sent to Mass Health. TAC ¶ 187. These facts do not constitute any evidence that Mr. Thaxter engaged in any conscious misbehavior, let alone "strong evidence" that the public statements made to the investing public by Mr. Thaxter were inaccurate, misleading, or made with scienter. Thus, Mr. Thaxter's guilty plea does not support an inference of scienter.

Nor can Plaintiffs base Mr. Thaxter's scienter on a 2012 email from Reckitt Group's investor-relations director, in which the director referenced "our plans" in connection with a proposal to withdraw Suboxone Tablet's FDA approval, which Plaintiffs claim was intended to delay FDA approval of generic versions of the Tablet. TAC ¶ 148. Plaintiffs allege that "Reckitt's

general counsel responded by emailing … 'please do not create any emails or other documents suggesting that we would consider' attempting to delay FDA approval of generic versions of Suboxone Tablet in this way, and 'any decision we make will be based on consumer safety.'" TAC ¶ 148.  Plaintiffs contend these emails are evidence of a conspiracy to engage in anti-competitive behavior, but there are no allegations supporting the claim that any views of the investor-relations director—even if they indicated such behavior—were shared by the group that received the email.  To the contrary, Plaintiffs' claims are undermined by their own allegation of the general counsel's response, demonstrating that he disagreed with the views expressed by the investor-relations director.  Nobody else on the email—including Mr. Thaxter—is alleged to have disagreed with the general counsel or responded with support for the investor-relations director's views.  Accordingly, these alleged facts cannot substitute for well-pleaded factual allegations of Mr. Thaxter's conscious misconduct or recklessness.[13]

Lastly, to the extent Plaintiffs rely on the core operations theory to substitute for well-pleaded allegations of scienter against Mr. Thaxter, this theory fails.  First, "[i]t remains unresolved in the Second Circuit whether the core-operations doctrine survived the passage of the PSLRA, and many courts have expressed doubts as to the doctrine's continuing import."  *See In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 361 (S.D.N.Y. 2020) (doubting whether core operations theory remains viable following passage of PSLRA).  In fact, the overwhelming weight of post-*Frederick* authority rejects claims relying on this theory to plead scienter.[14]  This Court

---

[13] Even if it were a close question—and it is not—whether Plaintiffs plausibly alleged Mr. Thaxter's conscious misconduct or recklessness, the law is clear that mere plausibility does not suffice under the PSLRA.  *Asay*, 2020 U.S. Dist. LEXIS 56179, at *31 ("The 'inference of scienter must be more than merely plausible or reasonable….'") (quoting *Tellabs*, 551 U.S. at 314).

[14] *See, e.g.*, *Shemian v. Research in Motion Ltd.*, No. 11-CV-4068 (RJS), 2013 U.S. Dist. LEXIS 49699, at *50 (S.D.N.Y. Mar. 28, 2013) (rejecting Exchange Act claims relying on core operations theory), aff'd, 570 F. App'x 32 (2d Cir. 2014); *Bratusov v. ComScore, Inc.*, No. 19-CV-3210 (KPF), 2020 U.S. Dist. LEXIS 110695, at *41 (S.D.N.Y. June 24, 2020) (same); *Liu v. Intercept Pharm., Inc.*, No. 17-cv-7371

should not allow Plaintiffs to substitute this dubious theory for the well-pleaded, individualized allegations of scienter required under the PSLRA, as "such a result would eviscerate the cogent and compelling inference of scienter required by *Tellabs.*" *Mechel OAO*, 811 F. Supp. 2d at 873.

But even if the theory remains viable, "the core operations theory—at best—constitutes supplemental support for alleging scienter but does not *independently* establish scienter." *In re Diebold Nixdorf, Inc. Sec. Litig.*, No. 19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449, at *41 (S.D.N.Y. Mar. 30, 2021) (emphasis added). Thus, where, as here, the plaintiff's other allegations of scienter fail, the "core operations theory fails as well." *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 533 (S.D.N.Y. 2020).

