# EXHIBIT 10



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# After Plaintiffs Win Verdict In Securities Class Actions

(September 9, 2015, 10:15 AM EDT)
Twenty years before December of this year, Congress passed, over the veto of President Bill Clinton, amendments to the federal securities laws commonly called the Private Securities Litigation Reform Act, or PSLRA. The expressed purpose of the PSLRA was to rein in investor private enforcement of the securities laws, particularly and specifically through class actions by, among other things, raising pleading standards, directing procedures for the selection of the lead plaintiffs and their chosen lead counsel, limiting alleged losses, and setting standards for class action notices.



Fred T. Isquith

Since enactment of the PSLRA, only 15 cases have been tried to verdict, or approximately 0.3 percent of all PSLRA cases filed within the federal courts. Of these 15, nine were verdicts for plaintiffs that survived the appeal process. Consequently, there are very few cases in which a court has needed to craft procedures for the administration of damages to class members once common questions have been decided.

For that reason alone, it is worth paying the bar's valuable attention to the very recent opinion (and related earlier ones) of Southern District of New York Judge Shira Scheindlin in In re Vivendi Universal SA Securities Litigation, 02-cv-5571 (SAS), 2015 U.S. Dist. LEXIS 106307 (S.D.N.Y. Aug. 11, 2015), 284 F.R.D. 144 (S.D.N.Y. 2012), 765 F. Supp. 2d 512 (S.D.N.Y. 2011).

The Vivendi action was commenced more than 13 years ago. In January 2010, the jury returned a class action verdict for plaintiffs, finding that Vivendi acted recklessly with respect to 57 statements that misstated or omitted Vivendi's true liquidity risk. On Feb. 17, 2011, the court denied Vivendi's post-trial motion for judgment as a matter of law. 765 F. Supp. 2d 520 (S.D.N.Y. 2011). Intervening before completion of the proceedings, however, was the decision of the U.S. Supreme Court in Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010) which, when applied to the Vivendi action, eliminated all non-United States traded securities. Remaining in the case were the U.S.-traded Vivendi American depositary receipts.

The district court, after trial, acknowledged that in any post-trial proceedings, "Vivendi is entitled to rebut the presumption of reliance on an individual basis," and that "any attempt to rebut the presumption of reliance on such grounds would call for separate inquiries into the individual circumstances of the class members." 765 F. Supp. 2d at 584. For that reason, the court declined to enter a final judgment after trial. Instead, the court determined that the post-trial proceeding would include Vivendi's right to challenge individual claims.

The district court's recent decision of Aug. 11, 2015, 02-cv-5571 (SAS) 2015 U.S. Dist. LEXIS 106307, addressed one such situation. The court described it as among the "only core disputes remaining in this thirteen-year old class action securities fraud lawsuit ... whether certain sophisticated members of the class actually relied on defendant Vivendi's misstatements in trading its stock." Id. at *1.

The group of class members — Southern Asset Management and its clients and advisees — had $53 million of potential damages in accordance with the jury's findings. Vivendi and SAM moved for summary judgment after following the court's post-trial order for the administration of claims under the verdict. The court granted Vivendi's motion finding that the basic presumption of reliance had been rebutted.

Because what is most significant for practitioners is the court's approach to post-trial proceedings for the challenge of individual reliance questions — as that approach may become a road map for other courts — we must turn back to Judge Schindlin's decision of July 2012 outlining those procedures. 284 F.R.D 144 (S.D.N.Y. 2012).

The court began that part of her discussion (284 F.R.D at 152) by noting that plaintiffs had proven, on a classwide basis, the element of "justifiable reliance" on Vivendi's misrepresentations relying on the "fraud on the market" theory. The jury had rejected Vivendi's attempted classwide rebuttal by asserting a "truth on the market" defense.

With regard to individualized reliance, the court had held that "Vivendi is entitled to rebut the presumption of reliance on the market price of Vivendi's stock with respect to particular class members." 284 F.R.D. at 152.

> Certain means of rebutting the presumption of reliance require an individualized inquiry into the buying and selling decisions of particular class members. For example, the Supreme Court stated in Basic that the presumption of reliance would be rebutted if the defendant could show that a particular investor would have purchased a company's stock even if she had known of the fraud, or that a particular investor purchased even though she did actually know of the fraud. Alternatively, if a particular investor relied upon information not generally available to the public, it may be argued that that particular investor did not rely upon the integrity of the market. Logically, any attempt to rebut the presumption of reliance on such grounds would call for separate inquiries into the individual circumstances of particular class members. For this reason, courts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial, through separate jury trials if necessary.

Id. (quoting 765 F. Supp. at 583)

The court's procedure included the following steps.

First, notice of the jury's verdict was to be sent to class members including a proof-of-claim form. The notice referred the class member potential claimants to a website where the jury's break down of potential damages could be found. The claim form required details of the claimants transactions in Vivendi ADRs. The notice advised clients that amounts to be received could be reduced by awards of attorneys' fees (up to one-third of any amounts awarded as counsel had requested). Further, the awards might be reversed or vacated by an appeal of the judgment. (Judgment was to be entered only at the conclusion of the claims administration process.)

