# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>Defendants. | No. 1:20-cv-10041-PKC<br><br><u>CLASS ACTION</u><br><br>**REPLY IN SUPPORT OF MOTION TO STAY AND/OR DISMISS**<br><br>**Oral Argument Requested** |

**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND/OR STAY COUNTS III-V BY DEFENDANTS RECKITT BENCKISER GROUP PLC, RAKESH KAPOOR, ADRIAN HENNAH, AND ADRIAN BELLAMY**

Reckitt Benckiser Group PLC ("RG"), Rakesh Kapoor, Adrian Hennah, and Adrian Bellamy ("RG Individual Defendants," together, "RG Defendants") respectfully submit: (i) this Reply in Support of their Motion to Stay and/or Dismiss the Third Amended Complaint and (ii) the Reply Declaration of Stephen Midwinter QC ("Midwinter Reply Dec.") on English law.

## Argument

### I.  The Opposition Confirms that Plaintiffs' Exchange Act Claims Fail (Counts I-II)

#### A.  Plaintiffs Fail to Identify a False or Misleading Statement

Plaintiffs' core argument is that RG failed to disclose RBP's[1] purported anticompetitive "scheme" to switch the market from Tablet to Film, and this omission made a variety of generic statements—about financial results, product safety, and compliance—misleading. The Motion established a fundamental flaw in this argument: multiple public sources, including news reports, FDA decisions, and litigation, had disclosed that RBP was under investigation for "anticompetitive business practices." *See, e.g.*, TAC ¶ 167. For example, the 2013 antitrust complaint (Ex. C ¶ 4) precisely alleged the nature of the supposedly concealed scheme:

> [RG] engaged in various acts and practices as part of an overall scheme to (a) coerce a switch of the Suboxone market from Suboxone Tablets to Suboxone Film – a "new" patent-protected formulation of Suboxone that offers no additional clinical benefits to patients, but rather raises new and additional safety and diversion issues not associated with tablets – and (b) delay the market entry of less-expensive generic versions of Suboxone Tablets.

A November 2013 *New York Times* article (Ex. D) also discussed the purported scheme:

> In an 11th-hour bid to thwart generic competition and dominate the market with its patent-protected Suboxone filmstrip, the company sought to convince regulators that the tablet form, which earned it billions of dollars, now presented a deadly risk to children as packaged in pill bottles.

---

[1] "Motion" or "Mot." refers to the RG Defendants' Motion to Dismiss (Dkt. 90); cites to "Ex." refer to exhibits to the Perla Declaration (Dkt. 91); "Opposition" or "Opp." refers to Plaintiffs' Opposition (Dkt. 100); "TAC" refers to Plaintiffs' Third Amended Complaint (Dkt. 82); "RBP" refers to Reckitt Benckiser Pharmaceuticals, Inc.

Indeed, Plaintiffs themselves rely heavily on these very disclosures. *See* TAC ¶¶ 164-169. Plaintiffs argue that none of this establishes truth on the market because: RG denied wrongdoing (Opp. 14-17), the 2019 indictment provided more detail (Opp. 13-14), and this is a question of fact (Opp. 16). These arguments are unavailing.

First, truth on the market is based on whether the market was aware of the matters alleged to have been concealed, not whether defendant had admitted their truth. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). Here, no investor could claim she was not aware of the alleged scheme and the salient underlying facts. Indeed, legions of cases have rejected any duty by a defendant to accuse itself of misconduct. *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004); *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, --- F.4th ----, 2021 WL 3744894, at *4 (2d Cir. Aug. 25, 2021) ("disclosure is not a rite of confession") (internal quotations omitted). The sufficiency of third-party disclosures should be measured by the same principle. Similarly, it is of no import that RG successfully moved to dismiss the 2013 antitrust claims, especially because the dismissal was based on failure to adequately allege market power. *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, 2015 WL 12910728, at *2-3 (E.D. Pa. Apr. 14, 2015); *see also White v. H&R Block*, 2004 WL 1698628, at *10 (S.D.N.Y. July 28, 2004) (dismissal of prior litigation did not undermine argument that market was already aware of alleged misconduct).[2]

Second, although the 2019 indictment provided some additional detail, truth on the market does not require that the market know every detail. *See In re Kalobios Pharms., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1009-10 (N.D. Cal. 2017). Indeed, the RG Defendants had no duty to

---

[2] To the extent Plaintiffs' out-of-circuit cases can be read to require admission, they are inconsistent with controlling precedent. *See* Opp. 14, 16 (citing *Klein v. Altria Grp.*, 2021 WL 955992 (E.D. Va. Mar. 12, 2021); *Cambridge Retirement Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952 (E.D. Va. 2020)).

disclose the minutiae revealed in the indictment. By the same reasoning, it is not required for truth on the market. Third, many cases have been dismissed based on truth on the market at the pleading stage. *See White*, 2004 WL 1698628, at *12 (arguing that the truth was not on the market despite "articles in such nationally-recognized publications as *The New York Times* makes no sense").

