**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| RECKITT BENCKISER GROUP PLC, et al., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 1:20-cv-10041-PKC

CLASS ACTION

**REPLY DECLARATION OF STEPHEN MIDWINTER, Q.C. IN SUPPORT OF DEFENDANTS' MOTIONS TO STAY AND DISMISS**

## REPLY DECLARATION OF STEPHEN MIDWINTER, Q.C.

I, STEPHEN MIDWINTER QC, of Brick Court Chambers, 7-8 Essex St, London WC2R 3LD, England, state as follows:

1. I refer to my Declaration dated 25 June 2021 ("my **Declaration**"), in which I set out my opinion on a number of questions of English law arising in connection with these proceedings. I have read the Declaration of David Lord QC dated 23 August 2021 and the Declaration of Thomas Lowe QC dated 24 August 2021 in which they comment on my Declaration.

2. I have been asked by Wilmer Hale LLP, attorneys acting on behalf of Reckitt Benckiser Group plc ("**Reckitt**") to provide a short responsive affidavit

1

stating whether anything said in the Declarations of Mr Lord QC or Mr Lowe QC causes me to alter my previous opinion.

3. I have again approached this task on the basis that my duty is to provide to the Court such assistance as I am able on matters falling within my area of expertise, which is English law, and that this duty to the Court overrides any obligation I may owe to those instructing me. My compensation for providing this report is entirely independent of the outcome of the dispute.

4. The short answer to the question that I am asked is that nothing in either the Declaration of Mr Lord QC or the Declaration of Mr Lowe QC affects the opinions expressed in my Declaration, which I continue to believe represent an accurate statement of the law. I set out a few observations on the (relatively narrow) areas of disagreement that appear to exist between me and Mr Lord QC and Mr Lowe QC.

**Mr Lord QC's Declaration**

5. Mr Lord QC's Declaration addresses the question of whether the claimants are obliged to arbitrate their claims against Reckitt by Article 132 of the Articles of Association. The central thesis of Mr Lord QC's Declaration appears to be that the arbitration agreement in Article 132 should not be construed as including claims in tort, but should instead be construed only as

encompassing claims that involve relying on or considering contractual rights under the Articles.

6.    I anticipate that the proper construction of the arbitration agreement is a matter for the Court to decide. However, any suggestion that English law would support a narrow construction of the arbitration agreement – and in particular any suggestion that claims in tort (such as deceit, negligent misstatement or breach of statutory duty) would be considered to fall outside the arbitration agreement on an English law approach to interpretation of the agreement, is in my view, wrong.

7.    The general principle is that where parties to a commercial relationship have agreed to arbitrate disputes, the court will presume (in the absence of clear words that they intended that agreement to extend to *all* disputes arising out of or connected with *that relationship*. As I said in my Declaration, the reason for this is given in the leading case of *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40 at paragraphs 6 – 10: rational people ordinarily want all of their disputes relating to a particular relationship to be determined by a single tribunal.

8.    That rationale obviously extends to tort claims connected with the relationship. This point is made clearly in the respected academic work *Russell on Arbitration* (24th Edition) at paragraph 2-098 – 2-099. It is plainly

right. Imagine a situation in which a shareholder alleges (a) that he was led to acquire his shares at an inflated price by a misrepresentation by the directors and/or (b) the value of his shares has been depressed by the directors acting contrary to the Articles and/or contrary to statutory duties, arising out of the same facts. No rational person would intend the two claims to be dealt with by different tribunals. The fact that the former claim would be a tort claim and the latter would involve contractual and statutory claims, would not be a sensible basis for intending them to be heard and determined in different forums.

9.   It is an everyday occurrence for arbitration agreements in commercial contracts to be treated as extending to tort claims that arise in connection with the same relationship. I could cite many examples, but recent reported cases in which an arbitration clause was held to cover tort claims in deceit are *VTB Commodities Trading v JSC Antipinksy Refinery* [2019] EWHC 3292 (Comm) (in which the clause also covered tortious conspiracy claims) and *Sodawiczny v Ruhan* [2018] 2 Lloyd's Rep 280 (in which breach of trust claims were also held to be covered).

10.  The general approach is further supported in this case by the broad language of the arbitration agreement in Article 132, applying to claims "*arising out of*

*or in connection with these articles or otherwise*". That is very broad language indeed.

11.    Thus the clear intention, both by reference to the language of the clause and the general approach taken by the law, appears to me quite clearly to be to include within the arbitration agreement in Article 132 all claims arising between a shareholder in his capacity as such (including claims arising out of the circumstances in which the shareholder acquired his shares) and the company, which would include the claims made in these proceedings.

