UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>Defendants. | No. 1:20-cv-10041-PKC |

**DEFENDANT SHAUN THAXTER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Richard T. Marooney
Israel Dahan
Paul A. Straus
Eric A. Hirsch
Alexander Noble
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

*Attorneys for Defendant Shaun Thaxter*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

A.  None of the Reckitt Press Releases Can Support a Claim Against Mr. Thaxter. ................... 1

B.  None of Mr. Thaxter's Statements on the July 28, 2014 Earnings Call Are Actionable. ........ 3

C.  The TAC Does Not Adequately Allege Scienter as to Mr. Thaxter. ...................................... 5

D.  The TAC Does Not Allege an Actionable Control Person Claim against Mr. Thaxter. ........ 10

E.  Plaintiffs Do Not State a Claim Against Mr. Thaxter under English Law. .......................... 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018) ...................................2

*In re Celgene Corp. Sec. Litig.*, No. 18–4772 (JMV), 2019 WL 6909463 (D.N.J. Dec. 19, 2019) ..............................................................................................................................6

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ............................................................................................................................2

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379 (S.D.N.Y. 2020) ..............................................................................................6

*Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) .........................................................................................................6

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. J.P. Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ....................................................................................................6

*Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) ..............................................................................4

*Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) ........................................................6

*In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y. 2013) ....................................................9

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821 (S.D.N.Y. 2019) .....................................................................................4

*Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135 (2011) ......................................1, 2

*Kuwait Inv. Office v. Am. Int'l Grp.*, 128 F. Supp. 3d 792 (S.D.N.Y. 2015) ..................................2

*Local No. 38 IBEW Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447 (S.D.N.Y. 2010) .......................................................................................................................7

*Meyer v. Concordia Int'l Corp.*, No. 16-CV-6467 (RMB), 2017 WL 4083603 (S.D.N.Y. July 28, 2017) .......................................................................................................10

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10 (2d Cir. 2011) ..........................6

*River Birch Capital, LLC v. Jack Cooper Holdings Corp.*, No. 17-CV-9193 (WHP), 2019 WL 1099943 (S.D.N.Y. Mar. 8, 2019) ............................................................5, 6

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014) ....................................................2

*Salim v. Mobile Telesystems PJSC*, No. 19-CV-1589 (AMD) (RLM), 2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) ...................................................................................7

*In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 391 (S.D.N.Y. 2016) ......................................................3

*Schiro v. Cemex*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................3

*In re UBS AG Sec. Litig.*, No 07-CV-11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ..............................................................................................................2

**Statutes**

Private Securites Litigation Reform Act, Pub. L. No. 104-67, 109 Stat. 737...................................1

## PRELIMINARY STATEMENT

As demonstrated in Thaxter's opening brief ("Opening Brief" or "Thaxter Br."), Plaintiffs' Third Amended Complaint ("TAC") fails to state any actionable claims against Mr. Thaxter. Plaintiffs' Opposition, desperate to salvage a claim, paints an elaborate picture that cannot withstand a closer look.

<u>First</u>, Plaintiffs struggle in vain to plead a material misstatement by Thaxter by (1) tagging Thaxter as the "maker" of statements issued by Reckitt, a company of which he was neither an officer nor an employee, (2) mischaracterizing statements he did make, and (3) citing statements that amount to inactionable corporate optimism and puffery.

<u>Second</u>, confronted with their failure to plead scienter after four attempts, Plaintiffs improperly try to amend yet <u>again</u>, tendering a feeble case for motive based on facts *that appear nowhere in their pleading*. Separately, their attempt to plead fraudulent intent boils down to the argument that Thaxter, as the CEO of Reckitt's subsidiary, <u>must</u> have known that one of RBP's employees provided false safety information to one of RBP's customers. That is exactly what Plaintiffs are <u>not</u> permitted to do under the PSLRA.

