UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>Defendants. | Civil Action No. 1:20-cv-10041-PKC<br><br>CLASS ACTION |

**SUPPLEMENTAL DECLARATION OF THOMAS LOWE, QC**

I, THOMAS LOWE QC of Wilberforce Chambers, 8 New Square, London WC2 A 3QP, England STATE AS FOLLOWS:

1. I refer to my declaration dated 24 August 2021 (**the "Lowe Declaration")** in which I set out my views on certain aspects of the declaration of Mr. Midwinter QC dated 25 June 2021 (the "**Midwinter Declaration**") on a number of matters of English Law which arise in these proceedings. I have read the responsive affidavit of Mr. Midwinter dated 23 September 2021 in which he comments on my declaration ("**Mr. Midwinter's 2nd Declaration**").

2. I have been asked by Robins Geller Rudman & Dowd LLP, Lead Counsel for Plaintiffs City of Birmingham Retirement and Relief System, City of Pontiac General Employees' Retirement System, City of Sterling Heights Police and Fire Retirement System and the class of parties collectively referred to herein as the "Plaintiffs" to state my agreement or disagreement with those aspects of Mr. Midwinter's 2nd Declaration which address the Lowe Declaration.

3. I note that Mr. Midwinter does not disagree with my evidence on reliance and that his sole comment relates to Howard v Zurich Insurance. The observation made in paragraph 15(b) of Mr. Midwinter's 2nd Declaration is, with respect, an argument on the peculiar facts in Howard. As such, the points made are at best anecdotal and

do not provide an example with any legal significance. There can obviously be many different degrees of suspicion. "Suspicion" in this context is not a helpful analytical tool and not a legal test in the English law of deceit. The outcome in Howard shows that suspicion is not the relevant test because reliance or causation was established notwithstanding the plaintiff's suspicions. Indeed, as Redgrave v Hurd shows, reliance will not be negated when a plaintiff has grounds for suspicion but does not investigate the truth.

4. Paragraph 16(a) of Mr. Midwinter's 2nd Declaration appears to accept the observation in my declaration that information to which Schedule 10A FSMA applies is not limited to the class of documents suggested in Palmer's Company law which was a commentary on a repealed law and to which the original Midwinter Declaration referred. Mr. Midwinter argues that, despite the alteration to FSMA, nothing has changed: the definition still provides that information/documents are "**required** to be disclosed on a recognised information service" ("**RIS**") (Emphasis added).

5. The reference to what is "required" to be disclosed on an RIS must be examined more closely. There are two important features of Schedule 10A :

(a) There is now no limit to the type of information to which liability can attach. This was plainly a deliberate change to the legislation from Section 90 discussed in Mr. Midwinter's Declaration and in Palmer's Company Law. Section 90 was not merely "moved" to Schedule 10A, as Mr. Midwinter's 2nd Declaration asserts, but its wording was altered. In particular, paragraph 2(1) of Schedule 10A now provides that the schedule applies to "information published by the issuer of securities", without limitation.

(b) Furthermore, it is not correct that liability is confined to information/documents "required" to be published on an RIS. Relevant publication can take place in one of two ways. The first of these, publication required to be published by an RIS, is the only means to which Mr. Midwinter refers. He does not mention the second potential greater class of publications by any "other means **where the availability of the**

**information has been announced by the issuer** on a RIS". (Emphasis added).

6. In my view, the new definition extends liability to statements which are both expressly or impliedly referred to in an announcement on an RIS. An example of an express reference is where an announcement on an RIS refers to the company having a forecast or budget; this will bring the whole text of the forecast or budget within the scope of the liability regime. It is immaterial that the forecast or budget is not required to be published by recognised means because it has been referred to expressly by information on an RIS and that is sufficient. There can also be an implied reference to information. An example of an implied reference might occur, for example, when the announcement on the RIS refers to an event such as a board meeting which would ordinarily be minuted.

7. Mr. Midwinter and I disagree that paragraph 7 of Schedule 10A preserves claims for deceit. This is a question of construction and, in my view, the reading of Schedule 10A as a whole clearly shows that liability for deceit has not been eroded. In particular:

(a) Schedule 10A paragraph 3 *creates* liability for an untrue or misleading statement (published as described above) which is close to common law deceit. Paragraph 3(2) provided that a manager must have knowledge that the statement is false or misleading or be reckless as to that. However, liability under Schedule 10A is not exactly the same as the common law because there is no requirement that the issuer has the intention to induce reliance. Hence, something akin to liability for deceit is clearly applied to the information published as set out in paragraph 2.

(b) There is, however, nothing to remove common law liability for statements which are not published in accordance with paragraph 2 and are thus not covered by statutory liability under Schedule 10A. The legislature is expected to use clear words to take rights away rights of action. The statute does not expressly take away a claim for deceit. On the contrary, paragraph 7(1) of Schedule 10A only narrowly absolves the issuer from any common

law liability in respect of statements to which the schedule applies (i.e. "The issuer ***is not subject to liability*** other than that provided for in paragraph 3 ***in respect of loss suffered as a result of or in reliance by any person on any untrue or misleading statement in published information to which this Schedule applies.***") (Emphasis added). In other words, paragraph 7 has no application in respect of loss suffered as a result of any other untrue statements to which the Schedule does not apply.

(c) Paragraph 7(1) essentially has the limited effect that the liability set out in Schedule 10A paragraph 3 replaces common law liability (but only for the statements to which it applies and save to the extent set out in paragraph 7(3)). That is not surprising because the statutory liability is a slightly modified form of deceit; it is unnecessary for such statutory liability to coexist with the common law liability in deceit for those same statements. However, the corollary is that for all other statements which fall outside the defined sphere of operation of statutory liability, common law liability has not been affected.

8. Mr. Midwinter and I agree that paragraph 7(3) of Schedule 10 preserves a claim for negligence when a duty of care is established. He makes the point in paragraph 17(a) of the Midwinter 2nd Declaration that the Possfund case was decided on an application for a form of demurrer. Nevertheless, it was decided as a point of law as to the existence of a duty of care and so is clear authority: I disagree it has "no precedent value." On the contrary, positive reference to it is made in textbooks (including Palmers Company Law 5-760). Whilst it is a decision that concerns prospectuses, as pointed out in paragraph 17(b) of Midwinter's 2nd Declaration, Possfund was nevertheless a case that could not be decided on the basis of statutory prospectus liability. Its significance is in showing the existence of liability to investors in the aftermarket to whom no statutory duty was owed (i.e. not the initial shareholders/stockholders or subscribers). In my view, if directors choose to communicate with shareholders, they are likely to have assumed a duty of care in respect of their communications to those shareholders.

Pursuant to 28 U.S.C. paragraph 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 7, 2021

Tom Lowe

THOMAS LOWE QC