UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

CITY OF STERLING HEIGHTS POLICE &amp;     :   Civil Action No. 1:20-cv-10041-PKC
FIRE RETIREMENT SYSTEM, Individually    :
and on Behalf of All Others Similarly Situated,   :   <u>CLASS ACTION</u>
                                    :
                 Plaintiff,     :   PLAINTIFFS' REPLY MEMORANDUM OF
                                    :   LAW IN FURTHER SUPPORT OF MOTION
    vs.                          :   FOR LEAVE TO AMEND AND JOIN
                                    :   ADDITIONAL PARTY
RECKITT BENCKISER GROUP PLC,        :
RAKESH KAPOOR, and SHAUN THAXTER,   :
                                    :
                Defendants.    :
                                    :

————————————————————————— x

**TABLE OF CONTENTS**

**Page**

I.    PSP Adequately Alleges Reliance ............................................................................2

II.    PSP Will Establish Class-Wide Reliance at the Class Certification Stage.........................5

III.    Defendants' Attempt to Revisit Arguments Already Decided by the Court Fails...............7

IV.    Amendment Would Not Be Prejudicial ..................................................................9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. U.S.*,
  406 U.S. 128 (1972)................................................................................................5, 6

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011)....................................................................3, 4

*Anwar v. Fairfield Greenwich Ltd.*,
  306 F.R.D. 134 (S.D.N.Y. 2015) ................................................................................5

*Audet v. Fraser*,
  332 F.R.D. 53 (D. Conn. 2019).................................................................................5

*Blakely v. Amsterdam Key Assocs. LLC (In re 477 W. 142nd St. Hous. Dev. Fund
  Corp.)*,
  2022 WL 2093418
  (S.D.N.Y. June 10, 2022).........................................................................................7

*Charney v. Zimbalist*,
  2015 WL 4597538
  (S.D.N.Y. July 30, 2015) ..........................................................................................3

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012).....................................................................6, 7

*Dandong v. Pinnacle Performance Ltd.*,
  2013 WL 5658790
  (S.D.N.Y. Oct. 17, 2013) .......................................................................................1, 5

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002)........................................................................................9

*Gerstle v. Gamble-Skogmo, Inc.*,
  298 F. Supp. 66 (E.D.N.Y. 1969), *modified*, 478 F.2d 1281 (2d Cir. 1973) ............................4

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
  561 U.S. 287 (2010)..................................................................................................8

*In re Fontaine*,
  402 F. Supp. 1219 (E.D.N.Y. 1975) .........................................................................4

**Page**

*In re Vincent Andrews Mgmt. Corp.*,
    507 B.R. 78 (D. Conn. 2014), *aff'd sub nom.*, *Andrews v. McCarron*,
    595 F. App'x 69 (2d Cir. 2015) ...........................................................................................3

*SRM Global Master Fund Ltd. Partnership v. Bear Stearns Cos. L.L.C.*,
    829 F.3d 173 (2d Cir. 2016)................................................................................................7

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    2006 WL 2161887
    (S.D.N.Y. Aug. 1, 2006) .....................................................................................................6

## STATUTES, RULES AND REGULATIONS

9 U.S.C.
    §2...........................................................................................................................................8

17 C.F.R.
    §240.10b-5 ...........................................................................................................................4

Federal Rules of Civil Procedure
    Rule 23(a)(2)........................................................................................................................6
    Rule 44.1 ..............................................................................................................................9

In ruling on Defendants' motion to dismiss Plaintiffs' English law claims, the Court rejected several of Defendants' arguments, but ultimately found that because Pontiac did not plead actual reliance, the English law claims were not adequately pled.[1] The PFAC, by adding PSP as a plaintiff and alleging facts concerning its reliance on the challenged misstatements – including PSP's investment manager's ("IM") practice to review earnings-call transcripts prior to meeting with company management, and the IM's actual meeting with Reckitt management on the day of the earnings call at issue in this case – rectifies those deficiencies. The PFAC also pleads that PSP relied on Defendants' misstatements to ***retain*** thousands of its Reckitt shares, regardless of whether or not it relied on the misstatements to purchase Reckitt shares – a fact Defendants conveniently ignore.

