UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF STERLING HEIGHTS POLICE &    :    Civil Action No. 1:20-cv-10041-PKC
FIRE RETIREMENT SYSTEM, Individually    :
and on Behalf of All Others Similarly Situated, :    <u>CLASS ACTION</u>
                                                         :
                                     Plaintiff,    :    PLAINTIFFS' MEMORANDUM OF LAW
                                                         :    IN SUPPORT OF UNOPPOSED MOTION
          vs.                                       :    FOR PRELIMINARY APPROVAL OF
                                                         :    CLASS ACTION SETTLEMENT,
RECKITT BENCKISER GROUP PLC,          :    CERTIFICATION OF THE CLASS, AND
RAKESH KAPOOR, and SHAUN              :    APPROVAL OF NOTICE TO THE CLASS
THAXTER,                                        :
                                                         :
                                     Defendants.    :
                                                         :
———————————————————— x

4855-3591-8420.v1

**TABLE OF CONTENTS**

Page

I.      HISTORY OF THE LITIGATION ................................................................2

II.     THE SETTLEMENT TERMS.....................................................................6

III.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW
        PLAINTIFFS TO NOTIFY THE CLASS ...................................................8

        A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class..................10

        B.    The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
              Negotiations ..............................................................................10

        C.    The Relief Provided by the Settlement Is Adequate When Weighed
              Against the Risks of Litigation ..................................................11

        D.    The Proposed Method of Distributing Relief to the Class Is Effective .................13

        E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable .......................14

        F.    All Class Members Are Treated Equitably Relative to Each Other .......................14

        G.    The *Grinnell* Factors Are Also Met..........................................................15

IV.     CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS
        APPROPRIATE.........................................................................................18

        A.    The Class Satisfies the Requirements of Rule 23(a)...............................18

              1.    Numerosity...................................................................................18

              2.    Commonality.................................................................................19

              3.    Typicality .....................................................................................20

              4.    Adequate Representation ...........................................................20

        B.    Rule 23(b)(3) Is Satisfied.................................................................22

              1.    Common Legal and Factual Questions Predominate...................22

              2.    A Class Action Is Superior to Other Methods of Adjudication.................23

V.      THE PROPOSED NOTICE PLAN SHOULD BE APPROVED....................................23

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................24

4855-3591-8420.v1

**Page**

VII.    CONCLUSION.............................................................................................................25

4855-3591-8420.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................18, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)............................................................................................................22

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ..........................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..................................................................................................19

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .......................................................................20

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)............................................................................................10, 17

*Deangelis v. Corzine*,
151 F. Supp. 3d 356 (S.D.N.Y. 2015)....................................................................................8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................................9, 15, 16

*Dover v. British Airways, PLC (UK)*,
2018 WL 11412431 (E.D.N.Y. Oct. 9, 2018)........................................................................8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................................17

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)......................................................................................17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)................................................................................................18

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) .........................................................................................21

4855-3591-8420.v1

**Page**

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ........................................................................20

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................................10

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ...................................................23

*In re Deutsche Bank AG Sec. Litig.*,
  2020 WL 3162980 (S.D.N.Y. June 11, 2020) ....................................................14

*In re Dynex Cap., Inc. Sec. Litig.*,
  2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ........................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................20

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................15, 17

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)...........................................................10, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..................................................17

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................................10

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)......................................................12

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) .........................................................................19

*In re Perrigo Co. PLC Sec. Litig.*,
  493 F. Supp. 3d 291 (S.D.N.Y. 2020).................................................................21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................8

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) ......................................................14

4855-3591-8420.v1

**Page**

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................................................11

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..........................................................................12

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)............................................................................17

*Katz v. Image Innovations Holdings, Inc.*,
  2010 WL 2926196 (S.D.N.Y. July 22, 2010) ...........................................................................19

*Martinek v. Amtrust Fin. Servs., Inc.*,
  2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) ........................................................................14

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014).........................................................................................19

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010).....................................................................................................................4

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).......................................................................................................17

*Pa. Ave. Funds v. Inyx Inc.*,
  2011 WL 2732544 (S.D.N.Y. July 5, 2011) .............................................................................21

*Pantelyat v. Bank of Am., N.A.*,
  2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ..............................................................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...................................................................................................................23

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................................................22, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)...................................................................................................................19

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017).........................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).....................................................................................................8, 24

4855-3591-8420.v1

**Page**

*Wilson v. LSB Indus., Inc.*,
   2019 WL 3542844 (S.D.N.Y. June 28, 2019) ........................................................................14

