UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF STERLING HEIGHTS POLICE & :    Civil Action No. 1:20-cv-10041-PKC
FIRE RETIREMENT SYSTEM, Individually :
and on Behalf of All Others Similarly Situated, :    <u>CLASS ACTION</u>
                            :
               Plaintiff, :    MEMORANDUM OF LAW IN SUPPORT
                            :    OF PLAINTIFFS' MOTION FOR FINAL
      vs. :    APPROVAL OF CLASS ACTION
                            :    SETTLEMENT AND APPROVAL OF PLAN
RECKITT BENCKISER GROUP PLC, :    OF ALLOCATION
RAKESH KAPOOR, and SHAUN :
THAXTER, :
                            :
             Defendants. :
                            :

———————————————————— x

4864-6985-8152.v1

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND..........................................3

III. STANDARDS FOR FINAL APPROVAL OF SETTLEMENT CLASS ACTION
SETTLEMENTS....................................................................................................3

    A.  The Law Favors and Encourages Settlements ...........................................3

    B.  The Settlement Must Be Procedurally and Substantively Fair, Adequate,
    and Reasonable ..........................................................................................4

    C.  The Proposed Settlement Is Procedurally and Substantively Fair,
    Adequate, and Reasonable .........................................................................6

        1.  The Settlement Satisfies the Requirements of Rule 23(e)(2).......................6

            a.  Plaintiffs and Lead Counsel Have Adequately Represented
            the Settlement Class............................................................6

            b.  The Proposed Settlement Was Negotiated By Experienced
            Counsel at Arm's-Length Before an Experienced Mediator ...........7

            c.  The Proposed Settlement Is Adequate in Light of the
            Litigation Risks, Costs, and Delays of Trial and Appeal................8

                (1)  The Risks of Establishing Liability at Trial.........................8

                (2)  The Risks of Establishing Loss Causation and
                Damages at Trial................................................................10

                (3)  The Settlement Eliminates the Additional Costs and
                Delay of Continued Litigation ..........................................11

             d.  The Proposed Method for Distributing Relief Is Effective............12

            e.  Lead Counsel's Request for Attorneys' Fees Is Reasonable ........13

            f.  The Parties Have No Other Agreements Besides Opt-Outs ..........13

            g.  The Settlement Ensures Class Members Are Treated
            Equitably ...........................................................................14

        2.  The Settlement Satisfies the Remaining *Grinnell* Factors........................14

4864-6985-8152.v1

**Page**

    a.    The Lack of Objections Supports Final Approval .........................14

    b.    Plaintiffs Had Sufficient Information to Make an Informed Decision Regarding the Settlement.................................................15

    c.    Maintaining Class-Action Status Through Trial Presents a Substantial Risk .............................................................................16

    d.    Defendants' Ability to Withstand a Greater Judgment..................17

    e.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation ..............................17

IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................18

V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ...................................................................19

VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ...............................................................................................20

VII.    CONCLUSION.......................................................................................................22

4864-6985-8152.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Castagna v. Madison Square Garden, L.P.*,
  2011 WL 2208614 (S.D.N.Y. June 7, 2011) .........................................................................17

*Charron v. Pinnacle Grp. NY LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012),
  *aff'd sub nom. Charron v. Wiener*,
  731 F.3d 241 (2d. Cir. 2013)......................................................................................................8

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .........................................................................................15, 17

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)..........................................................................................................6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)......................................................................................................5, 7

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...................................................................................... *passim*

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) .............................................................................................22

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..........................................................................11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................3, 8, 11, 18

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987).........................................................................................17

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................................9

4864-6985-8152.v1

**Page**

*In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................7, 15, 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019)..........................................................5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018),
    *aff'd sub nom*, *In re Facebook Inc.*,
    822 F. App'x 40 (2d Cir. 2020) ...................................................................... *passim*

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................5, 8, 16, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................15

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................11, 18

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................................21

