# EXHIBIT H

K6BKDEUC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NORBERT G. KAESS, et al,

                    Plaintiffs,

          v.                          09 CV 1714 (GHW)(RWL)
                                      Telephone Conference
DEUTSCHE BANK AG, et al.,

                    Defendants.

------------------------------x
                                      New York, N.Y.
                                      June 11, 2020
                                      4:30 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                      District Judge

                         APPEARANCES

GLANCY PRONGAY & MURRAY LLP
     Attorneys for Plaintiffs
BY:  BRIAN P. MURRAY
     -and-
ROBBINS GELLER RUDMAN & DOWD LLP
BY:  THEODORE J. PINTAR
     ERIC NIEHAUS
     KEVIN LAVELLE

CAHILL GORDON & REINDEL LLP
     Attorneys for Deutsche Bank Defendants
BY:  DAVID JANUSZEWSKI
     SAMUEL MANN

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
     Attorneys for Underwriter Defendants
BY:  WILLIAM J. O'BRIEN
     ANDREW BEATTY

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

K6BKDEUC

(The Court and all parties appearing telephonically)

THE COURT:  This is Judge Woods.

Is there a court reporter on the line?

(Pause)

THE COURT:  Let me just say a few words at the outset of today's conference.

First, you should conceive of this conference as if it was happening in the courtroom.  As you know, the dial-in information for this call is publicly available; members of the public and the press are welcome to dial in.

Second, let me ask you to all keep your phones on mute at all times when you're not speaking on the phone.  I can hear some background noise right now, shuffling some paper.  We should not hear any background noise during the course of the conference.  Please keep your phones on mute at all times when you are not speaking during the conference.  That will help us to keep a clear record of what we say today.

Third, I'd like to ask each of the people who will speak during this conference to please identify themselves each time that they speak during this conference.  So, if you speak during this conference, you should say your name each time that you speak.  You should do that regardless of whether or not you've spoken previously during the conference.  That will help us to keep a clear record of today's conference.

Last, as you've heard, there is a court reporter on

the line.  You should not be surprised if he chimes in at any point.  If he does, and if he asks you to do something to help him to hear or understand what you're saying, please do what he asks.  That will help us to, again, keep a clear record of the conference today.

Because there is a court reporter on the line transcribing the conference, I'm ordering that there be no recordings or rebroadcasts of any portion of the conference.

So, with those introductory remarks in hand, let me turn to the parties.

I'd like to ask for counsel for each side to identify counsel who are on the line for each of the parties and any representatives for each of the parties.  What I'm going to ask is that, if you can, that one person from each side identify herself and the members of her team; that way, we won't have to hear many people chiming in at a time.

So let me begin with counsel for plaintiffs.

Who's on the line for plaintiffs?

MR. PINTAR:  Good afternoon, your Honor.  It's Ted Pintar, and I'm here with Eric Niehaus and Kevin Lavelle, from Robbins Geller Rudman & Dowd, for plaintiffs.

THE COURT:  Good.  Thank you very much.

Who is on the line for defendants?

MR. MURRAY:  Excuse me.  I hate to interrupt, but this is also for plaintiffs, Brian Murray, from Glancy Prongay &

Murray.  Sorry to interrupt you.

Now the defendants.

THE COURT:  Fine.

Counsel for defendants?

MR. JANUSZEWSKI:  Good afternoon, your Honor.  This is David Januszewski, and I have my colleague, Samuel Mann.  We are both from Cahill Gordon & Reindel, representing Deutsche Bank and the Deutsche Bank defendants.  And on the line, we also have, from Deutsche Bank, Stella Tipi, in-house counsel at Deutsche Bank.

THE COURT:  Good.  Thank you very much.

So, counsel --

MR. O'BRIEN:  I'm sorry.  Good afternoon, your Honor. I just wanted to introduce myself and my colleagues.  William J. O'Brien and Andrew Beatty, from the firm of Skadden Arps Slate Meagher & Flom, on behalf of the underwriter defendants.

THE COURT:  Good.  Thank you very much.

So, counsel, first, let me thank you all for being on the call.  I scheduled this conference as a settlement hearing or approval hearing with respect to the proposed resolution of this case.  I have reviewed all of the materials that have been submitted on the docket to date in connection with this matter. I'd like to hear, however, from each of the parties, to hear, in particular, if there's anything that any of you would like to add to any of your written submissions in connection with

K6BKDEUC

the proposed resolution of the case.