Given the lack of additional supporting allegations plausibly establishing Mr. Thaxter's access to contrary facts, or that Mr. Thaxter had and disregarded a duty to monitor, Plaintiffs fail to plausibly allege scienter as to Mr. Thaxter. Thus, Plaintiffs' Section 10(b) claim against Thaxter fails.

## II. PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE SECTION 20(A) CONTROL PERSON CLAIM AGAINST MR. THAXTER.

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 370 (S.D.N.Y. 2014). As an initial matter, because the TAC fails to plead a primary violation, the Section 20(a) claim must be dismissed.

Moreover, "[a] person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20." *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*,

---

(LAK), 2020 U.S. Dist. LEXIS 53252, at *52 (S.D.N.Y. Mar. 26, 2020) (same); *In re Hain Celestial Grp. Inc., Sec. Litig.*, No. 2:16-cv-04581 (ADS) (SIL), 2019 U.S. Dist. LEXIS 54319, at *55 (E.D.N.Y. Mar. 29, 2019) (same).

941 F. Supp. 1369, 1378 (S.D.N.Y. 1996).   Rather, the facts pled must plausibly support the inference that the defendant "controlled the defendants who allegedly committed the primary violations at issue…."   *Silsby*, 17 F. Supp. 3d at 371.   Here, Plaintiffs' alleged Section 20(a) claim against Mr. Thaxter fails because the Reckitt Group employees who engaged in alleged underlying violations were "employed at a separate enterprise."   *See Silsby*, 17 F. Supp. 3d at 371.   The only alleged Exchange Act violations are against (besides Mr. Thaxter himself) Reckitt Group and its officers.   Plaintiffs make no allegation whatsoever that Mr. Thaxter had the ability to control officers of his employer's corporate parent, much less the parent itself.

Lastly, even if Plaintiffs properly alleged an underlying violation by individuals under Mr. Thaxter's supervision, "[a] plaintiff asserting a Section 20(a) claim must allege at least 'particularized facts of the controlling person's conscious misbehavior or recklessness.'"   *In re Satyam Computer Servs. Secs. Litig.*, 915 F. Supp. 2d 450, 483 (S.D.N.Y. 2013).   As set forth above in Section I(B)(2), Plaintiffs have failed to plausibly allege Mr. Thaxter's conscious misbehavior or recklessness.   Thus, Plaintiffs' Section 20(a) claim against Mr. Thaxter fails, and should be dismissed accordingly.

## III.   PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE ENGLISH COMMON LAW CLAIMS AGAINST MR. THAXTER.

Plaintiffs assert two claims against Mr. Thaxter arising under English common law: (1) Fraudulent Misrepresentation and Deceit (Count III or "Fraudulent Misrepresentation"); and (2) Violations of English Common Law, Negligent Misrepresentation and Misstatement (Count V or "Negligence Misstatement").   The TAC fails to adequately allege either claim against Mr. Thaxter.

Here, as demonstrated above, the facts alleged in the TAC do not plausibly allege any misrepresentations or misstatements by Mr. Thaxter, necessitating dismissal of their English common law claims, both of which require a misrepresentation.   *See* Declaration of Stephen

Midwinter QC ("Midwinter Decl."), submitted with Reckitt Brief, ¶¶ 22, 50.  Plaintiffs' negligent misstatement claims fail for the additional reason that, as demonstrated above, Plaintiffs have not plausibly alleged Mr. Thaxter's duty to disclose any of the allegedly concealed information at issue.  *See* Midwinter Decl. ¶ 50.  Plaintiffs' English law claims against Mr. Thaxter fail, and also should be dismissed accordingly.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendants respectfully request that after four attempts, the Court enter an order dismissing Plaintiffs' Third Amended Complaint as to Defendant Shaun Thaxter in its entirety, with prejudice.

Dated: New York, New York
   June 25, 2021        **KING & SPALDING LLP**

         By:  */s/ Paul A. Straus*
           Richard T. Marooney
           Israel Dahan
           Paul A. Straus
           Eric A. Hirsch
           Alexander Noble
           1185 Avenue of the Americas
           New York, NY 10036-4003
           Tel: (212) 556-2100
           Email: pstraus@kslaw.com

           *Attorneys for Defendant Shaun Thaxter*