Second, Vivendi had advised the court that it intended only "to challenge the reliance of sophisticated persons and entities, such as large institutional investors," who may or may not satisfy the standard of reasonable reliance. Id. at 155. Accordingly, once the claim forms had been submitted, Vivendi would have the opportunity to screen large investors by analyzing the information provided.

Third, based on information provided in the claims forms, interrogatories relating to reliance would be permitted to be sent to a limited number of "sophisticated persons and entities" whose reliance Vivendi chose to challenge. The interrogatories would be approved by the court before service.

Fourth, the court appointed a special master to determine which claimants' interrogatory responses raised a triable issue of material fact sufficient to potentially rebut the presumption of reliance. If challenges to any claimant's reliance assertion survive "this quasi-summary judgment determination" by the special master (see id. at 155), and following review by the district judge, the court would entertain proposals for the efficient manner to decide individual reliance with respect to those claims.

The preliminary steps completed brings us to the August 2015 opinion regarding Vivendi's challenge to the claims submitted by SAM. 2015 U.S. Dist. LEXIS 106307. It seems evident that upon conclusion of the steps outlined by the court in the 2012 opinion, including the lengthy process of notice to the class and submission of claims forms, Vivendi challenged SAM and was permitted to take additional discovery, including a deposition of the analyst at SAM primarily responsible for SAM's investments in Vivendi. After this discovery, both parties moved for summary judgment.

The arguments of the parties were fact-sensitive to the particular reasons that SAM purchased the Vivendi stock and when it purchased it. Those are set forth in detail in the opinion. Importantly, the money manager for the various institutional investors testified that the information that was not disclosed to the market, upon which the verdict of liability was found, was not information that affected the analysis of SAM, nor would it have been had it been known.

Judge Scheindlin synthesized the current law arising from the Basic "fraud on the market" reliance presumption and the two Halliburton cases regarding the "severing of the link" between the alleged misrepresentation and either the price received (or paid) by the plaintiff or the "decision to trade at a fair market price." Id. at *16. Judge Scheindlin distinguished between the procedures required by these cases at the class certification stage of the litigation (where "common questions" are identified and plaintiff must show the manner by which they will be proved by common evidence) from the procedures permitted after the trial on when individual questions can be litigated after common questions. The plaintiffs' arguments that any culpable misstatement that distorts the market price, unless actually known by a claimant, raises the irrebuttable presumption was rejected by Judge Scheindlin. "[A] sophisticated institutional investor whose own specialized knowledge and advanced research rendered it completely indifferent to the fraud" is not entitled to the presumption. Id. at *35. She emphasizes that her holding does not give "blanket protection" to securities fraud defendants against sophisticated investors. Id. at *36.

Importantly, SAM's analyst testified that "none of the nine corrective disclosures provided by class plaintiffs' expert corrected any misunderstanding [by the witness] concerning the value of Vivendi. Nor did [SAM] think that any of those disclosures conveyed new information bearing on his earlier appraisal of Vivendi's debt and liquidity." Id. at *10.

The August 2015 opinion demonstrates that there are fine distinctions in the procedural law often glossed over by counsel and the courts, particularly regarding class actions. The determination whether to certify a class weighs whether litigation of common issues would result in efficient and manageable outcomes of the controversy. After trial on common issues, however, remain noncommon issues. The presence of those individual questions or the fact that post-trial litigation may be necessary does not bar class certification. The Vivendi case provides the thinking of two judges over 13 years of law about the process for dealing with individual questions — and in this case, with a very large defendant's verdict (involving $53 million in losses as determined by a jury) and without liability to Vivendi. Vivendi, post-trial, had successfully "severed the link" between the misrepresentations and the claimants' and SAM's, decision to trade in the security. Basic v. Levinson, 485 U.S. 224, 248-49 (1988).[1]

The decision for Vivendi indicates that courts should not overhesitate when asked to certify a class. As Judge Scheindlin noted, the inquiry of reliance by an individual purchaser is inherently fact specific. "This holding does not give blanket protection to securities fraud defendants against sophisticated investors. It is easy to imagine a situation in which an institutional investor is legitimately duped by a fraud and loses a substantial amount of money as a result. *These simply are not the facts here*." Vivendi, 2015 U.S. Dist. LEXIS 106307, at *35-36 (emphasis added).

—By Fred T. Isquith, Wolf Haldenstein Adler Freeman & Herz LLP

*Fred Isquith is a partner in Wolf Haldenstein Adler Freeman & Herz's New York office.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] The denial of a claim was the second Vivendi decision by the Court. GAMCO Investors, Inc. v. Vivendi, 927 F. Supp. 2d 88 (S.D.N.Y. 2013), was not a class action. (The liquidity crisis at Vivendi was irrelevant to GAMCO's investment decisions, except to the extent that each corrective disclosure made Vivendi a more attractive investment.)

All Content © 2003-2021, Portfolio Media, Inc.