### 1. Statements About Film Rollout, Financial Results, and Competitive Environment Are Not Actionable

The Opposition argues that statements made by RG about growth, financial results,[3] and customer preferences were misleading because they did not disclose the alleged anticompetitive "scheme."[4] Plaintiffs cite *Diehl v. Omega Protein Corp.*, which includes broad language that the omission of an illegal business practice that has a material impact on a company's financial results *may* be misleading when the company puts at issue the cause of those results. 339 F. Supp. 3d 153, 165 (S.D.N.Y. 2018). Plaintiffs also rely on three inapposite cases, each holding that it is misleading to discuss the effect of pricing on a company's product while failing to disclose active price-fixing agreements that distorted that pricing. *See* Opp. 18.

Plaintiffs fail, however, to plead specific facts showing that any preference patients, physicians, and payers had for Film—or any material portion of RBP's results—was a result of deception, as distinct from the undisputed advantages of Film such as individual packaging and tracking ability. Opp. 13 (citing TAC ¶¶ 235-240). In *Diehl*, this Court found the plaintiff's conclusory allegations insufficient to plausibly allege a nexus between defendant's scheme and

---

[3] Plaintiffs split statements regarding financial results into two categories: the cause of RG's success and RBP's competitive environment. Plaintiffs incorrectly assert that the RG Defendants failed to address the latter. In fact, the Motion addressed all relevant statements. *See Born v. Quad/Graphics, Inc.*, 2021 WL 736839, at *12 n.18 (S.D.N.Y. Feb. 25, 2021) (reasonable to identify "certain categories of statements" without identifying every alleged misstatement).

[4] The Opposition does not identify a single statement regarding compliance or controls made by *RG* or its agents, conceding this category of statements with regard to the RG Defendants. *See* Opp. 20-21. Plaintiffs also concede that statements concerning the demerger were not false or misleading. Opp. 21 n.21.

its results. 339 F. Supp. 3d at 166. Here, too, Plaintiffs only provide conclusory allegations such as "Defendants' omissions are directly connected to their existing disclosures." Opp. 20.

The Opposition also claims that statements regarding the Film rollout and customer preference were not puffery because they misrepresented existing facts and the RG Defendants knew they were misleading. But unlike *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *12 (D.N.J. July 27, 2018), where there was no "vigorous competition" because of undisclosed price-fixing, the Opposition does not identify with specificity any existing facts that were misrepresented. *See* Mot. 6-12.[5] The latter argument conflates materiality with scienter. *See In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 893 n.21 (W.D.N.C. 2001) (no need to assess defendants' state of minds because alleged misstatements were "too general to support liability."); *see also City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 221 (E.D.N.Y. 2019) (statements regarding customer satisfaction were puffery).

Plaintiffs argue that the numerous alleged opinion statements are actionable under *Omnicare* because the speakers did not believe them. Opp. 23-24. In *Tongue v. Sanofi*, the Second Circuit noted that, when a company expresses an opinion regarding a technical issue, such as the legality of activity or interpretation of a trial result, investors may expect that the opinion is supported by a "meaningful inquiry," not just "intuition." 816 F. 3d 199, 210 (2d Cir. 2016). But Plaintiffs do not explain what inquiry would have been necessary to support the generic statements regarding customer preference and optimism attributed to the RG Defendants. Moreover, as shown above, Plaintiffs do not plead the specific facts "about the inquiry [RG] did or did not conduct or the knowledge it did or did not have" that *Omnicare* requires. *Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*, 575 U.S. 175, 194 (2015).

---

[5] Plaintiffs characterize their allegations as relating to RG and RBP (citing TAC ¶¶ 143, 145, 150-151, 156) but each allegation only concerns conduct and communications *by RBP*.