12.    I note that the broad *Fiona Trust* approach to interpretation of arbitration agreements was recently endorsed by the UK Supreme Court (which has taken over from the House of Lords the role of court of final appeal in England) in *Enka Insaat v OOO Insurance Company Chubb* [2020] 1 WLR 4117 at paragraph [107]. Interestingly, the UK Supreme Court noted that the English approach to construction of arbitration agreements appears to be the same as the approach in the United States. The same point is made by David Josephs QC in *Jurisdiction and Arbitration Agreements and their Enforcement* (3rd Edition) at paragraph 4.56. The Court may therefore find it easiest to approach this question by applying the same approach as it would adopt under United States law.

**Mr Lowe QC's Declaration**

13.    Mr Lowe QC appears generally to agree with my summary of the principles of claims in fraudulent misrepresentation/deceit, breach of s.90A FSMA and negligent misrepresentation/misstatement. The differences between us appear to be very narrow, and largely matters of emphasis.

14.    Mr Lowe QC is entirely right to point out that there has been a new edition of *Clerk and Lindsell on Torts* since the one to which I refer, and I should have referred to the updated edition. Fortunately, the substance of the relevant passages is unchanged.

15.    In relation to deceit/fraudulent misrepresentation:

a.    I agree with the two observations at paragraph 13 of Mr Lowe QC's Declaration.

b.    At paragraph 19(5) and 21 of the Declaration, Mr Lowe QC suggests that there is a disagreement between us in relation to the presumption of inducement. I think, with respect, that Mr Lowe QC has misunderstood the point that I made by reference to the Supreme Court decision in *Hayward v Zurich Insurance* and as a result has erected a 'straw man'. The point that I make in my Declaration is not that a plaintiff has a duty to investigate the truth or be suspicious, but that if the plaintiff in fact *knows* or *suspects* the truth, it is unlikely that he will

have relied on the misrepresentation, and so any presumption of inducement will be rebutted. That is simply a matter of common sense: if Mr X falsely tells me that England lost the football match that took place last night, but I was watching it and saw that they won (or if I saw that they were 3-0 up with five minutes to go and so suspect the truth to be that they won) I will almost certainly not be relying on Mr X's statement in any actions I might take. That point was made by Lord Clarke at paragraph 18 of *Hayward*. What makes the *Hayward* case unusual is that inducement was proved by the plaintiff showing that it agreed to settle Mr Hayward's claim despite suspecting the truth because it was concerned that a *third party* (i.e. the court) might believe Mr Hayward's lie. That unusual fact pattern obviously has nothing to do with the present case.

16.    In relation to s.90A FSMA:

a.    I agree that there is scope for debate as to whether "*published information*" extends beyond the documents referred to in *Palmer's Company Law* and to include other documents published on a "*recognised information service*". It depends on how you interpret paragraph 2 of Schedule 10A – the definition of "*recognised information service*" continues to refer to information which the Issuer

is *required* to disclose by the Transparency Directive or corresponding local rules, and it is difficult to see why the legislature would have expanded the scope of the provision when moving it from s90A to Schedule 10A so as to impose obligations in relation to matters that the Issuer is not required to disclose at all: Mr Lowe QC suggests no reason why the legislature would have intended to make such a change. But I would accept that, as I said in my Declaration, the proper interpretation of s90A and Schedule 10A is opaque, lacking in authority and open to argument.

b.    I disagree with Mr Lowe QC's suggestion that paragraph 7(3) of Schedule 10A preserves deceit claims – it is just a matter of reading it. None of the categories of claim that are preserved includes claims in deceit.

17.    On negligent misrepresentation/misstatement, Mr Lowe QC refers to a case called *Possfund Custodian Trustee Ltd v Diamond* as supporting the existence of a duty of care in relation to statements in company documents. I do not think that the analogy is useful or sound. The decision in *Possfund* was on an application to strike out the claim on the basis that it disclosed no cause of action. The judge held that the question of whether those who issued a prospectus owed a duty of care to purchasers in the aftermarket (i.e. those to

8

whom the prospectus was not directly provided) in respect of false statements in the prospectus was something that merited full consideration at trial and so refused the strike-out application. That provides no assistance here: (a) the case does not establish any general principle or have significant value as precedent at all because it was a strike-out application – the judge did not find that the claims were good or bad, but merely that they were not so hopeless as to be struck out at an interlocutory hearing where the points were not fully argued; (b) the claims in this case are not based on prospectus liability (which is a separate and highly regulated area where liability for misstatement has for many years been imposed by statute, in England under the provision that is currently s.90 FSMA) but on a much broader asserted liability in relation to statements made in annual reports and company communications. The imposition of a duty of care in the latter situation would involve a fundamentally different and much more significant extension of the law than anything contemplated by any of the parties or the Court in *Possfund*.

Stephen Midwinter QC

22 September 2021

JURAT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.


Executed on: 22 September 2021

Stephen Midwinter QC