<u>Third</u>, Plaintiffs' argument that Thaxter is a "control person" of Reckitt relies exclusively on Plaintiffs' misreading of the sole case they cite. Plaintiffs entirely ignore that Thaxter was not a "senior representative" of Reckitt; he was an officer of its *subsidiary*, which does not establish control over *Reckitt*. Finally, Plaintiffs' desperate attempt to plead a claim under English law fails because they fail to plead either scienter against Thaxter or a duty to disclose.

## ARGUMENT

**A. None of the Reckitt Press Releases Can Support a Claim Against Mr. Thaxter.**

Mr. Thaxter was not the "maker" of any statements in Reckitt's July 28, 2014 press release, October 21, 2014 press release, or October 21, 2014 earnings call under *Janus Capital Grp. v.*

*First Derivative Traders*, 564 U.S. 135 (2011).  Plaintiffs tacitly concede that because Thaxter did not participate in the October 21, 2014 earnings call, he is not liable for any statements on it.[1]  Surprisingly, however, although the TAC also fails to allege any facts showing Mr. Thaxter had any role in preparing or issuing the July 28, 2014 and October 21, 2014 press releases, Plaintiffs still contend that Mr. Thaxter was the "maker" of these statements.  *See* Pl. Br. 21 n.38.

Recognizing their fatal lack of any particularized allegations, Plaintiffs resort to the so-called "group pleading" doctrine.  Even if that doctrine remained viable in light of *Janus* – which it does not – Plaintiffs' attempt to apply it in *this* case would be untenable.[2]  The doctrine is "extremely limited in scope" and requires allegations that written statements were made by "individuals with direct involvement in the everyday business of the company."[3]  Given Plaintiffs' tacit admission that the allegations in the TAC fail to show that Mr. Thaxter participated in Reckitt's preparation or issuance of the press releases as required under *Janus*, their attempt to hold Mr. Thaxter liable for statements by his employer's parent corporation fails.  *See, e.g.*, *Kuwait Inv. Office v. Am. Int'l Grp.*, 128 F. Supp. 3d 792, 810-11 (S.D.N.Y. 2015) (president of corporate subsidiary was not the "maker" of statements by parent company).[4]

Similarly, Plaintiffs fail to rebut that Reckitt's November 17, 2014 press release cannot provide the basis for any claim against Mr. Thaxter.  His sole statement in it is that that RBP would "continue leveraging our unique patient-focused leadership model to expand availability of

---

[1] By failing to respond to Mr. Thaxter's argument, Plaintiffs have abandoned any claims against Mr. Thaxter arising from the October 21, 2014 earnings call.  *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("[A] plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

[2] *In re UBS AG Sec. Litig.*, No 07-CV-11225 (RJS), 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ("[A] theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the *Janus* decision[.]").

[3] *Kuwait Inv. Office v. Am. Int'l Grp.,* 128 F. Supp. 3d 792, 810 (S.D.N.Y. 2015).

[4] The defendant in *In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018), on which Plaintiffs rely, was both a director of the company that *issued* the statements and "had direct involvement in the management" of *that* company.  *See* 307 F. Supp. 3d at 243.  Mr. Thaxter, by contrast, was not a director, officer, or employee of Reckitt.

addiction treatment and improve patient lives across the globe." TAC ¶ 261. This is a quintessentially vague, forward-looking statement of optimism that is categorically not actionable. *See* Thaxter Br. 10.

**B. None of Mr. Thaxter's Statements on the July 28, 2014 Earnings Call Are Actionable.**

As demonstrated in Mr. Thaxter's Opening Brief, all of the challenged statements by Mr. Thaxter on the July 28, 2014 earnings call fall into one or more categories that are not actionable under the securities laws. Thaxter Br. at 8-12. Plaintiffs attempt to salvage their claim through an increasingly desperate series of arguments that fail to show material misstatements by Mr. Thaxter.