Defendants assert that PSP's class allegations should not be permitted to be tested at class certification because the fraud-on-the-market presumption is not recognized under English law. However, numerous courts in this District have certified classes of investors pursuing fraud claims without resort to the fraud-on-the-market presumption, reasoning that "while each plaintiff must prove reliance," he or she may do so through "common evidence," *i.e.*, "through legitimate inferences based on the nature of the alleged misrepresentations." *Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at \*9, \*11 (S.D.N.Y. Oct. 17, 2013). Defendants also recycle several arguments that this Court previously rejected, and fail to demonstrate any reason to disturb the Court's well-reasoned decision. Finally, Defendants will suffer no undue prejudice if the Court permits amendment, as amendment will not materially disturb the discovery schedule and discovery is not far along. Accordingly, leave to amend should be granted.

---

[1] Capitalized terms not defined herein are defined in Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend and Join Additional Party (ECF No. 123). Citations to "¶__" refer to paragraphs in the PFAC (ECF No. 124-1). All emphasis is added unless otherwise noted, and internal quotations and citations are omitted.

## I.      PSP Adequately Alleges Reliance

The PFAC sets forth the circumstances of PSP's reliance.  PSP's IM purchased Reckitt ordinary shares on behalf of PSP.  ¶310.  PSP's IM invests in a relatively small number of companies at any given time, and consequently, "PSP's [IM] follows the companies in which it invests very closely, including promptly reading its portfolio companies' investor conference-call transcripts and earnings releases." *Id*.  PSP's IM also "regularly interacts directly with its portfolio companies' management and as a matter of course, PSP's [IM's] Portfolio Managers read each portfolio company's most recent earnings call transcript before doing so." *Id*.

On July 28, 2014, Reckitt conducted an investor earnings call at 7:45 a.m. GMT.  ¶311; *see also* ¶222.  "Although the Portfolio Manager responsible for PSP's Reckitt transactions in 2014 is no longer employed by PSP's [IM], PSP's [IM] has confirmed that the Portfolio Manager directly spoke with defendants Kapoor and Hennah on July 28, 2014." ¶311.  In addition, Reckitt issued an earnings release on October 21, 2014. *Id*.; *see also* ¶237.[2]

"PSP's [IM] was transacting shares of Reckitt in July 2014 and November 2014.  There is no indication, and no other reason to believe, that the Portfolio Manager deviated from PSP's [IM's] standard practice by failing to read the transcript of Reckitt's earnings call from July 28, 2014 or by failing to read Reckitt's October 21, 2014 earnings release on or about each respective day." ¶312. "Moreover, Suboxone, including the duration of its patent exclusivity, was important to PSP's [IM's] analysis of Reckitt, as it represented a significant portion of Reckitt's revenues.  Accordingly, upon information and belief, PSP's [IM] (and by extension PSP) relied on Defendants' July 28, 2014 and October 21, 2014 statements." *Id*.  Furthermore, "PSP and the Class reasonably relied on Defendants' misrepresentations when deciding to purchase or retain Reckitt ordinary shares and

---

[2]    The July 28, 2014 earnings call and the October 21, 2014 earnings release are the sources of the alleged misstatements that the Court sustained.  *See* Order at 34-36.

when otherwise making investment decisions with regard to those securities during the Class Period[.]"  ¶313.[3]

Because PSP's IM: (i) maintains a practice to promptly read its portfolio companies' investor earnings-call transcripts and earnings releases; (ii) reads each portfolio company's most recent earnings call transcript before interacting directly with its portfolio companies' management; (iii) directly spoke with Kapoor and Hennah on July 28, 2014, following the earnings call earlier in the day; and (iv) found Suboxone important to its analysis of Reckitt; and because there is no indication or other reason to believe that the Portfolio Manager deviated from PSP's IM's standard practice, the PFAC raises a reasonable inference that PSP's IM reviewed the July 28, 2014 and October 21, 2014 statements and considered them in deciding to continue to hold shares of Reckitt.