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ..............................................................................................21

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)...............................................................................................................................2, 20
   §78t(a)...............................................................................................................................2, 20
   §78u-4(a)(4) ......................................................................................................................7, 14

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................................2, 24
   Rule 23(a).............................................................................................................18, 20, 23
   Rule 23(a)(1) ..........................................................................................................................18
   Rule 23(a)(1)-(4) ....................................................................................................................22
   Rule 23(a)(2) ...................................................................................................................19, 22
   Rule 23(a)(3) ..........................................................................................................................20
   Rule 23(a)(4) ...................................................................................................................16, 20
   Rule 23(b)(3) ...............................................................................................................18, 22-23
   Rule 23(e)........................................................................................................................8, 9, 15
   Rule 23(e)(1) .......................................................................................................................1, 9
   Rule 23(e)(1)(B)...............................................................................................................9, 23
   Rule 23(e)(2) .....................................................................................................................9, 15
   Rule 23(e)(2)(C)(i)..........................................................................................................15, 16
   Rule 23(e)(3)............................................................................................................................9

17 C.F.R.
   §240.10b-5 .......................................................................................................................2, 19

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
   *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
   (NERA Economic Consulting, Jan. 24, 2023).......................................................................12

4855-3591-8420.v1

Lead Plaintiff City of Birmingham Retirement and Relief System ("Birmingham") and Plaintiff City of Sterling Heights Police & Fire Retirement System ("Sterling Heights") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of their proposed Settlement with Reckitt Benckiser Group plc ("Reckitt" or the "Company"), Rakesh Kapoor, and Shaun Thaxter (collectively, "Defendants," and together with Plaintiffs, the "Parties"); (ii) certification of the proposed Class for purposes of the Settlement;[1] (iii) approval of the form and manner of notice to the Class; and (iv) the scheduling of a hearing on the final approval of the Settlement, proposed Plan of Allocation, and Lead Counsel's application for attorneys' fees and litigation expenses. The Parties' agreed-upon proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of an experienced mediator, a proposed settlement of all claims in this Litigation for $19.6 million in cash.[2] This recovery is a very good recovery for the Class: several times higher than the industry standard when measured as a ratio of total estimated recoverable damages. The Stipulation represents the culmination of more than three years of litigation that involved, *inter alia*, three amended complaints, filings in no fewer than four federal district courts, analyses of English substantive law,

---

[1]    As detailed more fully below, the "Class" consists of persons, with certain exceptions, who purchased or otherwise acquired Reckitt American Depositary Shares ("ADSs") during the period from July 28, 2014 through April 9, 2019, inclusive.

[2]    The terms of the Settlement are set forth in the Stipulation of Settlement ("Stipulation"), filed simultaneously herewith. Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation. All emphasis is added and all citations are omitted unless otherwise noted.

4855-3591-8420.v1

the production and review of well over a million documents, two formal mediation sessions, and further discussions with the mediator. Moreover, this case was filed just weeks before the statute of limitations was slated to expire, as no other plaintiff filed suit. As set forth herein, Plaintiffs and Lead Counsel submit that the proposed Settlement is reasonable and in the best interests of the Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. Considering the very good recovery obtained, and the risks and expenses posed by protracted litigation against the Defendants, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Class for purposes of the Settlement; (iii) approve the form and content of the Notice and Summary Notice attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and the Summary Notice constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for disseminating notice; requesting exclusion from the Class; filing objections; submitting papers in support of final approval of the Settlement; and holding the Settlement Hearing.

## I.    HISTORY OF THE LITIGATION

Sterling Heights filed this class action in the United States District Court for the District of New Jersey on July 15, 2019. (*See* ECF 1.) The complaint alleged that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as SEC Rule 10b-5 promulgated thereunder, by deceiving investors about the illegal activities of Reckitt's highly

4855-3591-8420.v1

profitable subsidiary, Reckitt Benckiser Pharmaceuticals Inc. ("RBP").  Specifically, RBP shielded its domination of the opioid-addiction treatment market from generic encroachment by switching the delivery mechanism of its Suboxone Sublingual product from a tablet form ("Tablets") to a film form ("Film").  In so doing, Defendants engaged in an anticompetitive practice known as "product hopping," whereby a company tweaks its product slightly without any actual improvements, and then applies for a new patent with the intent of keeping its market share intact.  At the same time, Defendants proceeded to campaign aggressively against Tablets, claiming that they were more susceptible to abuse and accidental child exposure.  Defendants concealed this from the market, making materially false and misleading statements and/or failing to disclose the true cause of RBP's market dominance, thereby causing the price of Reckitt's ADSs to trade at artificially inflated prices. The market learned the truth when Reckitt announced a series of charges and investigations against both Reckitt and its former subsidiary Indivior Inc. ("Indivior"; formerly RBP) filed by multiple government agencies, whereupon Reckitt's ADS price declined precipitously.