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................................................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)...............................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y July 21, 2020) ..............................................6, 8, 18

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................................17

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).........................................................14

4864-6985-8152.v1

**Page**

*Martignago v. Merrill Lynch & Co., Inc.*,
2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013)........................................................................15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................................................3, 7, 8, 16

*Mikhlin v. Oasmia Pharm. AB.*,
2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ....................................................................10, 12

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)................................................................................................17

*Padro v. Astrue*,
2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)......................................................................22

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) .......................................................................................13

*Rodriguez v. CPI Aerostructures, Inc.*,
2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)..............................................................5, 8, 22

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019)..........................................................................6

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................11

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) .............................................................................................5

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ...........................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)............................................................................................ *passim*

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)...................................................................5, 15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ......................................................................................................................1, 13

4864-6985-8152.v1

**Page**

Federal Rules of Civil Procedure
    Rule 23(a)...............................................................................................................20
    Rule 23(b)(3)..........................................................................................................20
    Rule 23(c)...............................................................................................................16
    Rule 23(c)(2)(B)...............................................................................................20, 22
    Rule 23(e)........................................................................................................ *passim*
    Rule 23(e)(1)(B).....................................................................................................20
    Rule 23(e)(2)................................................................................................... *passim*
    Rule 23(e)(2)(A) ......................................................................................................7
    Rule 23(e)(2)(B)......................................................................................................7
    Rule 23(e)(2)(C)(i).............................................................................................8, 12
    Rule 23(e)(2)(C)(ii)................................................................................................12
    Rule 23(e)(2)(C)(iii)...............................................................................................13
    Rule 23(e)(2)(C)(iv)...............................................................................................13
    Rule 23(e)(2)(D) ....................................................................................................14
    Rule 23(e)(3)........................................................................................................4, 13

## SECONDARY AUTHORITIES

Laarni T. Bulan & Laura E. Simmons,
    *Securities Settlement Class Action Settlements: 2022 Review and Analysis*,
    (Cornerstone Research 2023)....................................................................................18

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff City of Birmingham Retirement and Relief System and Plaintiff City of Sterling Heights Police & Fire Retirement System ("Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of their motion for final approval of the $19,600,000 Settlement (the "Settlement Amount") reached in this action (the "Action") and approval of the Plan of Allocation (the "Plan"). The terms of the Settlement are set forth in the Stipulation of Settlement dated March 10, 2023 (the "Stipulation"). ECF 162.[1]

## I.    INTRODUCTION

Plaintiffs' $19.6 million recovery is the result of their rigorous nearly four-year effort to prosecute this highly contested litigation, reached following lengthy arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally renowned mediator. The Settlement represents a very good result for the Class under the circumstances and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Plaintiffs faced. The gravamen of Plaintiffs' claims was that, during the Class Period, Defendants made materially false and misleading statements and/or omitted material information regarding Reckitt's transition from Suboxone Sublingual Tablets ("Tablets"), its drug designed to help opioid-addicted individuals overcome their addiction, to Suboxone Sublingual Film ("Film"), which caused

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of Alan I. Ellman in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Ellman Decl."), submitted herewith. Citations are omitted and emphasis is added throughout unless otherwise noted.

4864-6985-8152.v1

the price of Reckitt's American Depositary Shares ("ADS") to trade at artificially inflated prices, until the market learned the false and misleading nature of the statements, and the ADS prices significantly declined. While Plaintiffs believe in the merits of their claims, Defendants had strong arguments that Plaintiffs could not establish the elements of falsity, scienter and loss causation, and that Plaintiffs' claims were time-barred. Ellman Decl., ¶25. Defendants also maintained that to the extent the Class suffered any damages (which Defendants vehemently denied), Defendants argued that they were far lower than the amount calculated by Plaintiffs' expert.