Let me begin with counsel for plaintiffs.

Counsel?

MR. PINTAR:  Again, good afternoon, your Honor.  Ted Pintar, for plaintiffs.

I had a number of things I wanted to mention just at the outset.  Obviously, we're here on the final approval of an $18.5 million settlement.  We are very proud of that result. As we have indicated, and I won't repeat all of what's in the papers, but it represents a very significant percentage of reasonably recoverable damages.

On February 27, 2020, this Court entered its preliminary approval order.  Pursuant to that order, notice was disseminated.  The claims administrator mailed over 112,000 notice packages, published the summary notice in the Wall Street Journal and Business Wire, and set up a settlement website where the notice and other settlement-related documents were posted.

And, as a result, there was one objection.  It's not clear to me whether that has been withdrawn.  I won't attempt to characterize Mr. Agay's email.  We submitted it to the Court.  He indicates, however, that he would not be participating today.  There were only four opt-outs.  And I do have some information on claims to date.  Over 11,000 claims have been submitted, and they are still processing claims --

K6BKDEUC

the mailed claims, so that number is likely to rise even from there.

So, we believe that not only is it a good settlement, that the class has reacted very positively to it, and, as you know, today we're asking the Court to enter three orders:  The final judgment, the order approving plan of allocation, and the order awarding attorneys' fees and expenses and award to class plaintiffs.  Other than that, your Honor, I certainly don't have anything to add to our papers.  I'm happy to address any questions the Court may have, though.

THE COURT:  Good.  Thank you very much, counsel.

Let me hear from each of the groups of defendants.

First, counsel for the Deutsche defendants.

MR. JANUSZEWSKI:  Yes, your Honor.  Again, this is David Januszewski, from Cahill Gordon.

We have nothing to add to what was submitted, which was designed to address the objection that my friend just addressed.  We have nothing to add to that.

THE COURT:  Good.  Thank you very much.

Counsel for the remaining defendants, anything that you'd like to add to your written submissions?

MR. O'BRIEN:  Yes.  William O'Brien, from the firm of Skadden Arps Slate Meagher & Flom, on behalf of the underwriter defendants.

And like Mr. Januszewski, we have nothing further to

K6BKDEUC

add.

THE COURT:  Good.  Thank you very much.

Is there anyone else on the line who wishes to be heard?

So, hearing none, counsel, I'm going to approve the proposed resolution of this action, or series of actions.  What I'd like to do is to ask you to place your phones, again, on mute, if you would, please.  I'd like to review the reasoning for my decision.  I'm going to do so now orally.  At the end, I'll take up the two orders and judgment that the parties have proposed.  Let me begin with, first, an overview.

So, I. Overview:

Plaintiffs brought this securities class action in February 2009 on behalf of all persons who purchased the 7.35 percent Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X and/or the 7.60 percent Trust Preferred Securities of Deutsche Bank Contingent Capital Trust III securities from Deutsche Bank AG pursuant to public offerings from November 6, 2007, to February 14, 2008. Plaintiffs allege that defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act (the "Securities Act") and (15, U.S.C., Section 77k, 77l(a)(2), and 77o) by omitting material facts from the offering documents.  See declaration of Eric I. Niehaus ("Niehaus dec."), Docket No. 308, paragraph 3.

Since then, plaintiffs have extensively litigated this

K6BKDEUC

case.  The parties have engaged in significant motion practice, and have completed fact discovery.  Niehaus declaration paragraphs 3-4.  Now, plaintiffs seek final approval of the class action settlement and approval of their plan for allocating the net proceeds of the settlement.  Plaintiffs' counsel also seek an award of attorneys' fees and litigation costs, and the lead plaintiffs seek an award for expenses incurred while representing the class.

Judge Batts presided over this case for almost the entire time that it has been pending in this court.  The case was reassigned to me on February 20, 2020, after Judge Batts' untimely death.

II. Class Certification:

On October 2, 2018, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Judge Batts granted plaintiffs' motion to certify a class defined as:  All persons or entities who purchased or otherwise acquired the 7.35 percent Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X ("7.35 percent Preferred Securities"), and/or the 7.60 percent Trust Preferred Securities of Deutsche Bank Contingent Capital Trust III ("7.60 percent Preferred Securities"), pursuant or traceable to the public offerings that commenced on or about November 6, 2007, and February 14, 2008.  Excluded from the class are defendants, the officers and directors of Deutsche Bank, and the underwriter defendants at

all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.  Docket No. 224 at 10.