### 2. The RG Defendants Are Not Liable Under Item 303 or Item 5

The TAC alleged that RG failed to disclose RBP's purported anticompetitive scheme on Item 303 of Regulation S-K. TAC ¶¶ 296-300. The Motion established that RG, as a foreign issuer, is not subject to Item 303 and that, even if it was, it had no obligation to predict that its subsidiary would be subject to prosecution because that is not the sort of "trend" or "uncertainty" that Item 303 requires domestic issuers to disclose. Mot. 12-13. In response, Plaintiffs note that some courts have found that while foreign issuers are not subject to Item 303, they are subject to Item 5 of Form 20-F, which has a similar disclosure requirement. Opp. 22-23 (citing *Christine Asia Co. v. Alibaba Group Holding Ltd.*, 192 F. Supp. 3d 456, 476 (S.D.N.Y. 2016) (Item 5 does not require disclosing "potential harm to a company's business")). The argument fails. *First*, the TAC does not challenge any Form 20-F disclosures. *See* TAC ¶¶ 296-300; *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) ("a party cannot amend its pleading through its opposition brief") (collecting cases). *Second*, RG was not required to file Form 20-F because its ADRs were only sold over the counter, not on an exchange. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, --- F. Supp. 3d ----, 2021 WL 1178216, at *7 n.5 (S.D.N.Y. Mar. 29, 2021) ("Form 20-F is a form issued by the SEC that must be submitted by all foreign private issuers with equity shares listed on exchanges in the United States.").[6]

### B. Plaintiffs Fail to Plead Any Facts Creating a Strong Inference of Scienter

#### 1. Plaintiffs Do Not Identify Any Specific Facts Showing the RG Defendants Knew of the Purported Scheme

The Opposition abandons many of the Complaint's scienter allegations, including generic compensation motivations (TAC ¶ 303), the positions held by the RG Defendants (TAC ¶¶ 45,

---

[6] Even under the cases Plaintiffs rely on, Item 5 does not require disclosure of speculative legal exposure. *See Christine Asia*, 192 F. Supp. 3d at 476; *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 n.8 (2d Cir. 2016) (Item 303 required disclosure of "serious, *ongoing* criminal and civil investigations" that had already caused the loss of $150 million in government contracts) (emphasis added).

303, 306), and the core operations doctrine (TAC ¶¶ 90, 302). Plaintiffs now rely heavily on a paraphrased version of a single 2012 email[7] in which the RG investor relations director included Kapoor on an email referencing "our plans" to withdraw Tablet's FDA approval.[8] Opp. 7, 25-26. It is Plaintiffs' argument that two words from a single email that Kapoor did not author is sufficient to show that Kapoor was intimately involved in a withdrawal plan that he knew to be pretextual. It is this argument that "strains credulity." The paraphrased email does not say who "our" refers to or provide any detail on the "plan."  Further, the response from RG's general counsel – "any decision we make will be based on consumer safety" – cuts directly against any inference that Kapoor knew RG had devised an anticompetitive scheme. Opp. 8.[9]

Plaintiffs' only scienter allegations regarding Hennah and Bellamy are that Hennah spoke on earnings calls and both signed securities filings. Opp. 28 n.37. These acts, according to Plaintiffs, show that "they were obviously knowledgeable about RBP's business." *Id.* 28. This is just another take on scienter by status, which is insufficient. *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 366 (S.D.N.Y. 2015), *aff'd sub nom. Klein v. PetroChina Co.* 644 F. App'x 13 (2d Cir. Mar. 21, 2016) (plaintiffs must allege specific facts that defendants knew public statements were not accurate); *see also Schiro v. Cemex*, 396 F. Supp. 3d 283, 301 (S.D.N.Y. 2019) (knowledge of subsidiary not imputed to parent); *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 277 (S.D.N.Y. 2014) (insufficient to allege "only that [individual defendant] signed Silvercorp's SEC filings").

---

[7] Plaintiffs' contention that pre-Class Period matters may bear on scienter is a red herring. The RG Defendants' point is not that the timing precludes such matters from being considered, but rather that here they do not reflect culpable knowledge. *See In re Silicon Storage Tech., Inc.*, 2006 WL 648683, at *11 (N.D. Cal. Mar. 10, 2006) ("While it is true that facts relating to pre-class period events may in certain circumstances contribute to the creation of an inference of scienter ... there must be some connection between that scienter and the earlier events.")

[8] Plaintiffs purport to cite from the underlying email, but instead cite only to the 2019 indictment. "Our plans" are the only words quoted from this email in the indictment. TAC ¶ 148.

[9] Conclusions such as that "Kapoor w[as] intimately involved in the fraudulent scheme" (Opp. 26) need not be credited.