First, Plaintiffs resort to mischaracterizing Mr. Thaxter's statements, contending that he "claimed [the Film] had a lower potential for abuse." Pl. Br. at 15. What Mr. Thaxter *actually* said was that the Film "has been *designed* with the *intent* of being a lower potential for abuse and misuse than previous products on the market." TAC at ¶ 241 (emphasis added). This statement does not, as Plaintiffs suggest, make any affirmative claim about the *efficacy* of these design features.

Second, Plaintiffs contend that Mr. Thaxter's actual statement that Film was designed with the intent of being a lower potential for abuse and misuse than the previous products on the market failed to disclose that the Film was designed to thwart generic competition. Pl. Br. at 18. To the contrary, Reckitt publicly disclosed that it launched the Film "[t]o mitigate the potential impact of [generic competition to the Tablet]." *See* TAC ¶ 98. Accordingly, Plaintiffs cannot validly claim that any purported non-disclosure of this fact rendered Mr. Thaxter's statement actionable.[5]

---

[5] In support of this allegation, Plaintiffs cite notes of another employee that Mr. Thaxter is not alleged to have seen. *See* Pl. Br. at 18 (citing TAC ¶ 109). Consistent with the challenged statement, however, those notes reflect that employee's intention to design a safer product. TAC ¶ 109 ("Routes to protect [redacted] from generic: … Superior safety/efficacy of oral film"). While Plaintiffs argue that Reckitt failed to disclose anticompetitive practices (Pl. Br. n.12), courts routinely hold that the failure to disclose alleged wrongdoing does not state a claim based on otherwise true statements. *See, e.g., Schiro v. Cemex,* 396 F. Supp. 3d 283, 299 (S.D.N.Y. 2019) ("[A]ccurately reported financial statements . . . cannot become actionable simply because companies do not simultaneously disclose some

3

Third, Plaintiffs argue that Mr. Thaxter's statements during the July 28, 2014 earnings call are not puffery because they purportedly fall within an exception for statements that misrepresent existing facts. Pl. Br. at 17. But, as Plaintiffs' authorities recognize, this exception only applies where the defendant incorrectly represents "concrete and measurable areas of the defendant company's performance," and – of critical importance here – does *not* apply when "such statements relate to future expectations." *See, e.g.*, *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 845 (S.D.N.Y. 2019) (cited in Pl. Br. at 17). Thaxter's statements do not fall within the argued exception because they either (i) consist of generic opinion statements that do not address concrete and measurable areas,[6] (ii) accurately represent areas of performance that Plaintiffs do not contend were incorrect,[7] or (iii) are vague statements of optimism concerning future expectations of performance.[8]

Fourth, Plaintiffs fail to rebut Mr. Thaxter's showing that his statements concerning RBP's compliance are not actionable. Mr. Thaxter's sole statement concerning compliance is couched in extremely general terms: "So we have systems. We have processes. We've got compliance. We have regulatory infrastructure." TAC ¶ 245. Plaintiffs do not argue that these generic assertions were untrue in themselves, but rather that they were misleading because Mr. Thaxter allegedly

---

wrongdoing that may have contributed to the company's financial performance.") (citing *Fogel v. Vega*, 759 F. App'x 18, 24 (2d. Cir. 2018)).

[6] *See* TAC ¶ 248 ("What I think is important to recognize is that we're not in the business of forcing the market or patients to do anything. I think that we put the film proposition out there for patients and physicians, and we stated our case as to why we thought it was a better technology. And it was really the rapid uptake by patients and physicians, as for the preference.").

[7] *See* TAC ¶ 237 ("We've maintained our double-digit market growth. This is something we're very good at."); ¶ 237 ("Well, the data has already demonstrated that it is very clearly the preferred product, not only by patients, not only by physicians, but also by payers."); ¶ 235 ("So in the nine months following where we left off, we continue to drive conversion of patients from tablets onto the film driven by the preference of the patient for the film . . . . So we saw by March of last year that the film share had grown to 70% and the tablet business had come down to 15%."). *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 391, 404 (S.D.N.Y. 2016) ("[The allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability.").