Defendants argue that the PFAC's allegations of reliance are an "insufficient 'matter of inference,'"[4] but courts are required to draw reasonable inferences concerning reliance. *See, e.g.*, *Charney v. Zimbalist*, 2015 WL 4597538, at *4 (S.D.N.Y. July 30, 2015) ("summary judgment does not require the conclusory statement, in a deposition taken by Defendant, 'I relied.' Reliance on Defendant's misrepresentations is proved from the circumstances. . . . The facts are not in dispute, only the inference to be drawn from the facts, and there is no natural and probable inference to be drawn other than the reasonable reliance of the Plaintiffs on Defendant's material misstatements."); *In re Vincent Andrews Mgmt. Corp.*, 507 B.R. 78, 86 (D. Conn. 2014), *aff'd sub nom.*, *Andrews v. McCarron*, 595 F. App'x 69 (2d Cir. 2015) (jury instruction: "Reliance upon a representation may be shown by direct evidence or may be inferred from the circumstances."); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 773 (S.D.N.Y. 2011) ("It is a reasonable inference from these allegations

---

[3]    PSP asserts similar allegations concerning reliance in ¶¶321-324 and ¶¶332-335.

[4]    Mem. of Law in Opp. to Pls.' Mot. for Leave to File a Fourth Am. Compl. ("Def. Opp.") at 10 (ECF No. 128).

that the statements to Alevy were actually conveyed to Amusement.").[5]   Although the Court criticized Pontiac's allegations of reliance – which did not include any facts describing Pontiac's awareness of, or reliance upon, Defendants' alleged misstatements – as a "matter of inference," "formulaic," and "conclusory" (Order at 72-73), PSP's allegations of reliance are specific, detailed, and based on PSP's (and its IM's) knowledge.   Thus, the PFAC's allegations of reliance are adequate and, for purposes of this motion, certainly not futile.

Defendants note that PSP did not buy Reckitt shares during the Class Period until two years after the challenged statements.[6]   *See* Def. Opp. at 8.   Defendants editorialize, arguing that "the essence" of PSP's claim is that the misstatements "induced investors to *buy* Reckitt shares," and selling stock after the challenged statements shows that PSP could not have relied on Reckitt's alleged misstatements.   *Id*. (emphasis in original).   Not so.   Defendants ignore that PSP alleges holder claims.   *See, e.g.*, ¶313 ("PSP and the Class reasonably relied on Defendants' misrepresentations when deciding to purchase **or retain** Reckitt ordinary shares . . .").   Plaintiffs' English law expert, David Lord, Q.C., proffered an uncontradicted opinion that holder claims are valid under English law.[7]   Although PSP sold some of its shares during the early stages of the Class Period, it nevertheless continued to hold more than 100,000 Reckitt shares in reliance on Defendants' alleged misstatements.

---

[5]   *See also In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While reliance on a false statement is an essential element, it often may be inferred from the circumstances attending the transaction."); *Gerstle v. Gamble-Skogmo, Inc*., 298 F. Supp. 66, 98 (E.D.N.Y. 1969), *modified*, 478 F.2d 1281 (2d Cir. 1973) ("Even in a Rule 10b-5 suit, reliance and causation has been inferred from the totality of circumstances[,] and in most instances under a common law action of deceit, reliance may be inferred from the circumstances attending the transaction.").

[6]   Prior to the Class Period, PSP owned 175,186 Reckitt ordinary shares.   *See* PFAC Ex. C at 3 (ECF No. 124-1).