On September 13, 2019, Birmingham moved, pursuant to the PSLRA, for appointment as lead plaintiff.  (ECF 20.)  This motion was unopposed (*see* ECF 27), and was granted two weeks later, on September 26, 2019.  (ECF 28.)

Plaintiffs filed an amended complaint on January 16, 2020.  (ECF 37.)  In addition to the federal securities claims brought in the first complaint, the amended complaint also brought claims under English law (the "English Law Claims").  The English Law Claims asserted common law fraud and conspiracy to commit fraud, common law negligent misrepresentation and misstatement, and a statutory count for misrepresentations in reports and statements published in the discharge of managerial responsibilities.  The amended complaint also joined an additional plaintiff, City of

- 3 -

Pontiac General Employees' Retirement System ("Pontiac"), which had purchased Reckitt ordinary shares on the London Stock Exchange and thus had standing to bring the English Law Claims.

On March 16, 2020, Defendants moved to transfer the litigation to the Southern District of New York (ECF 43), and Plaintiffs opposed the motion (ECF 52, 54-2). Defendants' motion was granted on November 30, 2020 (ECF 58), and the case was transferred to this Court.

Plaintiffs filed a second amended complaint on January 11, 2021. (ECF 68.) The amendments focused on certain factual developments that transpired since the amended complaint had been filed, including a criminal indictment against Indivior, a Federal Trade Commission investigation against Reckitt, and the emergence of other highly relevant evidence.

On January 7, 2021, Plaintiffs sought to intervene in three related criminal actions – against Indivior, Timothy Baxter, and Defendant Shaun Thaxter – that were underway in the United States District Court for the Western District of Virginia. The purpose of Plaintiffs' intervention was to unseal sentencing memoranda and exhibits that had been filed under seal in those cases. Plaintiffs' motions were granted, yielding a host of previously unavailable information concerning Defendants' wrongdoing.

On March 10, 2021, Plaintiffs moved to amend the second amended complaint. (ECF 76.) One of the principal objectives of this amendment was to plead facts regarding Plaintiffs' ADS purchases, which establish that the purchases were "domestic transactions" under *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), and therefore within the ambit of the Exchange Act. Another objective was to add factual allegations from the pending interventions in the Western District of Virginia. Plaintiffs' motion was granted on March 11, 2021 (ECF 77), and they filed the Third Amended Complaint ("TAC") on March 26, 2021 (ECF 82).

4855-3591-8420.v1

Prior to Defendants filing their motions to dismiss the TAC, the Parties engaged in two separate rounds of pre-motion letters. (ECF 72, 73, 76, 84, 85, 87.) The Parties then briefed two motions to dismiss, one submitted by Defendant Shaun Thaxter and the other by all other Defendants. (ECF 90, 96, 100, 106, 108.)

While the motions to dismiss were pending before this Court, the Parties engaged in a full-day mediation on November 1, 2021 with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), a former federal judge. In advance of the mediation, the Parties exchanged detailed mediation statements. The Parties negotiated in good faith, but were unable to reach an agreement.

On February 28, 2022, this Court entered an order granting in part and denying in part Defendants' motions to dismiss the TAC. (ECF 113.) The Court found that various statements by Defendants to investors about Suboxone had "placed at issue" the reasons for Film's success, thereby obliging Defendants to speak the full truth. (*Id.* at 35.)

The English Law Claims were dismissed because the Court found that Pontiac did not adequately allege the element of reliance. (*See id.* at 70-73.) The Court also dismissed certain of Defendants' alleged misstatements as non-actionable puffery (*see, e.g.*, *id.* at 38, 42-44), and dismissed the TAC entirely with respect to certain defendants (Adrian Hennah and Adrian Bellamy) for failure to plead facts giving rise to a strong inference of scienter (*id.* at 51-52).