Given the stage of the litigation, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted a significant factual investigation into the merits of the claims, engaged in briefing in connection with Defendants' motions to dismiss, moved to intervene in related actions that were pending in the Western District of Virginia and Eastern District of Pennsylvania, conducted merits document discovery and expert consultation, moved for class certification, and participated in formal mediation discussions with the Hon. Layn R. Phillips (Ret.). Plaintiffs and Lead Counsel also knew that despite their belief in the merits of the claims, there existed the possibility of little or no recovery at all. Moreover, a skilled and highly reputable securities litigation mediator – Judge Phillips – assisted the parties in reaching a resolution of the case for $19.6 million.

Given the risks to proceeding and the recovery obtained, Plaintiffs respectfully submit that the $19.6 million Settlement and the Plan – which was prepared with the assistance of Lead Counsel's in-house damages expert, and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

4864-6985-8152.v1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Ellman Decl. for a detailed discussion of the factual background and procedural history of the Action, the extensive efforts undertaken by Plaintiffs and their counsel during the course of the Action, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.     The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

As set forth below, the $19.6 million Settlement here, particularly in light of the significant litigation risks Plaintiffs faced, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement. Accordingly, the Settlement warrants final approval from this Court.

**B.     The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Rule 23(e)(2) provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

 (i)     the costs, risks, and delay of trial and appeal;

 (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

 (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

 (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

4864-6985-8152.v1

*Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the [new] Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* [F]actors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496 at *28 (E.D.N.Y. Feb. 16, 2023) (same).

For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate, not every factor need be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "'[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013) (second and third alterations in original); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

Under Rule 23(e)(2), courts "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. As set forth in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Class, and Approval of Notice to the Class (ECF 161), and acknowledged by the Preliminary Approval Order (ECF 164), Plaintiffs meet all of the requirements imposed by Rule 23(e)(2). Courts have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2019 WL

- 5 -

4864-6985-8152.v1

2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

### C.   The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

#### 1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)

##### a.   Plaintiffs and Lead Counsel Have Adequately Represented the Class

The determination of adequacy "typically 'entails inquiry as to whether: 1) [P]laintiff[s'] interests are antagonistic to the interests of other members of the class and 2) [P]laintiff[s'] attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Plaintiffs' interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Class. Plaintiffs have "claims that are typical of and coextensive with those of other Class Members and [have] no interests antagonistic to those of other Class Members. [Plaintiffs have] an interest in obtaining the largest possible recovery from Defendants." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y July 21, 2020). Plaintiffs and Lead Counsel have adequately represented the Class by zealously prosecuting this Action, including by, among other things, conducting an extensive investigation of the relevant factual events, drafting highly detailed amended complaints, opposing Defendants' motions to dismiss, moving for class certification, conducting merits discovery and retaining experts, and preparing for and participating in mediation sessions before Judge Phillips, followed by lengthy settlement negotiations. *See generally* Ellman Decl. Through

- 6 -

4864-6985-8152.v1

each step of the Action, Plaintiffs and Lead Counsel have strenuously advocated for the best interests of the Class.  Plaintiffs and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

### b.    The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's-Length Before an Experienced Mediator

Plaintiffs satisfy Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Ellman Decl., ¶¶37-39, 56-57.  Notably, the case did not settle immediately following either mediation session and required additional negotiations through Judge Phillips.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd sub nom*, *In re Facebook Inc.*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at *4 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").  Moreover, the Settlement negotiations in this case were "carried out under the direction of [Plaintiffs], . . . whose involvement suggests procedural fairness." *Facebook*, 343 F. Supp. 3d at 409.  "A settlement reached under the supervision and with the endorsement of a

- 7 -

sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness." *Signet*, 2020 WL 4196468, at *4 (internal quotations and citations omitted) (ellipsis in original).

It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate, and not a product of collusion" where it was reached after "arm's-length negotiations between the parties"). Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### c. The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation. *Rodriguez*, 2023 WL 2184496, at *29. As set forth below, these factors weigh in favor of final approval.