III.  Approval of the Settlement Agreement:

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Federal Rule of Civil Procedure 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts analyze whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).

The court examines procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  Wal-Mart Stores, 396 F.3d at 116.  A "presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery."  Id.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  In re EVCI Career Colls. Holding Corp. Sec. Litig., 2007 WL 2230177, at *4

K6BKDEUC

(S.D.N.Y. July 27, 2007).

A. Procedural Fairness:

The settlement is procedurally fair, reasonable, adequate and not a product of collusion.  The settlement was reached after the parties had conducted a thorough investigation and evaluated the claims and defenses; the agreement in principle was reached after sessions with the Honorable Judge Layn R. Phillips, a former United States District Judge and an experienced mediator of securities class actions and other complex litigation.  Niehaus declaration paragraph 6, 129.  In advance of the mediation, the parties exchanged detailed mediation statements addressing both liability and damages.  Id.  The parties reached a final resolution on September 12, 2019, with the assistance of Judge Phillips, after formal mediation.  Id.

B. Substantive Fairness:

The settlement is also substantively fair.  The factors set forth in Grinnell provide the analytical framework for evaluating the substantive fairness of a class action settlement.  The Grinnell factors are:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the

K6BKDEUC

ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a recovery in light of all of the attendant risks of litigation.  Grinnell 295 F.2d at 463. Litigation here through trial will be complex, expensive, and long.  It has been complex, expensive, and long.  Thus, the first Grinnell factor weighs in favor of final approval.  See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 36 (E.D.N.Y 2019) ("Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial.").

With respect to the second factor, the class members' reaction to the settlement has been overwhelmingly positive. Of the 112,397 notice packets mailed to potential members of the settlement class, four exclusion requests were received. Supplemental declaration of Ross D. Murray (Supplemental Murray Dec.") Docket No. 324, Paragraphs 4, 6.  Only one class member, Mr. Richard Agay, objected.  See Richard Agay letter ("Agay letter") Docket No. 320-21.

That objection did not challenge the settlement, the resolution of this case, the reasons for the settlement, the manner in which class plaintiffs and lead counsel prosecuted the litigation, the work lead counsel performed, or lead

K6BKDEUC

counsel's fee and expense application.  Instead, the objection asserted only that Mr. Agay received his copy of the notice late, and that he was confused by certain aspects of the submission, and that the claims administrator did not sufficiently respond to Mr. Agay's telephonic inquiry.  On June 5, 2020, Mr. Agay emailed lead counsel in an email that I construe as him withdrawing his objections, perhaps because he recognized that he was apparently persuaded by the response of the parties showing that he was not entitled to recovery in the suit.  See Docket No. 329.  While Mr. Agay received his notice later than expected, he received it with enough time to submit objections, and the delay was caused by a failure at his broker.  His objection does not suggest that the overall distribution or notice program was ineffective in design or execution.

The absence of objections, with the exception of one retail investor, who literally withdrew his objection, coupled with the minimal number of requests for exclusion, strongly supports the finding that the settlement plan of allocation and fee and expense requests are fair, reasonable, and adequate. See In re Citigroup, Inc. Sec. Litig., 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013); In re Bisys Sec. Litig., 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007); In re Veeco instruments Inc. Sec. Litig., 2007 U.S. Dist. LEXIS 85629, at *40.

In sum, the overall favorable response demonstrates

K6BKDEUC

that the class approves of the settlement and supports final approval.

The plaintiffs completed fact discovery, so counsel "had an adequate appreciation of the merits of the case before negotiating."  Beckman v. KeyBank, N.A., 293 F.R.D. 467, 475 (S.D.N.Y. 2013)(quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3rd Cir. 2004); see also Niehaus declaration paragraph 5.  Lead plaintiffs spent significant time and resources analyzing and litigating the legal and factual issues of this case, including an extensive factual and legal investigation into the settlement class's claims and engaging in the detailed formal mediation process.  Niehaus declaration paragraph 5.

Turning to the fourth and fifth factors, the risk of establishing liability and damages further weighs in favorable of final approval.  "Litigation inherently involves risks."  In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits.  See Velez v. Majik Cleaning Serv., Inc., 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  Here, plaintiffs face significant risks as to both liability and damages; defendants challenged the premise that the allegedly omitted information was material and the notion that plaintiffs could prove that the drop in price was related to the allegedly omitted information.  See Niehaus

K6BKDEUC

declaration paragraphs 106, 115 to 17.  The proposed settlement eliminates these uncertainties.  These factors, therefore, weigh in favor of final approval.