Plaintiffs again claim that 2009 and 2010 stock sales by former CEO Becht[10] and former CFO Day – who both left RG in *2011* – demonstrate RG's culpable knowledge as of 2014 and 2015. Opp. 25-26. This is contrary to law and logic; what matters for scienter is the knowledge of the persons making or preparing the statements at issue. *See Dalarne Partners, Ltd. v. Sync Research, Inc.*, 103 F. Supp. 2d 1209, 1213 (C.D. Cal. Jan. 28, 2020) (former employees' access to allegedly damning internal reports does not bear on whether purported misstatements "accurately reflected their authors' first-hand knowledge").

### 2. Plaintiffs' Remaining Scienter Arguments Are Unavailing

Plaintiffs argue that the RG Defendants were motivated to inflate the value of RBP to complete the 2014 demerger. Opp. 27. This type of generic corporate motivation is insufficient. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 218 (S.D.N.Y. 2004) ("generalized allegations … regarding AOL's 'obsession' with consummating the merger are simply not enough to satisfy § 10(b)'s scienter requirement"). Plaintiffs do not identify any concrete personal benefit for any of the Individual RG Defendants. Opp. 27; *see Novaks v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000). Finally, RG's alleged decision *not* to engage in product hopping of an antacid product in 2011 does not demonstrate a pattern of conduct. Opp. 27-28 (citing TAC ¶¶ 308-09). In any event, the issue here is securities fraud, not product hopping. *Compare In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. Mar. 27, 2008) ("Plaintiffs' allegations regarding prior misconduct add little if anything to support an inference of scienter" where the alleged prior misconduct was of a different nature than the securities fraud at issue) *with In re Symbol Techs. Sec. Litig.*, 2013 WL 6330665, at *10 n.3 (E.D.N.Y. Dec. 5, 2013) (alleging a pattern of identical conduct – making false projections).

---

[10] For the same reasons as stated below, Becht's involvement in a 2010 advertising scheme does not suggest an inference of scienter for the RG Defendants' 2014 and 2015 statements.

### C. The Opposition Fails to Demonstrate Loss Causation

The Motion established that any stock drop associated with RBP's purported anticompetitive "scheme" occurred in 2013 when the FDA denied RBP's Citizen Petition, private plaintiffs sued RG and RBP for anticompetitive activity, and various press outlets covered both events – *not* in 2019 as Plaintiffs' claim. Mot. 18-20. In response, Plaintiffs argue that the 2013 revelations do not constitute loss causation because RG denied the allegations, and that the 2019 indictment revealed new details. Opp. 31. As to the first point, a confession is not required for loss causation; announcements of investigation and lawsuits suffice. *Sheet Metal Workers Local 32 Pension Fund v. Terex Corp.*, 2018 WL 1587457, at *9 (D. Conn. Mar. 31, 2018) ("An admission of guilt is not necessary," what is needed is for the "truth about the company's underlying condition, when revealed, [to] cause[] the economic loss.") (quoting *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (internal quotations omitted)). As to the second point, the revelation of some additional emails does not constitute a fresh corrective disclosure but merely restated what the market already knew. *See Nat'l Jr. Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 561 n.34 (D.N.J. 2010) ("To the extent that some of these reports merely provided more details about the public disclosures, they are insufficient to establish loss causation.").[11] Besides, it is clear that the market was reacting to the indictment itself, not to the new emails somehow correcting generic statements from many years before. *See Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 997 (D. Ariz. 2015) *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F. 3d 750

---

[11] Plaintiffs' cases regarding the disclosure of additional matters are not comparable. In *In re Navient Corp. Securities Litigation*, the new complaint that caused a stock drop alleged, for the first time, that defendant's scheme "continued during the class period at issue here, whereas the previous suits were confined to earlier time periods." 2019 WL 7288881, at *12 (D.N.J. Dec. 30, 2019). In *Sjunde Ap-Fonden v. Goldman Sachs Group, Inc.*, the corrective disclosure revealed for the first time that Goldman's CEO, a named defendant, met with a liaison who allegedly helped broker the alleged scheme. --- F. Supp. 3d ----, 2021 WL 2659797, at *18 (S.D.N.Y. June 28, 2021).

- 8 -

(9th Cir. 2018) (market reacted to CEO's departure not what the departure may have implied about company's purported fraud).