[8] *See* TAC ¶ 237 ("[W]e're very confident that we will continue to be successful here."); TAC ¶ 241 ("So in the short term, we can expect to continue to benefit from market growth, which is something we get better and better at as time goes on.").

failed to disclose that RBP had discontinued salespersons preparing "activity reports" documenting their sales and marketing efforts. Pl. Br. at 20. This argument fails for multiple reasons.

Contrary to Plaintiffs' characterization, the activity reports were not compliance mechanisms; they were sales tracking tools that were "use[d] as models for promoting Suboxone." *See* Indivior Inc. Indictment, Exhibit A to TAC, at ¶ 42. And even if, as Plaintiffs incorrectly allege, these activity reports served some compliance function, Plaintiffs' reliance on their discontinuation is misplaced given the breadth and generality of Thaxter's statement at issue. No reasonable investor could be misled by Thaxter's general statement, "[w]e've got compliance," simply because they were allegedly not informed that this single, tangential aspect of RBP's entire compliance system had been discontinued.[9]

## C. The TAC Does Not Adequately Allege Scienter as to Mr. Thaxter.

Recognizing that the TAC pleads nothing more than generalized profit-seeking interests that cannot suffice to show scienter, Plaintiffs attempt to plead a new, convoluted theory that Mr. Thaxter's increased compensation as a result of his new role as Indivior CEO somehow gave him a "unique" profit-seeking motive sufficient to demonstrate scienter. Pl. Br. at 9. Unfortunately for Plaintiffs, this theory appears nowhere in Plaintiffs' Third Amended Complaint.[10] Instead, Plaintiffs impermissibly rely on unpled facts concerning Mr. Thaxter's purported compensation set forth for the first time in an exhibit to Plaintiffs' opposition papers.[11] In any event, Plaintiffs'

---

[9] In response to Thaxter's argument that the TAC contains only bare assertions in support of a conclusory allegation that RBP "perversely incentivized" its sales staff to market Suboxone Film, Thaxter Br. at 12, Plaintiffs merely recite these same assertions and emphatically add that Indivior's DOJ settlement "required it to disband its U.S. Suboxone sales force and never reinstate it." Pl. Br. at 22 n.23. This assertion does nothing to remedy Plaintiffs' failure to allege facts showing Thaxter made any misstatements concerning RBP's sales force.

[10] In a naked attempt to disguise that this theory was not pled in the TAC, Plaintiffs cite to TAC ¶ 42 as the source of facts supporting this argument. Pl. Br. at 9. But Paragraph 42 does not plead these facts—it merely alleges, in a general recitation of Mr. Thaxter's employment history, that "[a]fter the demerger, Thaxter became the CEO of Indivior." TAC at ¶ 42.

[11] Plaintiffs offer no basis for the Court to consider the unpled facts concerning Mr. Thaxter's compensation in Exhibit 5 to the Declaration of Alan I. Ellman, which indisputably relies on materials outside the TAC. *See River Birch Capital, LLC v. Jack Cooper Holdings Corp.*, No. 17-CV-9193 (WHP), 2019 WL 1099943, at *6 n.1 (S.D.N.Y. Mar.

5

new theory, at bottom, alleges that Mr. Thaxter's compensation increased due to his new corporate leadership position, which cannot establish scienter under binding Second Circuit law. *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. J.P. Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) ("If scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, 'virtually every company . . . that experiences a downturn in stock price could be forced to defend securities fraud actions.'").[12]