[7]   *See* Lord Decl. (ECF No. 104) ¶36.1 ("there are two broad categories of claim: . . . (b) where the relevant misrepresentation(s), misstatement(s) and/or omission(s) relied upon by the Plaintiff resulted in them either acquiring additional ordinary shares and/or in **continuing to hold (rather than disposing of)** ordinary shares and thereby suffering loss.").

- 4 -

## II.    PSP Will Establish Class-Wide Reliance at the Class Certification Stage

In dismissing the English law claims, the Court did not foreclose Plaintiffs from pleading class-wide reliance with respect to the English law claims.  Although the Court found that "[t]here is no assertion that England employs a fraud-on-the-market theory that presumes a misrepresentation is incorporated into the price of a publicly traded share," Order at 70, Defendants ignore that the Order did not address the authorities cited by Plaintiffs that certified classes involving common-law fraud claims even where the fraud-on-the-market presumption does not apply.  *See* Pls. Opp. to Defs. Mots. to Dismiss and/or Stay the TAC ("Pls. MTD Opp.") at 42-44 (ECF No. 100).[8]  For example, Judge Furman in *Pinnacle Performance* held that, based on the evidence in the record at the class certification stage, "a reasonable factfinder [could] conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' [uniform] representations."  2013 WL 5658790, at *11.  The court further held that "while each plaintiff must prove reliance," he or she may do so through "common evidence" *i.e.*, "through legitimate inferences based on the nature of the alleged misrepresentations."  *Id.*; *see also Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 144-45 (S.D.N.Y. 2015) (certifying a class of investors "even absent a 'fraud created the market' theory or the *Affiliated Ute* presumption of reliance" because "common evidence can show reliance by the class on alleged misrepresentations by [the defendants]"); *Audet v. Fraser*, 332 F.R.D. 53, 80-81 (D. Conn. 2019) ("financial investments 'that [p]laintiffs made in hopes that they would prove profitable'" combined with "the nature of the alleged misrepresentations permits a common inference of reliance").[9]  Plaintiffs also rely on the *Affiliated Ute* presumption of reliance (¶290); for cases "involving primarily a failure to disclose, ***positive proof of reliance is not a prerequisite to***

---

[8]    Plaintiffs incorporate by reference their prior briefing, including expert declarations.

[9]    Defendants cite cases holding that federal courts do not apply the fraud-on-the-market presumption outside of securities fraud claims.  *See* Def. Opp. at 10 n.4.  The authorities Plaintiffs rely on, however, are not fraud-on-the-market cases and, therefore, Defendants' cases are inapposite.

*recovery*." *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972).  These arguments remain viable, and Plaintiffs should be permitted to test them at the class certification stage.

Defendants argue that PSP should not be able to assert English law claims on a class-wide basis because individual issues of reliance would predominate at class certification.  *See* Def. Opp. at 16.  Defendants' argument is premature, as the issue should be addressed on an adequate record at class certification.  Indeed, the only case they cite found that the plaintiffs did not show that the securities at issue traded in an efficient market *at the class certification stage*, thereby precluding a presumption of reliance.  *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2006 WL 2161887, at *12 (S.D.N.Y. Aug. 1, 2006).  The class-wide allegations were not struck down at the pleading stage, which Defendants invite the Court to do here.

Defendants colorfully argue that the issue cannot be "punt[ed]" because courts do not accept class certification allegations that are "deficient as a matter of law" at the pleading stage.  Def. Opp. at 16.  Defendants cite *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012), but that court specifically recognized that "[m]otions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.*  The court went on to deny the motion to strike, noting that it would be premature to find that the plaintiffs failed as a matter of law to meet Rule 23(a)(2)'s commonality requirement.  *See id.* at 120; *see also id*. at 117 (noting with approval from the magistrate judge's finding that "all of the defendants'

arguments are indistinguishable from the issues that would be decided in the context of a motion for class certification").[10]

Defendants argue Plaintiffs have not pled PSP's IM focused on the challenged misstatements regarding Suboxone. *See* Def. Opp. at 11. To the contrary, Plaintiffs pled that Suboxone, including the duration of its patent exclusivity, was important to PSP's IM's analysis of Reckitt, as it represented a significant portion of Reckitt's revenues. ¶312. This is sufficient to plead that PSP "considered the misrepresentation and that it played a role in [PSP's] decision-making process." Order at 71.