The case then proceeded into discovery. After extensive negotiations, Reckitt produced more than 241,000 pages of documents. Plaintiffs also obtained documents from third parties, including Indivior. Plaintiffs employed a belt and suspenders approach towards obtaining documents from Indivior. First, Plaintiffs issued a subpoena. Then, in the interest of complying with the discovery schedule set forth by the Court, Plaintiffs also moved to unseal documents filed in connection with the parties' summary judgment motions in *In re Suboxone (Buprenorphine Hydrochloride and*

4855-3591-8420.v1

*Naloxone) Antitrust Litigation* ("*In re Suboxone*"), No. 2:13-md-02445 (E.D. Pa.), (ECF 818), an antitrust action involving Indivior and other parties involving conduct that overlapped with the claims in this Litigation. Indivior thereupon produced the documents pursuant to the subpoena. Plaintiffs withdrew their motion to unseal (*In re Suboxone*, ECF 838), and Indivior made a production of more than 5.1 million pages of documents.

Plaintiffs sought discovery from five other non-parties as well. Altogether, Plaintiffs obtained more than one million documents consisting of almost 5.5 million pages.

While discovery was underway, on June 21, 2022, Plaintiffs sought leave to amend the TAC to join a new plaintiff to re-allege the dismissed English Law Claims. (ECF 122.)

Plaintiffs moved for class certification on October 28, 2022. (ECF 149.)

On October 12, 2022, the Parties engaged in a second round of mediation. Like the first mediation, this lasted a full day (plus several days of follow-up discussion), was preceded by written mediation statements, and was facilitated by Judge Phillips.

Defendants filed a notice of non-opposition to Plaintiffs' motion for class certification on December 19, 2022. (ECF 152.) The case settled the following day, on December 20, 2022. The Court then denied without prejudice Plaintiffs' motion for class certification in view of the anticipated motion for preliminary approval. (ECF 156.)

## II.   THE SETTLEMENT TERMS

The Settlement provides that Reckitt will pay, or cause to be paid on Defendants' behalf, $19.6 million into the Escrow Account, which amount plus accrued interest constitutes the Settlement Fund. Stipulation, ¶¶1.34; 1.35; 2.2. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. *Id.*,

4855-3591-8420.v1

¶2.9. Plaintiffs propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC, to be retained here subject to the Court's approval. *Id.*, ¶1.5.

The Notice provides that Lead Counsel will submit an application in support of final approval of the Settlement, for approval of the proposed Plan of Allocation, and for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount and litigation expenses in an amount not to exceed $610,000, including an award to Lead Plaintiff Birmingham pursuant to 15 U.S.C. §78u-4(a)(4), plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their Reckitt ADS purchases, acquisitions, and sales. The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

Plaintiffs and Defendants have entered into a Standard Supplemental Agreement that provides that if opt outs from the Class exceed a certain amount, Defendants shall have the option (but not the obligation) to terminate the Settlement. Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members will release the "Released Claims," which include all claims:

> [A]rising from both: (a) the allegations, transactions, facts, matters or occurrences, errors, representations, misrepresentations, actions, failures to act, omissions, or

- 7 -

4855-3591-8420.v1

corrective disclosures that were alleged, set forth, or referred to in the Litigation, and (b) the purchase or acquisition of Reckitt ADSs by any Class Member during the Class Period. "Released Claims" does not include: (i) derivative claims; (ii) ERISA claims; (iii) claims to enforce the Settlement; and (iv) claims arising from purchases of Reckitt Ordinary Shares during the Class Period.

Stipulation, ¶1.29.

The proposed Settlement is a very good recovery, and is in all respects fair, adequate, reasonable, and in the best interests of the Class. Therefore, the Court should grant preliminary approval of the Settlement and permit notice to be provided to the Class.

## III.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. *See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 357 (S.D.N.Y. 2015). In the first stage, a court provides preliminary approval of the settlement, and authorizes notice of the settlement be given to the class. *Id.* at 357. That is what Plaintiffs seek via this motion. In the second stage, which will only come if the Court grants this motion, "the court holds a fairness hearing to 'determine whether the settlement's terms are fair, adequate, and reasonable.'" *Dover v. British Airways, PLC (UK)*, 2018 WL 11412431, at *4 (E.D.N.Y. Oct. 9, 2018).

Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties[] . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether

> the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate, taking into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors identified by the Second Circuit that district courts should consider in deciding whether to grant final approval

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, Plaintiffs are requesting only that the Court take the first step in the settlement approval process, and grant preliminary approval of the proposed Settlement. As stated above, the proposed Settlement provides a Settlement Amount of $19.6 million in cash, a substantial recovery that is

4855-3591-8420.v1

unquestionably beneficial to the Class, and plainly "'within the range of possible approval.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### A.   Plaintiffs and Lead Counsel Have Adequately Represented the Class

As discussed herein, Plaintiffs' interests in this case are directly aligned with those of the other Class Members.  Plaintiffs have demonstrated their ability and willingness to pursue the Litigation on behalf of the Class through their involvement in the Litigation and in approving the Settlement.  Plaintiffs have zealously pursued this Litigation on the Class's behalf.  The decision to settle was made only after a thorough investigation of the relevant claims; the filing of three amended complaints; extensive motion practice; proactive intervention into the Western District of Virginia and the Eastern District of Pennsylvania to uncover probative discovery; and the meticulous review of more than 5.4 million pages of documents.  The Settlement is demonstrably the product of well-informed, vigorous advocacy on behalf of Reckitt ADS holders.

### B.   The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

A settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation . . . 'enjoy[s] a presumption of fairness.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).  Here, the Settlement was reached only after two rounds of intense, hard-bargained mediation.  The Parties first mediated on November 1, 2021, but no agreement was reached.  The Parties again mediated on October 12, 2022, and, after several weeks of follow-on negotiations, finally came to an agreement.  A mediator's involvement in settlement negotiations further supports a presumption of fairness.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  Here, both mediation sessions were facilitated by Judge Phillips, whom courts have recognized as "an experienced and well-regarded mediator of complex securities cases." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F.

Supp. 2d 259, 265 (S.D.N.Y. 2012); *accord In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020).

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Counsel conducted an extensive investigation prior to drafting and filing the TAC, which included, among other things, a thorough review of:  (i) Reckitt's public SEC filings; (ii) presentations, press releases, media, and analyst reports made by or about the Company; (iii) transcripts of Reckitt's conference calls with analysts and investors; (iv) publicly available data relating to Reckitt securities; and (v) materials obtained from ongoing criminal investigations against Indivior and Defendant Shaun Thaxter.  Lead Counsel continued its investigation after filing the initial complaint and, as detailed above, amended it three times as further information became available.  In addition, the Parties briefed Defendants' motions to dismiss, and Lead Counsel requested, negotiated for, and reviewed over 5.4 million pages of documents produced by Defendants and third parties.  Plaintiffs also consulted with industry experts and a damages and loss causation expert in connection with their motion for class certification.  Plaintiffs and Lead Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses when they agreed to the Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement.

### C. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

In assessing a settlement, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court thus need only determine whether the

4855-3591-8420.v1

settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at \*7 (S.D.N.Y. Jan 31, 2019).

If approved, the Settlement will provide Class Members with \$19.6 million in cash, less reasonable attorneys' fees, litigation expenses, an award to Lead Plaintiff, Notice and Administration Expenses, Taxes, and Tax Expenses. According to Plaintiffs' damages consultant, the maximum recoverable damages in this case would amount to approximately \$51.3 million; hence the Settlement constitutes 38% of the total estimated damages. This is a very good recovery which significantly exceeds the 3.8% median settlement as a percentage of losses in cases where recovery damages are estimated between \$50 and \$99 million. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA 24 Jan. 2023) ("NERA Study") at 17, Fig. 18. Courts routinely approve settlements half or even a third this size, or even less. *See, e.g.*, *In re GSE Bonds*, 414 F. Supp. 3d at 697 (13%-17%); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at \*8 (S.D.N.Y. Oct. 26, 2004) (10%-20%); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at \*7 (D. Conn. Aug. 20, 2012) (3.5%). In addition, this recovery exceeds the \$13 million average value of settlements reached in 2022. *See* NERA Study at 15, Fig. 17.

Additionally, although Plaintiffs and Lead Counsel believe their case against Defendants is strong, they acknowledge that Defendants have put forth substantial arguments in their defense. For instance, Defendants challenged falsity and loss causation on the grounds that RBP's wrongdoing had already begun to come to light prior to the corrective disclosures alleged in the TAC. (ECF 90.) Defendants also put forward several arguments challenging scienter. *Id.* at 13-18. If any of these arguments were accepted in whole or in part, either at the summary judgment stage or at trial, any

4855-3591-8420.v1

potential recovery could be eliminated or dramatically reduced.  And even if Plaintiffs prevailed at each of those stages, they would also have to prevail on the appeals that would likely follow.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is beneficial to the Class.

**D.      The Proposed Method of Distributing Relief to the Class Is Effective**

The methods of the proposed notice and claims administration process are effective, and include well-established procedures for processing claims submitted by potential Class Members and for efficiently distributing the Net Settlement Fund.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  Also, a settlement-specific website will be created where Class Members can find answers to frequently asked questions, key documents will be posted, and claims can be electronically submitted.