### (1) The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459. As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval. Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, . . . "have long recognized that such litigation is notably difficult and notoriously uncertain."'" *Signet*, 2020 WL 4196468, at *4; *Christine Asia Co., Ltd. v. Yun Ma*, 2019

- 8 -

WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Plaintiffs and Lead Counsel firmly believe that the claims asserted in the Action are meritorious, and that they would prevail at trial, further litigation against the Defendants posed risks that made any recovery uncertain.

As set forth above and in the Ellman Decl., at the time of the Settlement, the parties were engaged in full scale merits discovery, and expert discovery was on the horizon. Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing.[2] Specifically, Defendants have argued that none of their alleged misstatements were false or misleading or made with scienter. Ellman Decl., ¶¶30-33. Defendant Thaxter argued that his alleged misstatements were inactionable corporate puffery – either "generalized explanations that did not offer concrete information," or "explicitly aspirational." *Id.*, ¶30. Other defendants challenged falsity on the grounds that the alleged wrongdoing had already come to light prior to the corrective disclosures alleged in the TAC, as the FDA had publicly questioned RBP's claims of Film's superiority. *Id.*, ¶31.[3] Defendants' scienter arguments may have found support with the Court. They argued that even if they were mistaken in disagreeing with the FDA about the superiority of Film over Tablets, the TAC failed to allege that the disagreement was insincere or in bad faith. *Id.*, ¶33. Defendants also argued that Plaintiffs failed to tie RBP's

_____

[2]    In its order on Defendants' motions to dismiss the Third Amended Complaint ("TAC"), the Court dismissed with prejudice the claims against defendants Hennah and Bellamy for failure to plead facts giving rise to a strong inference of scienter. Ellman Decl., ¶40.

[3]    Defendants likewise argued these same facts established that Plaintiffs' claims were time barred. *Id.*, ¶32.

4864-6985-8152.v1

purported knowledge to Reckitt and its executives. *Id*. In light of the difficulty of pleading falsity, materiality, scienter, and loss causation in securities fraud class actions under the high bar of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs knew they faced a substantial risk that the Court would grant Defendants' likely motion for summary judgment on the remaining alleged misstatements, leaving Plaintiffs and the Class with no recovery at all.

### (2)  The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing loss causation and damages. Here, Defendants argued that Plaintiffs had not adequately alleged (and could not prove) loss causation with respect to the alleged misrepresentations: the taking of two accounting reserves and the indictment of Indivior based on purportedly long-since public information. Defendants argued that these disclosures were not corrective, as they did not reveal anything new about the subject of the alleged fraud. Defendants argued that, instead, the market was aware of, and reacted to, revelations in 2013 concerning the Citizen Petition denial, antitrust litigation, and news coverage of both. Defendants maintained that there was no causal link between the alleged misstatements and the decline in Reckitt's stock price because the corrective disclosures occurred well after the market reacted to the alleged misconduct. ECF 90 at 2.

Had litigation continued, Plaintiffs would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and *Daubert* challenges. As courts have long recognized, the substantial uncertainty as to which side's experts' views might be credited by a jury presents a serious litigation risk. *See Mikhlin v. Oasmia Pharm. AB.*, 2021 WL 1259559 at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather

4864-6985-8152.v1

than the myriad nonactionable factors such as general market conditions.'"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'[i]n this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found'"). If the Court determined that one or more of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove.

Thus, in light of the very significant risks Plaintiffs faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

**(3) The Settlement Eliminates the Additional Costs and Delay of Continued Litigation**

The anticipated complexity, cost, and duration of continued litigation would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). Indeed, if not for the Settlement, the Action, which has already been pending for almost four years, would have continued through the completion of fact and expert discovery. The subsequent motion for summary judgment, as well as the preparation for what would likely be a multi-week trial, would have caused the action to persist for several more years before the class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further

- 11 -

litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* Factors, all weigh in favor of final approval.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement. Pursuant to the Preliminary Approval Order, over 198,900 copies of the Notice and Proof of Claim and Release form ("Claim Form") were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-11, submitted herewith. Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Claim Form, and Preliminary Approval Order. *Id.*, ¶13. Class Members have until June 28, 2023 to object to the Settlement and to request exclusion from the Class. While the objection and exclusion date has not yet passed, there are no objections to the adequacy of the Settlement, and only one request for exclusion from the Class has been received. *Id.*, ¶15.