The risk of obtaining class certification is nonexistent here.  Therefore, the sixth Grinnell factor weighs in favor of final approval.  Settlement generally eliminates the risk, expense, and delay inherent in the litigation process as a whole.

Turning to the seventh factor, there is nothing to suggest that Deutsche Bank or the underwriter defendants would be unable to withstand a greater judgment than the settlement amount.  "But a defendant is not required to empty its coffers before a settlement can be found adequate."  Shapiro v. JP Morgan & Co., 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014)(quotation omitted).

Deutsche Bank's financial circumstances -- or I should say the defendants' financial circumstances do not ameliorate the force of the other Grinnell factors, which lead to the conclusion that the settlement is fair, reasonable, and adequate.

Finally, the amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  In

re Austrian & German Bank Holocaust Litig., 80 F.Supp. 2d 164, 178 (S.D.N.Y. 2000).  Instead, "There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

Here, lead plaintiffs assert that the settlement would constitute 47 percent of the estimated recoverable damages. Niehaus declaration paragraph 19.  This is a reasonable result when compared to the median ratio of settlement to investor losses of 2.1 percent for securities class action settlements in 2019.  Id.  Therefore, the amount of this immediate recovery is reasonable, and this factor weighs in favor of final approval.

Weighing the Grinnell factors, I find that the settlement is substantively fair and weigh in favor of final approval.

IV.  Plan of Allocation:

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate...an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  In Re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d

K6BKDEUC

319, 344 (S.D.N.Y. 2005)(citation and quotation omitted). "A plan of allocation need not be perfect," in re EVCI Career Colleges Holding Corp. Sec. Litig., 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)(collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," PaineWebber, 171 F.R.D. at 133; see also RMed International, Inc. v. Sloan's Supermarkets, Inc., 2000 WL 420548, at *2 (S.D.N.Y. April 18, 2000) (recognizing that "aggregate damages in securities fraud cases are generally incapable of mathematical precision"). Thus, "In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." In re EVCI Career Colleges Holding Corp. Sec. Litig., 2007 WL 2230177, at *11.

Lead counsel, who are experienced and competent in complex class actions, prepared the plan of allocation in connection with plaintiffs' damages expert. Niehaus declaration paragraphs 100, 134. The settlement fund, minus attorneys' fees and expenses, will be allocated on a pro rata basis according to the relative size of class members' "Recognized claims." Id. at paragraphs 9, 10. The expert has calculated an estimated individual class members' claim based on (i) allegations when the alleged concealed facts and trends became known (i.e., realization events); (ii) an event study that estimates price changes in the securities as a result of realization events; and (iii) the statutory formula used to

K6BKDEUC

calculate recoverable damages during the settlement class period.  Declaration of Steven P. Feinstein ("Feinstein dec"), Docket No. 177-1, paragraphs 29-42.

Because the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced and estimable class counsel, the Court finds it fair and adequate.  See In re Telik, Inc. Sec. Litig., 576 F.Supp. 2d, 570, 581 (S.D.N.Y. 2008).

V.   Dissemination of Notice:

On February 27, 2020, the Court entered an order granting preliminary approval of the settlement as "fair, reasonable and adequate" to class members.  In accordance with that order, lead counsel retained Gilardi & Co. LLC ("Gilardi") as claims administrator to supervise and administer the notice procedure in connection with the settlement and to process all claims.  Declaration of Ross D. Murray ("Murray dec"), Docket No. 310, paragraph 2.

Gilardi sent a copy of the notice to potential members of the settlement class.  First, Gilardi mailed, by first class mail, the notice packet to 283 nominees - banks, brokerage companies, and other institutions - that Gilardi had in its proprietary database.  Id. at paragraph 5.

Next, Gilardi mailed the notice packet to 4,643 additional institutions or entities on the U.S. Securities and Exchange Commission's ("SEC") list of active brokers and

K6BKDEUC

dealers.  Id. paragraph 5.