### D. The Statute of Limitations Accrued Prior to July 15, 2017

Plaintiffs argue that information regarding the scienter of each defendant was not discoverable by July 2017. *Id.* 34. But Plaintiffs rely on information available well before then that purportedly supports their scienter allegations for each RG Defendant.[12] Other allegations on which Plaintiffs base their scienter claim – stock sales, executive pay, RG Defendants' positions within the company, prior purported schemes, and core operations (TAC ¶¶ 301-10) – could have been asserted prior to 2017 as well. Plaintiffs cannot have it both ways. If these allegations show scienter, as the Opposition claims, then Plaintiffs cannot claim the statute had not accrued. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). That the 2019 indictment provided further information to make Plaintiffs' claims appear more substantial is irrelevant.

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.* is exactly on point. 802 F. Supp. 2d 1125, 1137 (C.D. Cal. Aug. 9, 2011). Plaintiffs argued that prior lawsuits and news reports were insufficient to put them on notice of defendants' scienter; only a more recent SEC action revealed that element of their claim. *Id.* But the court dismissed plaintiff's reliance on the "semantic differences" between the SEC action and earlier suits. *Id.* at 1137, 1139 ("To focus on these semantic differences rather than the totality of the accusation would render the statute of limitations meaningless"; "The SEC complaint may perhaps include more detail ... but it does not contain any fundamentally new revelation.").

---

[12] The 2013 antitrust complaint repeatedly alleges that RG "intentionally and fraudulently" engaged in anticompetitive conduct. *See* Mot. 22 (citing Ex. C ¶¶ 193, 195). Plaintiffs rely on Kapoor's February 13, 2013 public statement regarding the Citizen Petition as evidence of scienter. Opp. 26; TAC ¶ 163. Hennah attended earnings calls discussing Suboxone on July 28, 2014 (TAC ¶ 228), October 21, 2014 (TAC ¶¶ 252, 254, 256), and February 11, 2015 (TAC ¶ 265). *See* Opp. 28 n.37. Bellamy signed public securities filings on July 28, 2014, November 17, 2014, and March 19, 2015 (TAC ¶¶ 227, 259, 270). *See* Opp. 28 n.37.

Also unavailing is Plaintiffs' claim that the statute was tolled because RG denied antitrust liability and because the suit did not specifically allege scienter. Opp. 34. The 2013 antitrust complaint alleges that RG "intentionally and fraudulently" engaged in anticompetitive conduct. *See* Ex. C ¶¶ 114, 193, 195; *Eton Park Fund, L.P. v. Am. Realty Capital Partners*, 2017 WL 4898226, at *4 (S.D.N.Y. Aug. 14, 2017) (statute of limitations accrued after defamation suit was filed, which requires only negligence under New York law). And RG's defense of the antitrust case has no bearing on the statute of limitations analysis. *See Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 536 (7th Cir. 2011) ("[Plaintiff's] argument amounts to a contention that a claim for securities or commodities fraud does not accrue until the defendant has confessed or a court has adjudicated its liability. That's not the law[.]").

## II.     The Court Should Stay or Dismiss the English Claims (Counts III-V)

The Court should stay the English claims, and the attached Reply Midwinter Declaration demonstrates that Plaintiffs' attempt to avoid the arbitration clause fails.

Failing that, *forum non conveniens* dismissal is warranted. Contrary to Plaintiffs' assertion (Opp. 40 n.58), the RG Defendants' have demonstrated sufficient facts to satisfy *Iragorri v. United Techs. Corp.*: (1) a class of predominantly foreign stock purchasers have little interest in litigating their English law claims in an US court; (2) English courts are an adequate – and superior – alternative forum; and (3) public interest supports allowing English courts to adjudicate complicated issues of English law. 274 F.3d 65, 73-74 (2d Cir. 2001); *see* Mot. 24.

*Finally,* the Reply Midwinter Declaration—together with the opening briefing—show that the English law claims in any event fail to state a claim.

## Conclusion

This Court should dismiss Counts I-II with prejudice, and either stay Counts III-V in favor of arbitration or else dismiss them with prejudice.

| | |
|---|---|
| Dated: September 23, 2021 | Respectfully submitted, |

*/s/ Michael G. Bongiorno*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Michael G. Bongiorno
7 World Trade Center
250 Greenwich Street
New York, New York 10007
212 295 6425 (t)
212 230 8888 (f)
michael.bongiorno@wilmerhale.com

Timothy J. Perla
Jessica L. Lewis
60 State Street
Boston, MA 02109
617 526 6000 (t)
617 526 5000 (f)
timothy.perla@wilmerhale.com
jessica.lewis@wilmerhale.com

*Counsel for Defendants Reckitt Benckiser Group plc.,*
*Rakesh Kapoor, Adrian Hennah, and Adrian Bellamy*