Plaintiffs' palpable retreat from their allegations concerning Mr. Thaxter's guilty plea—featured heavily in the TAC—tellingly demonstrates the insufficiency of their scienter allegations against Mr. Thaxter. Confronted with Mr. Thaxter's argument that his plea to a strict liability offense does not establish scienter, Plaintiffs unsuccessfully attempt to fall back on (1) their defunct core operations theory, and (2) allegations that individuals *other than Thaxter* had contemporaneous knowledge that certain statements to MassHealth were false. Pl. Br. 29.[13] As Plaintiffs' own authorities recognize, to the extent it survives at all, "the core operations doctrine may provide support for but not an independent basis of scienter."[14] Given the demonstrated failure of Plaintiffs' other asserted bases for Mr. Thaxter's alleged scienter, the core operations theory cannot suffice to impute contemporaneous knowledge to Mr. Thaxter of the instances of

---

8, 2019) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss [and so] the Court will not consider any of Plaintiff's new allegations.") (internal citations omitted).

[12] Plaintiffs' citation to the District of New Jersey's decision in *In re Celgene Corp. Sec. Litig.*, No. 18–4772 (JMV), 2019 WL 6909463 (D.N.J. Dec. 19, 2019), is misplaced. In addition to compensation, that court found plaintiffs had alleged facts known to defendants that directly contradicted their public statements—critical allegations that are not present here.

[13] This Court should reject application of the core operations doctrine here, following the "many courts [that] have held it is no longer valid" in light of the PSLRA's enactment. *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 7480415, at *7 (S.D.N.Y. Dec. 29, 2016). Plaintiffs' citation to the Second Circuit's 2011 decision in *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) is unpersuasive, given that in 2012 the Second Circuit explicitly called the viability of the core operations doctrine into question and has not since opined on the issue. *See Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) (doubting whether, in light of PSLRA's enactment, "the core operations doctrine survives as a viable theory of scienter").

[14] *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 423 (S.D.N.Y. 2020).

alleged fraud purportedly known to another employee (Baxter),[15] the Medical Affairs Manager,[16] or RBP lobbyists.[17] *See, e.g.*, *Salim v. Mobile Telesystems PJSC,* No. 19-CV-1589 (AMD) (RLM), 2021 WL 796088, at *13 (E.D.N.Y. Mar. 1, 2021) ("Accusations founded on nothing more than a defendant's corporate position are entitled to no weight.").

In a last-ditch effort to scrape together a plausible showing of scienter, Plaintiffs offer up a laundry list of "facts" supposedly raising a "strong inference" that Thaxter had knowledge of the anticompetitive scheme alleged in the TAC. Pl. Br. at 30. But in addition to the reasons set forth above, these allegations fail because they do not plausibly demonstrate Mr. Thaxter had knowledge of facts rendering any of the statements he made false or misleading.[18] Even assuming their truth for purposes of this motion, Plaintiffs' hodgepodge of allegations fails to show scienter.[19]

Plaintiffs' assertions in items (1) and (2) of the laundry list assert that Thaxter received internal correspondence "refuting" that Film had safety advantages over Tablet. Plaintiffs

---

[15] Plaintiffs incorrectly argue the Court should infer Thaxter's knowledge from Baxter's alleged testimony that Thaxter was informed of "concerns regarding RBP's sales force conduct." Pl. Br. at 29 n.39 (citing TAC ¶ 289). What Mr. Baxter actually testified was that "on the occasions [he] was alerted to potentially troubling conduct on the sales side, [he] elevated them to members of our management with the relevant responsibility." TAC ¶ 289. This testimony does not specify that Mr. Thaxter was one of these individuals or even identify what actual conduct Baxter was referring to.

[16] Plaintiffs, overstating the allegations in the TAC yet again, argue that the Medical Affairs Manager's comments at an RBP corporate conference show Thaxter had contemporaneous knowledge of her mispresenting information to MassHealth. Pl. Br. at 29 (citing TAC ¶ 186). But the Medical Affairs Manager's cited remarks that the information she provided to MassHealth was a "slam dunk" that "helped" secure MassHealth's coverage of Suboxone Film do not establish that fraudulent information was provided to MassHealth, let alone that Thaxter knew it was fraudulent.