## III.     Defendants' Attempt to Revisit Arguments Already Decided by the Court Fails

Defendants recycle several arguments concerning the English law claims that the Court either rejected or did not squarely address. Defendants argue that the Court should revisit its prior decisions concerning arbitration, the forum-selection clause, and *forum non conveniens*. *See* Def. Opp. at 12-16. The law of the case doctrine, however, forecloses Defendants' attempt to re-litigate these issues. "The 'law of the case' doctrine is a rule of practice . . . that dictates that 'a decision on an issue of law made at one stage of a case becomes [binding] precedent to be followed in subsequent states of the same litigation.'" *Blakely v. Amsterdam Key Assocs. LLC (In re 477 W. 142nd St. Hous. Dev. Fund Corp.)*, 2022 WL 2093418, at *8 (S.D.N.Y. June 10, 2022). Defendants fail to raise any valid basis to deviate from the law of the case.[11]

---

[10]     Defendants cite *SRM Global Master Fund Ltd. Partnership v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 175, 178 (2d Cir. 2016) (Def. Opp. at 11), but in that case – unlike the PFAC – the plaintiff did not plead that it actually purchased stock in reliance on the defendants' misrepresentations. *Cf.* ¶313 ("PSP and the Class reasonably relied on Defendants' misrepresentations when deciding to purchase or retain Reckitt ordinary shares and when otherwise making investment decisions with regard to those securities during the Class Period[.]").

[11]     Plaintiffs incorporate by reference their prior briefing in response to Defendants' rehashed arguments.

For example, Defendants argue that because PSP chose to sue in the United States, it is subject to the Federal Arbitration Act, 9 U.S.C. §2. *See* Def. Opp. at 13. But, as Plaintiffs noted in prior briefing, *see* Pls. MTD Opp. at 37, the Supreme Court requires that "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299-300 (2010). Where, as here, "a party contests either or both matters, 'the court' must resolve the disagreement." *Id*. The Court agreed, rejecting the argument by holding that Plaintiffs' English law claims do not fall within the arbitration clause. *See* Order at 63-64.

With respect to PSP's foreign citizenship, the Court previously gave no deference to Pontiac's domestic citizenship due to the forum-selection clause. *See* Order at 65. Therefore, the fact that PSP, unlike Pontiac, is a foreign plaintiff does not affect the *forum non conveniens* analysis. Also, Defendants incorrectly imply that the parties to the English law claims are all foreign, and the dispute "has no relevance at all to the United States." Def. Opp. at 15. They ignore that Thaxter, one of the defendants, is a U.S. citizen and/or domiciliary (¶41), and significant witnesses and evidence will be found in the U.S. – RBP/Indivior, which markets and distributes Suboxone, is headquartered in Richmond, Virginia. ¶39. Although Defendants have now identified a particular tribunal to hear the English law claims, *see* Def. Opp. at 14, they have failed to demonstrate, as is their burden, that they would be unduly inconvenienced by litigating the English law claims in tandem with the Exchange Act claims in this District. *See* Pls. MTD Opp. at 39-41.