Claims will be processed via a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Counsel's damages consultant and estimates the amount of alleged artificial inflation in the price of Reckitt ADSs during the Class Period.

Finally, Gilardi & Co. LLC, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims, allow claimants an opportunity to cure any deficiencies in their

4855-3591-8420.v1

claims or request the Court review denial of their claims, and distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.  Stipulation, ¶¶5.1, 5.6-5.8.

### E.      Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will request attorneys' fees of not more than 33% of the Settlement Amount, plus payment of costs, charges and expenses in an amount not to exceed $610,000.  This request is reasonable and in line with other recent fee awards in this District.  *See, e.g.*, *Martinek v. Amtrust Fin. Servs., Inc.*, 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (awarded one-third of $13 million recovery, plus expenses); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarded one-third of $18.5 million recovery, plus expenses); *Wilson v. LSB Indus., Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarded one-third of $18.45 million recovery, plus expenses).

Additionally, as explained in the Notice, Lead Plaintiff Birmingham intends to request reimbursement for its time and expenses in representing the Class in an amount not to exceed $10,000, as provided by the PSLRA.  *See* 15 U.S.C. §78u-4(a)(4).  *See, e.g.*, *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500).

### F.      All Class Members Are Treated Equitably Relative to Each Other

Courts must determine whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially.  The Plan of Allocation, set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. Each Authorized Claimant, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan of Allocation depending upon whether they have a Recognized Loss.

- 14 -

G.      The *Grinnell* Factors Are Also Met

Courts in this District also take into account the factors enumerated by the Second Circuit in *Grinnell*, 495 F.2d 448. This is because the recent amendments to Rule 23(e) were not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure, Subdivision (e)(2).

In evaluating the fairness of a settlement under *Grinnell*, "not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). The totality of the *Grinnell* factors counsels in favor of the Settlement proposed in this case, as follows.

**The Complexity, Expense, and Likely Duration of the Litigation**. The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. *See supra* §III. In addition, this case is a testament to the complexity and expense of securities class actions. Plaintiffs advanced numerous complex legal and factual issues under the federal securities laws. How the Court would rule on a motion for summary judgment or the jury would find at trial was uncertain; this Settlement eliminates the risks of adverse decisions.

**The Reaction of the Class to the Settlement**. Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter into the Settlement. This factor is otherwise inapplicable as notice regarding the Settlement has not yet been mailed or otherwise distributed.

- 15 -

**The Stage of the Proceedings and the Amount of Discovery Completed**. The volume and substance of Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement. As discussed above, this Litigation has already gone on for over three years. Plaintiffs responded to motions to dismiss filed by two separate sets of Defendants (in addition to two rounds of pre-motion letters), class certification has been briefed, the parties have mediated twice, and enormous discovery has been obtained. The resultant accumulation of information permitted Plaintiffs and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. This factor strongly supports preliminary approval of the Settlement.

**The Risk of Establishing Liability and Damages**. The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). For the same reasons explained above why Plaintiffs have satisfied the Rule 23(e)(2)(C)(i) factor, Plaintiffs have satisfied the fourth *Grinnell* factor.

**The Risks of Maintaining the Class Action Through Trial**. Although Defendants did not challenge Plaintiffs' motion to certify a class, they reserved all rights, "including, but not limited to, their rights to take further discovery from Plaintiffs relevant to class certification, and, if warranted by legal or factual developments . . . , to move . . . to decertify any class, or any portion of any class, that the Court may certify, or to disqualify Plaintiffs as inadequate under Federal Rule of Civil Procedure 23(a)(4)." (ECF 152.) There is no reason to assume they would not exercise these rights should this Settlement fall through and the case proceed toward trial. Moreover, even if class certification was achieved, the Court could revisit certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.

4855-3591-8420.v1

*See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").

**The Ability of Defendants to Withstand a Greater Judgment**.  A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  While Defendants here likely could withstand a judgment in excess of $19.6 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and the ability of defendants to pay more money does not render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

**The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**.  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting that few cases tried before a jury result in the full amount of damages claimed).  Here, as explained above, the recovery proposed – 38% of Plaintiffs' estimate of maximum recoverable

- 17 -

4855-3591-8420.v1

damages, and an even greater ratio of Defendants' estimate – is far higher than what is obtained in most cases. This factor plainly favors approval of the Settlement.