Class Members have until July 7, 2023 to submit Claim Forms. The claims process is similar to that typically used in securities class action settlements. *See Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective"). This claims process will "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Mikhlin*, 2021 WL 1259559, at *6. This factor therefore supports final approval.

4864-6985-8152.v1

### e. Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as discussed in Lead Counsel's accompanying fee memorandum, counsel for Plaintiffs seeks an award of attorneys' fees in the amount of 27.5% of the Settlement Amount, and expenses in the amount of $574,923.16, in addition to interest on both amounts, to be paid at the time of award.[4]

As set forth in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), this request is in line with recent fee awards in this District in similar common-fund cases.

Lead Counsel's fee request is reasonable, and Plaintiffs have ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments, and to date no objections have been filed. Accordingly, this factor supports final approval of the Settlement.

### f. The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with Plaintiffs' motion for preliminary approval of the Settlement (ECF 161 at 7), the parties have entered into a supplemental agreement providing that, in the event that requests for exclusion from the Class exceed a certain agreed-upon

---

[4] The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an Order awarding such fees and expenses. *See* Stipulation, ¶6.2; *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (finding this provision does "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

- 13 -

4864-6985-8152.v1

threshold, Defendants have the option to terminate the Settlement.  As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class.  This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval.  *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### g.    The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether Class Members are treated equitably.  As discussed further below in §IV, Lead Counsel developed the Plan of Allocation in consultation with its in-house damages expert to treat Class Members equitably relative to each other by: (i) taking into account the timing of their Reckitt ADS purchases, acquisitions, and sales; and (ii) providing that each Authorized Claimant shall receive his, her, its, or their *pro rata* share of the Net Settlement Fund based on their recognized losses.  Plaintiffs will be subject to the same formula for distribution of the Net Settlement Fund as every other Class Member.  This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Plaintiffs and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2.    The Settlement Satisfies the Remaining *Grinnell* Factors

### a.    The Lack of Objections Supports Final Approval

The reaction of the Class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the ""'absence of objections may itself be taken

- 14 -

as evidencing the fairness of a settlement.""" *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). "'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Wal-Mart Stores*, 396 F.3d at 118.

The deadline to submit objections is June 28, 2023; to date none have been filed to the adequacy of the Settlement. Only one request for exclusion has been received. Murray Decl., ¶15. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the settlement class "demonstrates that the [Settlement Class] approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

### b.      Plaintiffs Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff[s'] claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *Bear Stearns*, 909 F. Supp. 2d at 267; *Martignago v. Merrill Lynch & Co., Inc.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). Even though the parties here engaged in extensive discovery, "[t]o satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see*

- 15 -

*also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Unquestionably, Plaintiffs and Lead Counsel had sufficient information to assess the adequacy of the Settlement.  As detailed in the Ellman Decl., Plaintiffs and Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation, opposing Defendants' motions to dismiss, reviewing documents produced by Defendants and third parties in discovery, as well as documents in other litigation against Defendants and others, and consulting with experts. Plaintiffs also participated in hard-fought settlement discussions with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement.  During the mediation sessions, Defendants' Counsel pressed the arguments raised in their motions to dismiss, in addition to further arguments they intended to make if the case were to progress.  This case did not settle for over a year after the initial mediation, as litigation proceeded.

Thus, by the time of the Settlement, Plaintiffs were well-versed in the strengths and weaknesses of the case.  This factor weighs in favor of final approval.