Gilardi also delivered electronic copies of the notice packet to 381 registered electronic filers, primarily institutions and third-party filers, and to the depository trust company ("DTC") on the DTC legal notice system ("LENS"), which enables bank and broker nominees to contact Gilardi for copies of the notice for their beneficial holders.  Id. paragraph 7.  Gilardi received multiple responses and additional names of potential settlement class members from individuals or other nominees, with requests for over 64,000 notice packets to be forwarded directly to nominees' customers.  Id. paragraph 9.  Gilardi also published the summary notice in the Wall Street Journal and transmitted it over Business Wire.  Id. paragraph 11.  Gilardi also posted the date and time of the hearing on the settlement website.  Id. paragraph 12.

Gilardi ultimately mailed a total of 112,397 notice packets, including mailing notice packets to persons a second time when the first set were returned as undeliverable.  Supplemental Murray declaration paragraph 4.

These notices apprised settlement class members, among other things, of: (i) the amount of the settlement; (ii) the reasons why the parties are proposing the settlement; (iii) the maximum amount of attorneys' fees and expenses that will be sought; (iv) the identity and contact information for representatives of lead counsel available to answer questions

K6BKDEUC

concerning the settlement; (v) the right of settlement class members to object to the settlement; (vi) the right to request exclusion from the settlement class; (vii) the binding effect of a judgment on settlement class members; (viii) the dates and deadlines for certain settlement-related events; and (ix) the way to obtain additional information about the action and the settlement by contacting lead counsel and the settlement administrator.  See Federal Rule of Civil Procedure 23(c)(2)(B).

I find that these efforts fairly and adequately advised class members of the terms of the settlement, as well as the right of Rule 23 class members to opt out of, or to object to the settlement, and to appear at the final fairness hearing today.  I find that the notice and its distribution comported with all constitutional requirements, including those of due process.

VI.  Attorneys' Fees, Costs and Expenses:

Lead counsel requests attorneys' fees in the amount of what the Court calculates to be $6,166,666.67 plus interest earned at the same rate as the settlement fund.  This amounts to one-third of the settlement fund, or 33.3 percent of the settlement fund.  Lead counsel also seeks reimbursement of: (i) $1,203,502.39 in litigation expenses in total, with Robbins Geller Rudman & Dowd LLP ("Robbins Geller") seeking $1,170,981.31, Glancy Prongay & Murray seeking $28,740.22, and

Murray Frank LLP seeking $3,780.86; and (ii) to approve the award to the lead plaintiffs, or class plaintiffs, of "20,000 in the aggregate pursuant to 15, U.S.C., Section 77Z-1(a)(4) in connection with their representation of the class."  Niehaus declaration paragraph 17.

Now, the trend in the Second Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases, although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage of recovery method.  See Fresno County Employees' Ret. Association v. Isaacson/Weaver Family Trust, 925 F.3d 63, 68 (2d Cir. 2019).

The notice provided to class members advised that class counsel would apply for attorneys' fees for up to 33.3 percent of the settlement fund, in addition to litigation costs not to exceed 1.3 million.  See Gilardi declaration Exhibit A Notice at 2.  No class member objected to the request.

A. Goldberger Factors:

Reasonableness is the touchstone when determining whether to award attorneys' fees.  In Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the

K6BKDEUC

litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  Id at 50.

1.   Class Counsel's Time and Labor:

Plaintiffs' counsel have expended more than 26,000 hours of attorney time in total over the course of this action, the vast majority of which was time expended by of counsel at Robbins Geller.  Declaration of Eric Niehaus in support of lead counsel's motion for an award of attorneys' fees ("Niehaus fee declaration"), Docket No. 311 paragraph 5.  Niehaus declaration paragraph 135.

2.   Magnitude and Complexity of the Litigation:

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  In re Prudential Sec, Inc. Ltd. Partnership Litig., 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  "In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."  In re Flag Telecom Holdings Ltd. Sec. Litig., 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (quotation omitted).  This case is one of substantial magnitude.  In addition to all of the complications that are attendant to any large securities class action, this matter involved events that happened over ten years ago, extensive discovery, and litigation.  The amount sought by plaintiffs'

K6BKDEUC

counsel is commensurate with the magnitude and complexity of this litigation.

3.   The Risk of Litigation:

As discussed, lead counsel faced significant risk in prosecuting this action and proving the merits of the claims. All of the fact-finding has concluded.  Given the complexity of the case, the risk at summary judgment and trial is significant.  Defendants adamantly denied any wrongdoing, and, in the event that litigation had continued, would have continued to aggressively litigate their defenses through summary judgment, Daubert motions, trial, and any appeals.