[17] Puzzlingly, Plaintiffs cite an internal email in which Thaxter said a lobbyist was "outrageous" for calling RBP's marketing director "clueless" and stating that a hiring a "guerilla" was necessary to communicate with MassHealth. Pl. Br. at 30. As with Plaintiffs' other purported evidence, this communication does not remotely establish that Mr. Thaxter had contemporaneous knowledge of any misrepresentations to MassHealth.

[18] *See* Pl. Br. at 30 n. 43 (citing TAC ¶¶ 116, 126, 128, 148, 156, 158).

[19] Plaintiffs' desperate argument that Mr. Thaxter's scienter can be inferred from a June 2012 email from Reckitt's investor-relations director described in TAC ¶ 148 is baseless. Contrary to Plaintiffs' self-serving recitation of the scienter standard, the Court need not view this email "in the light most favorable to Plaintiffs," as a "[p]laintiff's inferences of scienter must be 'cogent' and more compelling than other explanations for Defendants' conduct." *Local No. 38 IBEW Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 463 (S.D.N.Y. 2010). Given that the sole response to this email explicitly stated that "any decision we make will be based on consumer safety," (TAC ¶ 148), and the lack of any facts indicating Mr. Thaxter even participated in this discussion, Plaintiffs' desired inference, even if arguably "conceivable," is not more compelling than the obvious contrary explanation that those copied on the email, including Thaxter, did not share the views expressed by Reckitt's investor-relations director.

mischaracterize their own TAC. Paragraph 116 does not allege that Thaxter knew Film did not possess safety advantages, but only that Thaxter received marketing plans, *prepared by others*, noting potential advantages of the Film at a time when "scientific studies" had not yet been conducted showing whether or not data bore out these advantages. Similarly, paragraph 126 similarly does not "refute" the safety advantages; it alleges that Thaxter received an email in which Baxter expressed his belief that data needed to be collected "as a post marketing exercise," but believed that in the meantime the company could "describe the nature and intent of the packaging in marketing materials." Finally, paragraph 156 pleads that when data was collected, the results of the root cause analysis were "inconclusive"; they did not "refute" the safety advantages of Film.

Plaintiffs' assertion in Item (3) that the FDA stated Film was not safer is incorrect. Even Plaintiffs' selective recitation of the FDA's actual statements shows the FDA did not find Film was less safe; it merely questioned "the quality of the data and their relevance to the proposed labeling." TAC ¶ 127. Items (4), (5) and (6), claiming that Thaxter was part of an undisclosed "scheme" to thwart generic competition, are not actionable because as noted above, Reckitt already disclosed that Film was introduced to mitigate the effects of generic competition to Tablet. *See* TAC ¶ 98.

Plaintiffs' items (7) and (8) claim that Thaxter filed a "sham petition" with the FDA and distributed "false marketing materials." But the cited paragraphs merely allege that Thaxter and Kapoor approved a citizen petition to the FDA that included an executive summary, prepared by *unspecified* "Reckitt and RBP executives," that was allegedly edited against an earlier draft in a misleading manner (TAC ¶ 158). Plaintiffs do not specifically allege that Thaxter played any role in drafting or editing this allegedly misleading executive summary; nor do Plaintiffs allege that Thaxter had any reason to be aware of these allegedly misleading edits.