Defendants point to purported issues of foreign law. *See* Def. Opp. at 15-16. Their assertion is belied by their expert's acknowledgement that FSMA has been active for "13 years" and at least

one English court has overseen Schedule 10A claims through to the eve of trial.  *See* Midwinter Decl. (ECF No. 92) ¶38 n.30.  The Federal Rules of Civil Procedure also specifically contemplate procedures by which U.S. federal courts can make determinations of foreign law, *see* Fed. R. Civ. P. 44.1, and the elements of the English law claims are not complex and substantially resemble the U.S. law that the Court must apply.  *See* Lowe Decl. (ECF No. 105) ¶¶7-32; Pls. MTD Opp. at 40-41; *see also DiRienzo v. Philip Servs. Corp*., 294 F.3d 21, 31 (2d Cir. 2002) (involving Canadian law).

Defendants also re-assert three arguments from their motion to dismiss without citing any new facts that would change Plaintiffs' response to these arguments (Def. Opp. at 12):

- FSMA only applies to particular kinds of company documents, which do not include the documents where the challenged statements appear.  In response, Plaintiffs refer the Court to Lowe Decl. ¶27(4); Lowe Suppl. Decl. (ECF No. 109-2) ¶¶4-6; Pls. MTD Opp. at 45.

- Negligent misrepresentation claims require a duty that does not exist here.  In response, Plaintiffs refer the Court to Lowe Decl. ¶32; Lowe Suppl. Decl. ¶8; Pls. MTD Opp. at 45.

- Fraud claims require an intent to induce reliance.  In response, Plaintiffs refer the Court to Lowe Decl. ¶¶15, 16(2).

## IV.    Amendment Would Not Be Prejudicial

Finally, Defendants argue amendment would be unduly prejudicial.  They contend it would require an unanticipated level of detailed discovery into PSP's asserted reliance.  *See* Def. Opp. at 3, 19.  The discovery into PSP's reliance will not prejudice Defendants because it would entail nothing extraordinary: a deposition of PSP's representative, and a deposition or two of PSP's IM, similar to the Exchange Act Plaintiffs.  As for discovery of absent class members, it is Plaintiffs' position that such discovery is unnecessary because reliance can be proved on a class-wide basis through common, circumstantial evidence.  *See supra* at 5.[12]  Defendants exaggerate the effect of amendment

---

[12]    Defendants would be permitted to attempt to rebut the presumption of reliance after trial.  *See* Pls. MTD Opp. at 41, 44.

– the entire case schedule would not need reorganization, and class certification would not need to be moved up. *Cf.* Def. Opp. at 20. Moreover, document discovery is in its early stages, and the timing of Plaintiffs' motion was clearly set forth in the Scheduling Order.

Defendants argue Plaintiffs chose to see how they would fare on a motion to dismiss with Pontiac, and only now, after losing, wish to inject PSP. *See id.* at 18. This is patently untrue. Plaintiffs' position was supported by an English law expert, and Plaintiffs made good-faith allegations and arguments believing in their viability; Plaintiffs did not "hedge their bets." *Id.*[13]

\*        \*        \*

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and allow Plaintiffs to file the PFAC.

DATED: July 12, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARIO ALBA JR.
ALAN I. ELLMAN
CHRISTOPHER T. GILROY
SARAH E. DELANEY


*/s/ Alan I. Ellman*
ALAN I. ELLMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631-367-7100
Fax: 631-367-1173
srudman@rgrdlaw.com
malba@rgrdlaw.com
aellman@rgrdlaw.com
cgilroy@rgrdlaw.com
sdelaney@rgrdlaw.com

---

[13] Defendants state that Plaintiffs were required to file a pre-motion letter. *See* Def. Opp. at 3 n.1. Plaintiffs believe a pre-motion letter was unnecessary because the Scheduling Order set a deadline for the motion for leave to amend itself, not for a pre-motion letter. *See* Civil Case Mgmt. Plan & Scheduling Order (ECF No. 119) at ¶3 ("Any ***motion*** to amend or to join additional parties shall be filed within 30 days from the date of this Order.").

- 10 -

*Lead Counsel for Lead Plaintiff*

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313-578-1200
Fax:  313-578-1201
tmichaud@vmtlaw.com

*Additional Counsel*

- 11 -