## IV.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Certification of a "settlement class" follows the same rules as certification of a litigation class, except that it is easier in one respect: the manageability concerns of Rule 23(b)(3) are not at issue. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

The Parties have stipulated to certification of the following proposed Class:

> [A]ll Persons who purchased or otherwise acquired Reckitt ADSs during the Class Period, and were damaged thereby. Excluded from the Class are: (i) Defendants and the Former Defendants; (ii) members of the immediate family of each Defendant and Former Defendant; (iii) any Person who was an officer or director of Reckitt during the Class Period as well as members of their respective immediate families; (iv) any entity in which any Defendant or Former Defendant has or had a controlling interest; (v) any corporate parent and/or affiliate of Reckitt; and (vi) the legal representatives, heirs, successors-in-interest, or assigns of any such excluded Person. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excludes himself, herself, or itself therefrom.

Stipulation, ¶1.6.

The proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Class Satisfies the Requirements of Rule 23(a)

#### 1.    Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class

would have at least 40 members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483

(2d Cir. 1995); *In re Dynex Cap., Inc. Sec. Litig.*, 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011).

During the Class Period, over 40 million Reckitt ADSs were outstanding, with over 400,000

changing hands every day.  Clearly, while the exact number of Class Members is unknown, there are

unquestionably too many for joinder to be practicable.

### 2.    Commonality

The second requirement is that there be "questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  A "common question is one where 'the same evidence will suffice for each

member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide

proof.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original).  This

requirement "has been characterized as a '"low hurdle[,]"'"  *McIntire v. China MediaExpress*

*Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014), as it "'does not mandate that all class

members make identical claims and arguments.'"  *Katz v. Image Innovations Holdings, Inc.*, 2010

WL 2926196, at *3 (S.D.N.Y. July 22, 2010).  "'Even a single common legal or factual question will

suffice.'"  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009).

Virtually all of the questions of law and fact raised in this case are common to the Class.

These questions include, *inter alia*, whether: (i) Defendants' conduct violated the Securities

Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; (ii) Defendants publicly

misrepresented material facts or omitted material facts they were required to disclose;

(iii) Defendants knowingly or recklessly disregarded that the alleged misstatements and omissions

were false and/or misleading; (iv) the price of Reckitt ADSs was artificially inflated as a result of

Defendants' alleged misconduct; and (v) the Class suffered damages when the artificial inflation of

Reckitt ADSs' price dissipated upon revelation of the truth.  Hence, the commonality requirement is met.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality can be satisfied by showing that "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  This requirement "'tend[s] to merge'" with commonality, "meaning the analysis is similar for both." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *7 (S.D.N.Y. Jan. 22, 2019) (Castel, J.).

Plaintiffs' claims are based on the exact same legal theory as the Class's claims: Defendants' alleged violations of §§10(b) and 20(a) of the Exchange Act.  Neither the facts nor the legal theories on which this Litigation is based are unique to Plaintiffs; all Class Members' claims arise from Defendants' misrepresentations and omissions as alleged in the TAC.  As such, Plaintiffs' claims are typical of other Class Members.

### 4. Adequate Representation

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement has two components: (1) the class representatives must vigorously pursue the claims of the class and their interests cannot be "'antagonistic to the interests of other class members'"; and (2) the proposed class counsel must be "'qualified, experienced and able to conduct the litigation.'" *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016).  This inquiry "'often overlap[s]'" with that of

typicality.  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 140 (S.D.N.Y. 2012) (Castel, J.).

The first component, that the interests of the proposed class representatives be aligned with those of the rest of the class, is not demanding.  Only a conflict which is "'fundamental'" defeats adequacy; "'speculative conflict'" is to be disregarded.  *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 72 (S.D.N.Y. 2018); *accord Pa. Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *5 (S.D.N.Y. July 5, 2011) (Castel, J.).  Here, Plaintiffs' interests are entirely aligned with those of the Class.  As discussed above, all members of the Class allege claims arising from the same wrongful conduct and based on the same legal theories as Plaintiffs' claims.  And, as detailed in the chronology above, Plaintiffs' commitment to protecting the interests of the Class is manifest.

Furthermore, Plaintiffs are both institutional investors, and "[t]he [Private Securities Litigation Reform Act] was designed to increase the likelihood that institutional investors will serve as lead plaintiffs."  *In re Perrigo Co. PLC Sec. Litig.*, 493 F. Supp. 3d 291, 294 (S.D.N.Y. 2020) (internal citations and quotations omitted).  As large institutional investors, Plaintiffs collectively purchased tens of thousands of Reckitt ADSs during the Class Period, so they have a strong incentive to actively litigate this case.  In sum, Plaintiffs' actions thus far, in conjunction with their own financial stake, confirm that they will fairly and adequately represent the Class.