### c.      Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Although Defendants did not oppose Plaintiffs' class certification motion, they retained the right to de-certify the class or move to shorten the class period at or before trial, as class certification may be reviewed at any stage of the litigation.  *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).  "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

- 16 -

4864-6985-8152.v1

### d.    Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval. Even if Defendants could have withstood a greater judgment, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, even if Reckitt could satisfy a larger judgment, all other factors favor final approval.

### e.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause [Plaintiffs] face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* Factor is "a

- 17 -

function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). The Settlement represents a recovery of approximately 38% of reasonably recoverable damages, an amount that far exceeds median recoveries in cases of this size. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Settlement Class Action Settlements: 2022 Review and Analysis* at 7, Fig. 6 (Cornerstone Research 2023) (attached hereto as Ex. A) (median settlement as a percentage of "simplified tiered damages" in cases alleging only §10b claims between 2013-2022 was 4.5%).[5]

Moreover, the $19.6 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Plaintiffs faced. *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real"). This factor weighs in favor of final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "fair, reasonable, and adequate." *Signet*, 2020 WL 4196468, at *13. "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *IMAX*, 283

---

[5]    Not surprisingly, Defendants contended that damages were zero due to the absence of any liability and loss causation.

F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, as set forth in the Notice, the Plan was prepared with the assistance of Lead Counsel's in-house damages expert and has a rational basis, as it is based on the same methodology underlying Plaintiffs' measure of damages: the amount of artificial inflation in the price of Reckitt ADSs during the Class Period.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness"). This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Claim Forms that are approved for payment from the Net Settlement Fund under the Plan.  The Plan treats all Class Members equitably, as everyone who submits a valid and timely Claim Form, and does not otherwise exclude himself, herself, itself, or themselves from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See id.*; *see also* Murray Decl., Ex. A (Notice) at 11.

No objections to the Plan of Allocation have been filed.

Plaintiffs and Lead Counsel believe that the Plan is fair and reasonable.  Therefore, it is respectfully submitted that the Court should approve the proposed Plan.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In their motion for preliminary approval of the Settlement, Plaintiffs requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and

- 19 -

4864-6985-8152.v1

the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Claim Forms, could be issued. *See* ECF 161 at 18-23. In the Preliminary Approval Order, the Court addressed the requirements for Class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Plaintiffs had met the requirements for certification of the Class for purposes of settlement. ECF 164 at ¶¶2-3. In addition, the Court preliminarily certified Plaintiffs as Class Representatives and Lead Counsel as Class Counsel. *Id.*, ¶4.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Plaintiffs' motion for preliminary approval (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and appoint Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

## VI.   NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to

4864-6985-8152.v1

class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy these standards. The Court-approved Notice and Claim Form (the "Notice Packet") amply inform Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Claim Form; (ii) requesting exclusion from the Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average-per-share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and nominees on April 6, 2023. As of June 14, 2023, 198,901 copies of the Notice Packet have been mailed. Murray Decl., ¶10. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*. *Id.*, ¶11, Ex.

- 21 -

4864-6985-8152.v1

C. Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website established and maintained for the Settlement. *Id.*, ¶13.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'").  Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Rodriguez*, 2023 WL 2184496, at *25 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.    CONCLUSION

The $19.6 million Settlement obtained by Plaintiffs and Lead Counsel represents an excellent recovery for the Class, particularly in light of the significant litigation risks Plaintiffs faced, including the very real risk of the Class receiving no recovery at all.  For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan as fair, reasonable, and adequate.

4864-6985-8152.v1

DATED: June 14, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARIO ALBA JR.
ALAN I. ELLMAN
CHRISTOPHER T. GILROY


                *s/ Alan I. Ellman*
               ALAN I. ELLMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
malba@rgrdlaw.com
aellman@rgrdlaw.com
cgilroy@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Plaintiffs

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

- 23 -

4864-6985-8152.v1

<u>CERTIFICATE OF SERVICE</u>

I, ALAN I. ELLMAN, hereby certify that on June 14, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ *Alan I. Ellman*
ALAN I. ELLMAN