4.   Quality of Representation:

Lead counsel has considerable expertise in securities litigation.  See Robbins Geller resume, Niehaus fee declaration, Exhibit G; see also declaration of Brian P. Murray filed on behalf of Glancy Prongay & Murray LLP in support of application for award of attorneys' fees and expenses ("Murphy fee declaration").  Robbins Geller attorneys are currently "lead or [are] named counsel in hundreds of securities class action or large institutional-investor cases" and are "responsible for the largest securities class action in history."  Niehaus fee declaration, Exhibit G.  RiskMetrics Group has recognized Glancy Prongay & Murray as one of the top plaintiffs' law firms in the United States in its securities class action services report for every year since the inception

K6BKDEUC

of the report in 2003.  See Murphy fee declaration, Exhibit I.

The high quality of defense counsel opposing plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the settlement. Cahill Gordon & Reindel and Skadden Arps Slate Meagher & Flom are two prominent defense firms, and "the ability of plaintiffs' counsel to obtain a favorable settlement for the class in the face of such formidable opposition confirms the quality of their representation of the class."  In re Marsh ERISA Litig., 265 F.R.D. 128, 148 (S.D.N.Y. 2010).

Accordingly, the Court finds that this Goldberger factor weighs in favor of the requested fee award.

5.  The Requested Fee in Relation to the Settlement:

Generally, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.  In this case, the requested fee is 33.3 of the settlement, within the range of reasonableness, in light of other class action settlements in this circuit.  See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)("Class counsel's request for 33 percent of the settlement fund is typical in class action settlements in the Second Circuit.").

6.  Public Policy Considerations:

When determining whether a fee award is reasonable, courts consider the social and economic value of the class

action "and the need to encourage experienced and able counsel to undertake such litigation."  In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  "Courts have, as a generic matter, frequently observed that the public policy of vigorously enforcing the federal securities laws must be considered in calculating an award."  In re BioScrip, Inc. Sec. Litig., 273 F.Supp. 3d 474, 502 (S.D.N.Y. 2017)(quotation omitted) affirmed sub nom.  Fresno County Employees Retirement Association v. Isaacson/Weaver Family Trust, 925 F.3d 63 (2d Cir. 2019).

Vigorous, private enforcement of the federal securities laws can only occur if private investors can obtain some parity in representation with that available to large corporate defendants.  Accordingly, public policy favors granting lead plaintiffs' fee request.

After considering all of the Goldberger factors, the requested fee award appears to be reasonable.

B.  Lodestar "Cross Check":

In Goldberger, the Second Circuit "encouraged the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  Goldberger, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  Id.

As of April 17, 2020, plaintiffs' counsel have

K6BKDEUC

expended over 26,000 hours in total in this case, resulting in a total lodestar of $16,069,646.  Niehaus fee declaration paragraph 4, Exhibit A; Murphy fee declaration, Exhibit A. Robbins Geller expended 17,356.85 hours with a lodestar of $12,021,477, Glancy Prongay & Murray LLP expended 8,097.8 hours with a lodestar of $3,639,826.50, the Frank Murray LLP expended 562.2 hours with a lodestar of $355,902.50.  Id.  Plaintiffs' counsel submitted declarations and time reports in support of their motion for attorneys' fees.  Id.  Counsel submitted a summary time records detailing the billable rate and hours worked by each attorney and professional support staff in this case.  I find that these billable rates based on the timekeeper's title, specific years of experience, and market rates for similar professionals in their fields nationwide and in New York, where Robbins Geller LLP is based, to be reasonable in this context.

Based on plaintiffs' counsel's requested fee – one-third of the settlement, or by the Court's calculation, $6,166,666.67 – the lodestar yields a negative "cross-check" multiplier of about 0.38; therefore, the fee is well below the typically awarded multipliers in this circuit. "Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this circuit."  Fleisher v. Phoenix Life Insurance Company, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2020)(quotation omitted)(collecting cases).  Thus, the lodestar

K6BKDEUC

"cross-check" confirmation that plaintiffs' counsel requested fee is reasonable.

The Court therefore finds that, based on the Goldberger factors and the lodestar "cross-check," that plaintiffs' counsel's requested fees are reasonable.