8

Items (9), (10), and (11) claim that Thaxter "enabled" illegal over-prescriptions of Suboxone Film by doctors, "manipulated" data sent to the FDA, and "hired a fake doctor to harass MassHealth." None of the allegations in the TAC support these hyperbolic contentions. Paragraph 128 alleges that, consistent with Reckitt's disclosure that it had launched Film to mitigate the impact of generic competition in the Tablet, Thaxter organized a "Full Blitz campaign" to "convert [RBP's] tablet business to film" (TAC ¶ 128). The TAC does not plead any facts demonstrating that Thaxter directed, or was even aware of, the use of any illegal conduct in this sales campaign or the alleged falsifications of associated marketing materials. Similarly, the facts pled in the TAC do not show Mr. Thaxter "hired" communications strategic Gene Unger or had knowledge of his allegedly problematic communications to MassHealth.[20]

Plaintiffs' last four items are especially baseless. Items (12) and (13), which claim Thaxter possessed motives showing his scienter, merely restate the same generalized profit-seeking interests that fail to show scienter as shown above (at 5-6). Items (14) and (15), which claim that Thaxter's scienter can be inferred from Indivior's indictment and related settlements, are incorrect, as Plaintiffs' own cited authority acknowledges that "the existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter."[21]

Stripped of Plaintiffs' blatant distortions of both the law and their own factual allegations, the TAC offers no basis for scienter beyond the patently insufficient fact of Mr. Thaxter's corporate leadership position. Plaintiffs' claim should be dismissed.

---

[20] Plaintiffs invite the Court to make a wholly speculative and factually unsupported inference that, because Thaxter requested to set up a meeting with Dr. Jeffrey, the Director of Pharmacy for MassHealth with whom Unger had been communicating, Thaxter presumably "kn[ew] of RBP's conspiratorial scheme to influence MassHealth." TAC ¶ 197. In addition to the TAC not alleging any facts showing the meeting even concerned Unger, Plaintiffs allege the meeting never occurred. *Id.*
[21] *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (cited in Pl. Br. at 30 n.44).

### D. The TAC Does Not Allege an Actionable Control Person Claim against Mr. Thaxter.

Plaintiffs' argument that Mr. Thaxter's participation in the July 28, 2014 earnings call "demonstrates his control of Reckitt"—the *parent* company of Mr. Thaxter's employer—is flatly refuted by the only authority they cite. As *Meyer v. Concordia Int'l Corp.*, No. 16-CV-6467 (RMB), 2017 WL 4083603, at *9 (S.D.N.Y. July 28, 2017) recognizes, control person claims require that the defendant had "control of the primary violator" – which the individual defendants in *Meyer* did not challenge. Here, by contrast, Mr. Thaxter was an employee of Reckitt's *subsidiary* with no authority over the Reckitt officials speaking on the call.[22]

### E. Plaintiffs Do Not State a Claim Against Mr. Thaxter under English Law.

Plaintiffs' English law claims fail both because the TAC fails to adequately plead scienter (see Point I(C) above) and because the TAC fails to allege Mr. Thaxter had the required duty to disclose. Plaintiffs' conclusory assertion that Mr. Thaxter "fail[ed] to correct his Class Period statements with the truth" does not identify any such statements—nor can Plaintiffs given that all of Mr. Thaxter's challenged statements are not actionable—and Plaintiffs fail to demonstrate that Mr. Thaxter had any contemporaneous knowledge of facts contradicting his statements.

### CONCLUSION

For the foregoing reasons, and those stated in Mr. Thaxter's Opening Brief, the claims against Mr. Thaxter in the TAC should be dismissed in their entirety with prejudice.[23]

---

[22] Plaintiffs' control person claim also fails for lack of Mr. Thaxter's alleged culpable participation in Reckitt's alleged fraud, as shown in Point C above.

[23] Mr. Thaxter joins in and incorporates by reference the arguments for the dismissal of Plaintiff's' claims set forth in the Reply of Defendants Reckitt Benckiser Group PLC, Rakesh Kapoor, Adrian Hennah, and Adrian Bellamy to the extent applicable to Mr. Thaxter.

Dated: New York, New York
September 23, 2021

KING & SPALDING LLP

By: */s/ Paul A. Straus*
Richard T. Marooney
Israel Dahan
Paul A. Straus
Eric A. Hirsch
Alexander Noble
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2100
Email: pstraus@kslaw.com

*Attorneys for Defendant Shaun Thaxter*