Moreover, Plaintiffs have proposed the law firm of Robbins Geller – a national firm known for its expertise in complex securities litigation – as Class Counsel in this matter.  *See* www.rgrdlaw.com.  Robbins Geller has conducted an extensive investigation into Defendants' conduct, filed numerous complaints, and largely defeated the motions to dismiss.  *See* ECF 100, 113. And since defeating those motions, Robbins Geller has been actively pursuing discovery.  Robbins

4855-3591-8420.v1

Geller and Plaintiffs have demonstrated that they will protect the interests of the Class.  Accordingly, the requirements of Rule 23(a)(1)-(4) are satisfied.

### B.      Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal and Factual Questions Predominate

Common issues are deemed predominant if: (1) some of the legal or factual questions in the case can be resolved "'through generalized proof'"; and (2) these common issues are "'more substantial'" than the issues subject only to individualized proof.  *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).  Akin to the commonality requirement of Rule 23(a)(2), this inquiry simply "tests whether proposed classes are sufficiently cohesive" to reap the potential benefits of adjudication by representation, such as "economies of time, effort, and expense" and "uniformity of decision as to persons similarly situated."  *See Amchem*, 521 U.S. at 609, 615, 623.  As the Supreme Court has observed, this is a test "readily met" in many securities fraud cases.  *Id.* at 625.

Here, because Class Members were all victims of the same alleged misrepresentations and omissions, common questions predominate.  Plaintiffs' claims and the claims of the Class are also susceptible to common evidence and proof; if Plaintiffs and each Class Member were to bring individual actions, they would each be required to prove the very same elements in order to establish liability.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-68 (2013); *see also Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 114 (S.D.N.Y. 2011).  Rule 23(b)(3)'s predominance requirement is therefore satisfied.

4855-3591-8420.v1

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Securities actions "easily satisfy" this requirement, because "'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *11 (S.D.N.Y. Mar. 23, 2020). "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually. . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

This class action is plainly "superior to other available methods for fairly and efficiently adjudicating" the claims of the large number of investors at issue here. *See Merrill Lynch*, 277 F.R.D. at 120. This is especially true in light of the fact that, without the class action device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation. Moreover, certification of the Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

In sum, all the requirements of Rule 23(a) and Rule 23 (b)(3) are met. Because this Court will "likely be able to" approve the proposal and certify the class, preliminary approval of the Settlement should be granted. *See* Fed. R. Civ. P. 23(e)(1)(B).

## V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Plaintiffs will notify Members of the Class by mailing the Notice and Proof of Claim and Release ("Proof of Claim") to all Members of the Class who can be identified with reasonable effort,

using multiple sources of data, including: a proprietary list maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Class of: (i) the pendency of the Litigation; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for submitting valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Class.

The Claims Administrator will also cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. Finally, as required by the Class Action Fairness Act of 2005 ("CAFA"), Reckitt will timely serve a CAFA notice within ten (10) days of the filing of the Stipulation. Stipulation, ¶3.2.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA. In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114.

## VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs propose the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim to the Class (which date shall be the "Notice Date") | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |

4855-3591-8420.v1

| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |
| --- | --- |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Settlement Hearing | 100 calendar days after the date of the Preliminary Approval Order |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |

## VII.    CONCLUSION

Plaintiffs and Lead Counsel obtained a very good settlement for the Class.  They now respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Class for purposes of the Settlement; (iii) approve the proposed form and manner of notice given to the Class; and (iv) schedule a hearing on Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

DATED:  March 10, 2023                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARIO ALBA JR.
ALAN I. ELLMAN
CHRISTOPHER T. GILROY

s/ Alan I. Ellman
ALAN I. ELLMAN

- 25 -

4855-3591-8420.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631-367-7100
Fax:  631-367-1173
srudman@rgrdlaw.com
malba@rgrdlaw.com
aellman@rgrdlaw.com
cgilroy@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Plaintiffs

VANOVERBEKE, MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313-578-1200
Fax:  313-578-1201
tmichaud@vmtlaw.com

Additional Counsel

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I, ALAN I. ELLMAN, hereby certify that on March 10, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ *Alan I. Ellman*
ALAN I. ELLMAN

4855-3591-8420.v1