C.    Litigation Expenses:

Plaintiffs' counsel requests $1,203,502.39 total in litigation expenses, including filing fees, process service, mailing expenses, document management and hosting services, investigative and expert witnesses, legal research, travel and mediation.  See Niehaus fee declaration paragraph 5, Exhibit B. Robbins Geller seeks $1,170,981.31, Glancy Prongay & Murray seeks $28,740.22, and Murray Frank LLP seeks $3,780.86.  The largest component of plaintiffs' counsel's expenses was the cost of experts and consultants, amounting to $750,458, or approximately 62 percent of total expenses.  Niehaus fee declaration paragraph 6.  The next largest components of plaintiffs' counsel's expenses were for transportation, hotels, and meals ($227,852.66), court transcripts and deposition materials ($68,030.54), and mediation ($27,210).  See Niehaus fee declaration, Exhibit B.  The notice disclosed that lead counsel would seek up to $1,300,000 in litigation expenses.  No objection to these expenses was received.

"It is well-established that counsel who create a common fund are entitled to the reimbursement of expenses that

they advance to a class."  In re Giant Interactive Group, Inc.,
279 F.R.D. 151, 165 (S.D.N.Y. 2011); see also In re Indep.
Energy Holdings, 302 F.Supp. 2d 180, 183 Note 3 (S.D.N.Y.
2003).  "Attorneys may be compensated for reasonable
out-of-pocket expenses incurred and customarily charged to
their clients as long as they were 'incidental and necessary to
the representation of those clients.'" (quotation omitted).
The expenses for which lead counsel seeks payment are the type
of expenses that courts typically approve.  See In re Global
Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y.
2004).  Therefore, the Court finds that the requested
litigation expenses are reasonable and necessary to the
representation of the class and are appropriately reimbursed to
class counsel.

          D.   Lead Plaintiffs' Expenses:

          Lead plaintiffs seek an award of $20,000 for both of
them in recognition of the time and expense that they incurred
on behalf of the class.  Motion in support, Docket No. 307, at
31; see also Niehaus declaration paragraph 17.  15, U.S.C.,
Section 77Z-1(a)(4) allows "the award of reasonable costs and
expenses (including lost wages) directly relating to the
representation of the class to any representative party serving
on behalf of a class."

          As set forth in their declaration, lead plaintiffs
dedicated a significant amount of time to the successful

prosecution of this action, including by reviewing pleadings and motions, discussing strengths and risks of the case, and consulting with lead counsel regarding settlement.  Kaess and Farrugio declaration paragraphs 2 through 12.  These are the kinds of activities which regularly are found to support awards to class representatives.

As set forth in their declaration, lead plaintiffs assert that the value of their time and resources invested in this case is substantially in excess of the $20,000 award that they seek here.  Id.  And the application here is consistent with the notice, which disclosed that "Class plaintiffs may seek an award pursuant to 15, U.S.C., Section 77z-1(a)(4) in connection with their representation of the class in an amount not to exceed $20,000 in the aggregate."  Murphy fee declaration, Exhibit A notice.

Thus, I find that the requested award of $20,000 to lead plaintiffs is reasonable.

VII.  Conclusion:

In conclusion, I approve the class action settlement for $18,500,000 and approve the plan for allocating the net proceeds of the settlement.  I also award plaintiffs' counsel attorneys' fees in the amount of what the Court calculates to be $6,166,666.67, plus interest earned at the same rate as the settlement fund.  This amounts to one-third of the settlement fund, or 33.3 percent of the settlement fund.  I am also

K6BKDEUC

awarding $1,203,502.39 in litigation expenses to be divided as outlined by lead counsel. Finally, I award lead plaintiffs $20,000 in the aggregate for time and expenses incurred while representing the class.

So, counsel, thank you very much for your patience as I got through the reasoning for my decision to approve the settlement here.

I received the proposed orders and judgment, and I expect to act on those promptly after today's conference.

Is there anything else that we should take up now, before we adjourn?

First, counsel for plaintiffs?

MR. PINTAR: Not for plaintiffs, your Honor. Again, Ted Pintar. Thank you very much.

THE COURT: Thank you.

Counsel for the Deutsche Bank defendants?

MR. JANUSZEWSKI: Your Honor, David Januszewski.

Nothing else from us.

THE COURT: Good. Thank you.

Counsel for the underwriter defendants?

MR. O'BRIEN: Yes. William O'Brien, from Skadden Arps Slate Meagher & Flom LLP.

Nothing further from us as well.

THE COURT: Good. Thank you, all.

COUNSEL: Thank you.    * * *